1  DOUGLAS J. MELTON  State Bar #161353
   HELEN MCFARLAND State Bar #231501
2  LONG & LEVIT LLP
   465 California Street, Suite 500
3  San Francisco, CA  94104
   Telephone:     (415) 397-2222
4  Facsimile:      (415) 397-6392
   Email:          dmelton@longlevit.com
5                  hmcfarland@longlevit.com

6  *Attorneys for Defendant*
   S.A.W. Entertainment Limited
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  JESSICA JACKSON, individually and on        CASE No. CV 09 0448
    behalf of all others similarly situated,
12                                              **REQUEST FOR JUDICIAL NOTICE IN**
                      Plaintiff,                **SUPPORT OF PETITION TO COMPEL**
13                                              **ARBITRATION AND TO STAY**
                                                **LITIGATION**
14         vs.

15  S.A.W. ENTERTAINMENT LIMITED
    aka SAW ENTERTAINMENT, LTD;
16  LARRY FLYNT'S HUSTLER CLUB;                 Date:       April 8, 2009
    DEJA VU, and Does 1-50,                     Time:       10:30 a.m.
17                                              Department: C
                      Defendant.
18                                              Action Filed: December 12, 2008
                                                Removed:      February 2, 2009
19                                              Judge:        The Honorable Edward M. Chen

20

21         Pursuant to the provisions of Federal Rule Evidence 201, Defendant S.A.W.

22  ENTERTAINMENT LIMITED, aka SAW ENTERTAINMENT, LTD ("SAW") respectfully

23  requests that this Court take judicial notice of the attached pleadings and orders issued in this case

24  and in this Court as follows:

25         (1)     The Complaint, filed by Plaintiff Jessica Jackson, in the San Francisco

26  Superior Court, case number CGC-08-482937, on December 12, 2008, and the attachments to the

27  Complaint.  A copy of this Complaint and the attachments is attached to this Request for Judicial

28  Notice for the Court's convenience as Exhibit 1;

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PETITION TO COMPEL ARBITRATION AND STAY LITIGATION

1            (2)     Order Compelling Arbitration, filed in the case entitled *Jones v. Déjà Vu*

2    *Inc.,* in the United States District Court for the Northern District of California, case number C05-

3    0997BZ, a copy of which is attached as Exhibit 2.

4

5    Dated: February 27, 2009             LONG & LEVIT LLP

6

7                                         By

8                                         DOUGLAS J. MELTON
                                     Attorneys for Defendant

9                                         S.A.W. Entertainment Limited

10

11

    DOCS\S0301-082\560835.V1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PETITION TO COMPEL ARBITRATION AND STAY

# EXHIBIT 1

1  Kevin J. McInerney, Esq., SBN 46941
2  Charles A. Jones, Esq., SBN 224915
   MCINERNEY & JONES
3  18124 Wedge Parkway #503
   Reno, NV 89511
4  Telephone:    (775) 849-3811
   Facsimile:    (775) 849-3866
5
6  James F. Clapp, Esq.  SBN 145814
   DOSTART CLAPP GORDON & COVENEY LLP
7  4370 La Jolla Village Dr., Suite 970
   San Diego, CA 92122
   Telephone:    (858) 623-4200
8  Facsimile:    (858) 623-4299
9
   *Attorneys for Plaintiff* JESSICA JACKSON
10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                       COUNTY OF SAN FRANCISCO

13  JESSICA JACKSON, individually and on    Case No. CGC-08-482937
    behalf of all others similarly situated,
14
                                            CLASS ACTION COMPLAINT FOR:
15            Plaintiff,
                                            1) FAILURE TO PAY MINIMUM WAGE
16       v.                                 (CAL. LABOR CODE §1197);

17  S.A.W. ENTERTAINMENT LIMITED            2) FAILURE TO PAY WAITING TIME
    aka SAW ENTERTAINMENT, LTD;             PENALTIES (CAL. LABOR CODE §203);
18  LARRY FLYNT'S HUSTLER CLUB;
    DÉJÀ VU, and DOES 1-50,                 3) FAILURE TO INDEMNIFY
19                                          EMPLOYEES' BUSINESS EXPENSES
                                            (CAL. LABOR CODE §2802);
20            Defendants.
                                            4) VIOLATION OF THE UNFAIR
21                                          COMPETITION LAW (BUSINESS &
                                            PROFESSIONS CODE §§17200 *ET SEQ.*);
22                                          AND
23
                                            5) VIOLATION OF SAN FRANCISCO
24                                          MINIMUM WAGE ORDINANCE
25

26

27               THIS IS A CLASS ACTION COMPLAINT

28 ───────────────────────────────────────────────────
                              1
                   CLASS ACTION COMPLAINT

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

DEC 1 2 2008

GORDON PARK-LI, Clerk
BY: CRISTINA BAUTISTA
                    Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

MAY 1 5 2009 - 9:00 AM

DEPARTMENT 212

RECEIVED
JAN 0 5 2009
By: A&P

## I.

## JURISDICTION AND VENUE

1.      The Superior Court has jurisdiction over this action because the monetary amount sought by the plaintiff and members of the class exceeds the minimal jurisdictional level.  The plaintiff and members of the class also seek a declaratory judgment that finds that dancers employed by the defendants are employees within the meaning of the California Labor Code and not independent contractors.  Lastly, the Superior Court has jurisdiction because the plaintiff and members of the class seek injunctive relief directing that the defendants cease and desist from the illegal practices described in this complaint.

2.      Venue is proper in the City and County of San Francisco because the plaintiff and many other members of the class were employed at Larry Flynt's Hustler Club, which is located at 1031 Kearny Street in San Francisco and the California Labor Code allows a claim to be venued where the employment took place.

## II.

## THE PARTIES

3.      The plaintiff, Jessica Jackson, is an adult female who was employed by the defendants as an adult entertainer at Larry Flynt's Hustler Club in San Francisco in April 2008.

4.      The defendant Larry Flynt's Hustler Club is a business entity the exact form of which is currently unknown.  According to a website it maintains on the worldwide internet, it operates a number of adult dance clubs in California and in other states.  Its name is prominently displayed on the marquee at 1031 Kearny Street where the plaintiff and many members of the class have been employed as adult dancers or entertainers.  Throughout this Complaint, these premises may be referred to as "the club."

## CLASS ACTION COMPLAINT

5.     The defendant Déjà Vu is a business entity the exact form of which is currently unknown.  Persons seeking to dance at Hustler clubs in San Francisco, including the plaintiff, have been told by club managers that Déjà Vu runs or manages the Hustler clubs including the one located at 1031 Kearny Street in San Francisco.  The web page for Larry Flynt's Hustler Club on its home page displays a map of the United States showing states where Hustler clubs are located and portraying a logo which says "DejaVu.com"

6.     The defendant S.A.W. Entertainment, LTD is believed to be a California corporation which is also known as SAW Entertainment Limited.  This defendant actually enters into written contracts with persons seeking to become adult dancers or entertainment entertainers at Larry Flynt's Hustler Clubs, including the plaintiff and members of the class.

7.     DOES 1-50 are individuals or entities whose true identities are unknown to the plaintiff at this time.  These DOE defendants aided and assisted and ratified the illegal labor practices engaged in by the named defendants.  These DOE defendants were the agents and co-employers of the plaintiff and other members of the class, functioning in such roles with the named defendants.  When the true identities of these DOE defendants is ascertained by the plaintiff, she will move to substitute the true names and identities and amend this complaint.

### III.

### FACTUAL ALLEGATIONS

8.     The plaintiff, Jessica Jackson, and other individuals seeking employment at any club owned or operated by the defendants are required to execute a written contract.  A true copy of such a contract that has been in usage for at least the past eighteen months is attached hereto as Exhibit A.

9.     At all times relevant over the past four years, the three named defendants and the DOE defendants have been employers and joint employers of hundreds of females throughout California. They have sought the services of these individuals to perform in clubs owned and/or operated by them in California to perform semi nude or nude dances for customers of their clubs. Those hired by the defendants are known as "dancers", "entertainers", or "strippers". These dancers, who constitute the proposed class in this action, are expected to perform dances onstage ("stage dances") and also private dances. Private dances are in the form of dances performed on the open areas of the club (variously called "lap dances", "table dances" or "couch dances") as well as private dances performed in secluded areas of the club (known as "VIP dances").

10.    All the clubs operated by the defendants in California have as a primary and integral part of their business the sale of such dances to customers of the clubs. By means of their marquee, the internet, other forms of commercial notice, the clubs advertise the physical attractiveness of the female entertainers and that the clubs provide both stage and private dances.

11.    The defendants are entities and individuals who have been in the adult entertainment business for many years, are versed in employment and labor law, and have at their disposal professional legal advice from California attorneys versed in California law as it relates to adult dancers and entertainers. The defendant Déjà Vu in particular has been sued on numerous occasions within the past few years both by individual plaintiffs and by the California Department of Labor Standards and Enforcement for misclassifying dancers as independent contractors (when, in truth, the dancers have always been employees) and for misappropriating gratuities earned by dancers.

12.     The three named defendants utilize and have utilized over the class period standardized contracts in contracting with dancers.  The purpose of these standardized contracts has been to attempt to insulate the three named defendants from the costs of treating their dancers as employees which, in fact, they always have been.  By categorizing the dancers as independent contractors, the defendants have sought to avoid the burdens of paying payroll taxes, Social Security taxes, and workers compensation.  However, the dancers have never met the criteria of independent contractors for the following reasons among others:

a.     The defendants, at all times relevant, have strictly controlled the times when dancers have been scheduled to work and have routinely imposed fines or other forms of discipline when they have been late for a scheduled shift or have failed to appear for a scheduled shift;

b.     The defendants, at all times relevant, have strictly controlled the amounts of money that dancers have charged customers for private dances;

c.     The defendants, at all times relevant, have strictly controlled the working conditions including the dancers not being able to leave the premises during a shift, the amount of time that dancers may absent themselves from the public areas of the clubs, and the time when dancers may leave the premises following their shift;

d.     The defendants, at all times relevant, have strictly controlled the dress and appearance of the dancers including their costumes, their shoes, their hairstyles, their make-up, and their display of tattoos or piercings;

e.     The work relationship between the defendants and their dancers is not for a single job or project but rather is typically an ongoing work relationship;

f.      The defendants' investment in the operation of their clubs, including liquor license, inventory, fixtures, lease, advertising, and payroll for doormen, managers, disc jockeys, and bartenders versus the investment of an individual dancer is vastly disproportionate;

g.      The dancer has no meaningful opportunity for profit or loss based on her managerial skill; rather, her ability to earn tips is dependent on the number of customers and that number is largely beyond her control and rests primarily in the club's advertising, admission policy, drink pricing, and the overall attractiveness of the club, including other dancers hired by the club;

h.      The skills required of the dancer are not on a par with those normally seen in the case of a true independent contractor either in terms of training, education, licensing, or experience; and

i.      The economic reality for the dancer is that she is not in business for herself but is dependent upon finding work in a business establishment owned by some other person or entity.

13.     The standardized contract utilized by the defendants to avoid the legal and financial burdens of the employer-employee relationship (See Exhibit A) is a shallow and amateurish subterfuge. The defendants provide at the outset a "Notice of Contract Alternative: Employee Status". That notice commences with "Entertainers have historically performed at this club as independent contractors who control, if, when, where, how, and for who they perform. However, if you wish to become an 'EMPLOYEE' of this club, you may apply to do so." This, of course, is an absurdity; it is the business operator's duty to properly classify workers as either employees or independent contractors. Furthermore, strictures on the election to be a "EMPLOYEE" has guaranteed that work applicants would never select this supposed

election and, in fact, very few, if any, dancers have "applied" to become an "EMPLOYEE". For example, Condition (8) for an EMPLOYEE provides: "There will be a ten (10) dance per shift quota and a failure to make quota may result in termination". Condition (12) states "The Club will assign your hours of work for any shifts available and you are not guaranteed any minimum number of hours". Condition (16) provides: "You will not be permitted to work overtime or permitted to be on schedule for more than 4 hours, unless directed by management". These restrictive provisions render the work offer meaningless. The dancer would essentially be "on call" without any assurance of how many shifts, if any, she might receive. The four hour limitation on shift duration also deters; by the time a dancer travels to the club and puts on her costume and make-up, a four hour opportunity to make tips, particularly on a slow day or in a bad economy, is a marginal one. This is particularly true when, as here, the dancer is subject to termination if she fails to meet her quota of providing ten dances on that shift.

14.    Exhibit A also contains the Club/Performer contract. This contract is again a shallow subterfuge which attempts to convert employee status into an independent contractor relationship. It has numerous terms which are adhesive and unconscionable, many of which are grouped in Section V (Other Contract Terms). The adhesive and unconscionable clauses are so unilateral and egregious that they invalidate the entire contract. These include the contract's attempt to provide that if the dancer is ever deemed to be an employee the dancer agrees to set off any of the gratuities (dance fees) she was paid against any damages arising from the misclassification, *see* (V)(2). This would be in clear violation of Labor Code §351. The contract provides the dancer waives the normal statutory statute of limitations for labor code violations and agrees to a six month limitation, *see* (V)(7). Finally, the contract provides the dancer waives her right to bring a representative or class action or even consolidate her claims

with the claims of others, *see* (V)(8).

15.     Moreover, this purported contract does not even address some of the illegal labor practices that have routinely occurred at clubs owned and operated by the defendants and which have impacted the plaintiff and all members of the class. These practices include:

a.     Requiring that dancers pay a "stage fee" or "door fee" for every shift that they work. While nowhere mentioned in the contract, these daily charges, which can range from $30 to as much as $80 or more, are paid to managers of the defendants' clubs and represent a "kickback" of the gratuities given to the dancers by customers;

b.     Requiring the dancers to "tip out" other employees of the club such as managers, assistant managers, disc jockeys, doormen, or "house moms," many of whom have no direct servicing responsibility toward the customers. Although nowhere mentioned in the defendants' contract, this forced tipping of other employees of the defendants imposes a significant financial burden on the dancer, who may be expected to give up as much as 10% or more of the gratuities that she has earned during the course of her shift; and

c.     Discounting the amount of gratuities and/or dance fees earned by a dancer when the customer utilizes a credit card as a means of paying for private dances. Although the defendants' contract does reference this discounting (IV)(D), the contract avoids the reference to the use of a credit card since that implicates California Labor Code §351. What has consistently occurred at all clubs operated by the defendants during the class period is that customers have routinely purchased a form of script issued by the club by charging against his/her credit card. The customer loses because there is a fee imposed by the club for the use of the credit card but a dancer in the defendants' clubs also suffers a loss because she is unable to redeem the script for its nominal face value. Instead, when a dancer redeems the script from the club, she does so at a

**CLASS ACTION COMPLAINT**

1   substantial discount.  While such script in the trade is often referred to as "funny money," these

2   defendants have had the ill grace to refer to it as "beaver bucks."

3       16.    All of the clubs owned and/or operated by these defendants in California are

4   operated under the same rigid structure and have employed identical practices and policies

5   including the use of the same standardized written form contracts.

6       17.    The amounts of monies diverted from the plaintiff and other dancers during the

7

8   class period can be ascertained from the financial records of the defendants and from other

9   forms of discovery.  The amounts of unpaid minimum wages owed to the plaintiff and other

10  class members can be ascertained from the shift records of the defendants and other forms of

11  discovery.

12

13                                   **III.**

14                          **CLASS ALLEGATIONS**

15      18.    The plaintiff seeks to represent the following class:

16          All individuals who are or were employed as dancers at any time since December

17  12, 2004 in any clubs or adult dance establishments operated and/or owned by the defendants in

18  the State of California.

19      19.    The class is ascertainable because the defendants required dancers working at

20  their establishments to provide their names, addresses, Social Security numbers, and other

21  identifying data and defendants have maintained this data.

22

23      20.    The class is believed to consist of several hundred individuals during the class

24  period and it is believed that during the class period well in excess of 100 individuals were

25  employed at the Hustler Club on Kearny Street alone.

26

27

28

                          **CLASS ACTION COMPLAINT**

21.     Common issues of fact and law exist and predominate over individual issues. Among such issues are:

a.      Whether the dancers were employees or independent contractors;

b.      Whether the contracts utilized by the defendants are void for their adhesive and unconscionable conditions;

c.      Whether the dancers should have received minimum wage under the California Labor Code;

d.      Whether the imposition of a stage or door fee has constituted a violation of Labor Code §§221, 223, 351, and/or 450;

e.      Whether the defendants' requirement that dancers "tip out" other non-service club employees constituted a violation of California Labor Code §§221, 223, 351, 450, and/or 2802;

f.      Whether the defendants' discounting the face value of "beaver bucks" or other forms of script has constituted a violation of Labor Code §§221, 223, 351, and/or 450;

g.      Whether the plaintiff and the class are entitled to a declaratory judgment that the above practices are illegal and that the defendants have misclassified the dancers as independent contractors;

h.      Whether the plaintiff and/or members of the class are entitled to injunctive relief directing that the defendants cease their illegal labor practices; and

i.      Whether the defendants are liable to the plaintiff and the class for illegal conversion of monies earned as dancers.

22.     The claims of the plaintiff, Jessica Jackson, are typical of those she seeks to raise on behalf of the class. She was employed during the class period by the defendants in a club that they owned or operated within the State of California.  She was an employee, not an independent contractor, but was not paid any wages.  She was required to pay a stage or door fee, was required to tip out non-servicing employees of the defendants from her tips and gratuities, and had "beaver bucks," that were given to her by customers, discounted by the defendants.  She has no conflicts with other members of the class and has retained experienced counsel who have litigated numerous class action wage and hour suits in California on behalf of employees. Together, the two law firms representing the plaintiff have handled in excess of eighty wage and hour class actions in California.

23.     A class action is superior to any other form of disposition of the claims of the plaintiff and class members.  Although the contract signed by the plaintiff and the members of the class provides in (V)(6) that any dispute is to be decided by binding arbitration, it goes on to say "The arbitrator shall have no authority or jurisdiction over a class action."  Furthermore, the entire contract is voidable because of the adhesive unilateral and unconscionable terms so that even arbitration of the plaintiff's individual claims is not required.  The filing of individual lawsuits by members of the class would result in duplicative litigation and risk the chance of conflicting judicial findings.  Class actions are well suited to uphold the legislative intent inherent in the labor statutes of California and to allow persons of limited means to obtain redress against powerful corporations within an industry.  Lastly, a class action is superior to administrative complaints before the Labor Commissioner because such complaints are limited to three years and because the ruling of the Labor Commissioner is subject to *de novo* review by the losing party in the Superior Court anyway.

## FIRST CAUSE OF ACTION

## (FAILURE TO PAY CALIFORNIA MINIMUM WAGE, CAL LABOR CODE §1197)

24.    Plaintiff re-alleges Paragraphs 1-23 of this Complaint and here incorporates them by reference.

25.    Plaintiff and other members of the class were employed as dancers in the clubs operated by the defendants in California.  At all times while so employed they have been employees of the defendants and not independent contractors.

26.    Defendants failed to pay plaintiff and other members of the class any wage, let alone the California minimum wage.  Instead, defendants required plaintiff and other dancers to work for only a portion of the tips they were given by customers.

27.    Defendant's failure to pay plaintiff and other class members California's minimum wage has been intentional and constituted a violation of California Labor Code §1197.

## SECOND CAUSE OF ACTION

## (WAITING TIME PENALTIES, CAL. LABOR CODE §203)

28.    Plaintiff re-alleges Paragraphs 1-23 of this Complaint and here incorporates them by reference.

29.    Plaintiff and other class members who were employed by the defendants and have left their employ were entitled to the prompt payment of all unpaid wages, and, specifically the minimum wages due the plaintiff and other class members, pursuant to Labor Code §§201 and 202.

30.    The defendants intentionally failed to pay the plaintiff and other class members all wages due following the termination of their employment and this constituted a violation of California Labor Code §203.

**THIRD CAUSE OF ACTION**

**(FAILURE TO INDEMNIFY EMPLOYEES' BUSINESS EXPENSES,
CAL. LABOR CODE §2802)**

31.     Plaintiff re-alleges Paragraphs 1-23 of this Complaint and here incorporates them by reference.

32.     During their employment as dancers by the defendants, the plaintiff and other class members were regularly compelled by the defendants to pay expenses as a business condition of their employ as dancers.

33.     The business expenses that the plaintiff and other dancers were required to incur have included:

       a) "stage" or "door" fees paid to managers daily for the right to work a shift;

       b) "tips" that dancers were required to give to other personnel at a club who did not directly serve customers, such as doormen, disc jockeys, house moms, assistant managers, and bartenders;

       c) clothing, accessories, and cosmetics that the defendant required, with some particularity, that the dancers have to work at a club.

34.     All of these expenses were mandated by the defendants and have never been reimbursed or otherwise paid for by the defendants.  This failure to indemnify the plaintiff and other class members for these business expenses constituted a violation of California Labor Code §2802.

**FOURTH CAUSE OF ACTION**

**(UNFAIR COMPETITION LAW, CAL. BUSINESS & PROFESSIONS CODE §§17200, *ET SEQ*.)**

35.     Plaintiff re-alleges all the preceding paragraphs of this Complaint and incorporates them here by reference.

13
**CLASS ACTION COMPLAINT**

36. California's Unfair Competition Law, the UCL, is set forth in Business & Professions Code at §17200 *et seq.* The UCL prohibits business practices that are illegal, unfair, or fraudulent.

37. The defendants committed acts against the plaintiff and other members of the class which were both illegal and unfair. The acts were committed with consistency and uniformity throughout the class period and are ongoing. The illegal and unfair practices as set forth in more detail in the preceding paragraphs of this Complaint include:

a) Failure to pay dancers California minimum wages (Labor Code §1197);

b) Failure to promptly pay dancers all wages due (Labor Code §203);

c) Improper appropriation of dancers' tips and gratuities (Labor Code §351);

d) Failure to indemnify dancers for business expenses (Labor Code §2802); and

e) Coercing dancers to pay stage or door fees and to tip out other club personnel (Labor Code §450).

38. The practices of the defendants complained of in this action were done and continue to be done to gain an unfair business advantage over competitors and over the dancers.

### FIFTH CAUSE OF ACTION

### (VIOLATION OF SAN FRANCISCO MINIMUM WAGE ORDINANCE)

39. Plaintiff re-alleges all the preceding paragraphs of this Complaint and incorporates them here by reference.

40. With respect to the plaintiff and other class members who were employed by defendants as dancers within the city limits of San Francisco, the Defendants willfully failed to pay the minimum wages mandated by City Ordinance, San Francisco Administrative Code, Chapter 12R.

# PRAYER

Wherefore, the plaintiff on her own behalf and on behalf of all others similarly situated prays for the following relief:

1.   Payment by the defendants of all minimum wages due, plus liquidated damages with interest thereon;

2.   Restitution and payment for all monies, tips, and gratuities taken from the plaintiff and other class members by the defendants;

3.   Reimbursement by the defendants for all business expenses incurred by the plaintiff and class members;

4.   Payment of interest on all sums due;

5.   A declaration from this Court that dancers employed by the defendants are employees and not independent contractors;

6.   An order enjoining the defendants from continuing their illegal practices as described in this Complaint;

7.   Reasonable attorney fees and costs;

8.   Such other relief as this Court may deem fit and appropriate.

DATED: December 12, 2008

Respectfully submitted,

MCINERNEY & JONES

By: _____
Kevin J. McInerney
*Attorneys for Plaintiff*
*And Others Similarly Situated*

EXHIBIT A

## TO ALL ENTERTAINERS
### NOTICE OF CONTRACT ALTERNATIVE: EMPLOYEE STATUS

Entertainers have historically performed at this club as independent contractors who control if, when, where, how and for whom they perform. However, *if you wish to become an "EMPLOYEE" of this club, you may apply to do so.* The employee-entertainer status includes the following terms:

(1)    After completing all employee forms, you will be placed on the Club's payroll;

(2)    Any current performance contract will be terminated;

(3)    Your position will require you to sell and perform private dance services;

(4)    If you are qualified, you will be paid **$22.50 per hour**;

(5)    You will be paid by **check on a bi-weekly basis**, with all required tax withholdings;

(6)    The Club will collect from patrons, and own, all dance fees for private dances;

(7)    You will be entitled to **retain all gratuities ("tips")** given to you (gratuities are the amounts given to you by patrons while you are on stage, or amounts voluntarily given to you by patrons over and above the posted dance fee);

(8)    There will be a **ten (10) dance per shift quota** and a failure to make quota may result in termination;

(9)    Quotas will be calculated based on weekly (not daily) totals;

(10)    You will be required to **perform dance services for any customer** who requests to purchase a dance, perform in club promotions, and perform on stage as required by management;

(11)    You will be **required to report all tips** at the end of each shift, as required by federal tip reporting rules;

(12)    The Club will assign your hours of work for any shifts available and you are not guaranteed any minimum number of hours;

(13)    You will be required to arrive at work consistent with your scheduled time;

(14)    You will be required to **clock in and out**, including for all meals;

(15)    You will be entitled meal and rest periods only as required by law;

(16)    You will **not be permitted to work overtime** or permitted to be on schedule for more than 4 hours, unless directed by management;

(18)    The club will issue you one costume per month, at its own expense;

(20)    Like all other club employees, including management, you will be an **"at will"** employee, which means you can be terminated with or without cause, as defined by applicable law.

(21)    Nude and semi-nude entertainment is performed at this club; you must affirm
   * a willingness to perform nude and semi-nude entertainment
   * that you are not offended by viewing others who are nude or semi-nude;
   * that you fully understand that you will be performing nude or semi-nude
   * you fully understand that you may be exposed to sexual comment

THIS OFFER DOES NOT CONSTITUTE AN EMPLOYMENT CONTRACT. THESE ARE MERELY GUIDELINES AND ARE SUBJECT TO CHANGE AT MANAGEMENT DISCRETION. MANAGEMENT RESERVES ALL ITS RIGHTS TO DIRECT AND CONTROL EMPLOYEES AS PERMITTED BY LAW. PLEASE NOTIFY THE MANAGER IMMEDIATELY IF YOU WOULD LIKE TO APPLY TO BECOME AN 'EMPLOYEE ENTERTAINER". IF YOU DO NOT WISH TO BECOME AN "EMPLOYEE" YOU MAY CHOSE TO PERFORM AT THE CLUB PURSUANT TO CONTRACT.

**IMPORTANT NOTE: THE CLUB'S MANAGERS HAVE NO OPINION ON THIS MATTER, AND THEY WILL NOT ENCOURAGE OR DISCOURAGE YOUR DECISION. IT IS YOUR FREE CHOICE. YOU MAY WISH TO CONSULT YOUR ATTORNEY OR ACCOUNTANT PRIOR TO MAKING YOUR DECISION.**

I have read the Notice to Entertainers and accept. Please provide me with the employee Application Forms.

I have read the Notice to Entertainers. I CHOOSE TO Decline to apply as an employee dancer, and choose to work as a contract entertainer.

*Jessica Jackson*

DATE: _____

DATE: _4-15-08_

Offer.1.07.est

HUSTLER 2008
CLUB/PERFORMER CONTRACT

**THIS IS A LEGAL DOCUMENT. DO NOT SIGN UNLESS YOU UNDERSTAND & AGREE TO IT.**

**WHEREAS:** SAW ENTERTAINMENT, LTD ("Owner") operates a business which is unique due to zoning and/or licensing which allows live nude or semi-nude entertainment to the adult public;

**WHEREAS**: Performer wants to market and sell dance entertainment at Owners' business;

**WHEREAS**: The parties desire to establish the terms of their relationship including how Performer shall be compensated;

**Therefore, Performer and Owner agree:**

**I. TERM.** This Contract begins on signing and ends January 15, 2009, or when terminated as provided herein.

**II. DANCE FEES**

**1. Collection Box:** The parties agree that all dance fees (not tips) shall be deposited into the dance fee collection box issued by Owner.

**2. Allocation of Dance Fees**

**A. Proceeds from Minimum Dance Sales Are Owner's Property.** Performer agrees to perform a minimum of **10** private dances during each performance date. This minimum may, at owner's discretion, be reduced based on scheduling concerns. *The mandatory fee paid for these private dances, up to $200.00, shall be the exclusive property of the Owner.*

**B. Proceeds From Dance Sales in Excess of Minimums Are Payable to Performer As Set Forth Below.** *The proceeds from the dance fees paid for dances in excess of the minimum set forth above shall be paid by Owner to Performer as set forth in Paragraph III "Owner's Obligations" and sub- Paragraph 1 "Compensation" below.*

**III. PERFORMER'S OBLIGATIONS**

**1. Market Private Dance Services.** Performer agrees to use her skills, artistic talents and best efforts to sell private dance services to club patrons for a set and mandatory service fee, and

**A.** Perform semi-nude entertainment as permitted by law;

**B.** Possess current permits as required by law and be knowledgeable about and avoid violating any laws, rules or regulations.

**2. Collection Box.** Performer shall require patrons to deposit dance fees (not tips) into the collection box provided by Owner. FAILURE TO ABIDE BY THIS TERM SHALL RESULT IN TERMINATION OF THE CONTRACT.

**3. Scheduling.** Owner shall provide Performer with available Performance Dates. Performer is free to perform if and when she chooses based on such availability. To keep this contract in effect, however, **Performer agrees to perform a minimum of 3 performance dates per week.** If Performer

schedules performances, she agrees to provide such schedule one week in advance. On each scheduled performance date, Performer promises to arrive on time and complete her full performance date as scheduled.

**4. Appear on Stage and in Promotions.** Performer agrees to appear on stage on a rotational basis and appear in promotions during her performance date.

**5. Respect Property, Law and Safety.** Performer agrees to avoid damaging Owner's property, and to comply with safety and legal requirements, including Owner's *no tolerance policy* concerning the use of drugs, under-age drinking and arranging for or engaging in prostitution.

**6. No assignment:** This contract concerns Performer's skills and artistic talents. She may not assign her rights or obligations under this Contract, but may supply a qualified substitute.

**7. Non-Exclusive:** Performer's obligations are non-exclusive; she is free to perform at other businesses.

**8. Control of Performances:** Performer retains exclusive control over the character, manner and means of her performances, so long as no law is violated.

**9. Intellectual Property:** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

**10. Costumes:** Performer shall provide her own costumes over which she retains exclusive control provided they comply with applicable laws and are professional costumes which do not conflict with the upscale gentlemen's club theme.

**11. Nature of Business:** Performer recognizes that she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive. NONETHELESS, OWNER PROHIBITS SEXUAL HARASSMENT AND HAS A FORMAL POLICY AND PROCEDURE WHICH PERFORMER IS REQUIRED TO FOLLOW.

**12. Tips or gratuities.** Performer agrees not to charge patrons more than the mandatory posted price for private dances. However, any amounts voluntarily given directly to Performer which is over and above the posted price for dances is a "tip" and is the sole property of Performer. **Performer shall be solely responsible for accounting for tips she receives and reporting them as income.**

**IV. OWNER'S OBLIGATIONS**

**1. COMPENSATION**

**A. Main Floor Private Dances.** Owner shall pay Performer the proceeds of all post-minimum private dances (defined at II A 2 above) performed on the main floor.

**B. VIP Dances.** Owner shall pay to Performer $70 for each $100 VIP Dance and $40 for each $60 VIP Dance marketed by Performer, provided such dances are in excess of Performers' minimum as set forth in paragraph II 2 A above.

**C. Champagne Room Rentals & Dance Fees.** Owner shall retain 100% of the champagne room rental

1



fee; Owner shall pay to Performer 90% of Private dance fees paid by a patron during Champagne Room rentals, provided such dances are in excess of Performers' minimum as set forth in paragraph II 2 A above.

**D. "Beaver Bucks".** Owner shall pay Performer 90% of the face value of all Beaver Buck she accepts.

**E. Payment.** All compensation due Performer by Owner shall be paid by Owner at the end of the performance date.

**F. Form 1099.** Owner shall issue Performer a Form 1099 at the end of the tax year for monies paid to her from dance sales. Performer shall be solely responsible for accounting and reporting tips she receives.

**2. Premises/Licenses:** Owner agrees to maintain the premises and all applicable licenses and permits.

**3. Advertising and Music copyright fees.** Owner agrees to pay for all music copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties.

**4. Dance Records:** Owner will keep an accurate tally of private dances, VIP and Champagne Room Rentals attributable to Performer.

**5. Fees for Private Dances and Room Rentals.** Owner will post and announce the price for private dances, VIP and Champagne Room Rentals such that patrons are notified of the price and the fact that Owner is entitled to a portion thereof.

**6. Privacy Rights:** Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

**V.        OTHER CONTRACT TERMS**

**1. No Employment Relationship, Joint Venture or Partnership. THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP. PERFORMER AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE EMPLOYEE-RELATED BENEFITS.**

The parties agree that if they were "employer and employee", Owner would retain as its sole property all mandatory private dance and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

**2. Unjust Enrichment:** If Performer is deemed to be an employee entitled to wages during any period of this

Contract, then Performer agrees to account for all the dance fees she was paid under the terms of this contract, which amount shall be off set against any damages from the claimed misclassification.

**3. Material Breach/Notice:** In the event of a Material Breach, the non-breaching party may terminate this Contract on 24 hours written notice.

**4. Voluntary Termination/Notice:** Either party may terminate this contract on 3 days written notice to the other for any or no reason.

**5. Severability:** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

**6. Arbitration:** Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, the relationship between the parties, or any other dispute between the parties, shall be decided by binding Arbitration, shall be pursuant to the Federal Arbitration Act, and shall be before a neutral arbitrator agreed upon by the parties who shall be permitted to award any relief available in a Court. Any award may be entered in any court having jurisdiction. The arbitrator shall have no authority or jurisdiction over a class action.

**7. Waiver of Statute of Limitations – Claims to be Brought Within 6 Months of the Event.** Due to the transient nature of some individuals associated with this industry, and the difficulty presented in locating witnesses, the parties agree to commence any action between them within 6 months of the event giving rise to the action and to waive any statute of limitation to the contrary.

**8. Waiver of Class Action.** Performer agrees that any substantial claim she may make shall be in her individual capacity, and not as a representative or class action, and that any claims she may have against Owner shall not be consolidated with the claims of others.

**9. LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT AT LEAST 18 YEARS OLD. PERFORMER REPRESENTS THAT SHE IS AT LEAST 18 YEARS OLD, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING SAME.**

**10. GENUINE CONSENT.** Sign this agreement only if you genuinely agree with its terms; take the time to read it, consider the terms, and have someone assist you (a lawyer or accountant, or any other person you rely on to give you reasoned advice) before signing this contract.

Owner: **SAW ENTERTAINMENT, LTD**

**ADDRESS: 1031 Kearney Street.**

**City: SAN FRANCISCO, CA 94133**

**Manager Name** _Daniel Donaldson_

**Signature** _____

**DATE:** _09/1/08_

**Sfo/Hustler/12308/est**

Performers' Name _Jessica Jackson_

Signature _Jessica Jackson_

Stage name _Maya_

Address ████████████████████

_Reno, NV 89502_

Phone # IF PERMISSIBLE TO CALL
Social Security # ████████████████
License/Permit #
**DATE:** _4-15-08_

**REDACTED**

2

# EXHIBIT 2

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   KIMBERLY JONES,                )
                                    )
12              Plaintiff(s),       )      No. C 05-0997 BZ
                                    )
13        v.                        )      ORDER ON MOTIONS OF
                                    )      DEFENDANTS CHOWDER HOUSE,
14   DEJA VU, INC., et al.,         )      INC. AND SAW
                                    )      ENTERTAINMENT, LTD. TO
15              Defendant(s).       )      COMPEL ARBITRATION
     _____)

16

17        Defendants Chowder House, Inc. dba Hungry I and SAW

18   Entertainment, Ltd. dba Larry Flynt's Hustler Club have

19   moved to compel arbitration of all claims of plaintiffs

20   Kimberly Jones, and Jane Roes One through Six.[1]

21   Plaintiffs, current and former dancers at various of

22   defendants' clubs, assert on behalf of themselves and

23   others similarly situated, nineteen causes of action, which

24   fall into three distinct groups.  The first five are

25   brought by those plaintiffs who allege they own a club that

26

27        [1]    All parties have consented to the jurisdiction of
     a United States Magistrate Judge for all proceedings
28   including entry of final judgment pursuant to 28 U.S.C. §
     636(c).

1

1  is subject to various unfair and anticompetitive acts

2  committed by defendants.  A second group of claims alleges

3  that defendants engage in a variety of unlawful employment

4  practices.  A third group accuses defendants of racial

5  discrimination.  Defendants' motions are granted in part,

6  and denied in part for the following reasons:

7  1.   The arbitration provision is procedurally

8  unconscionable.[2]  See Ingle v. Circuit City Stores, Inc.,

9  328 F.3d 1165, 1171 (9th Cir. 2003).  It was drafted by the

10  party with a superior bargaining position; offered on

11  essentially a take-it-or-leave-it basis; and provided

12  without a meaningful opportunity to opt out of the

13  arbitration provision.  See id. at 1172-73.  The "Offer of

14  Employment Status" does not provide a meaningful

15  opportunity to opt out of the arbitration provision in the

16  "Performer Contract."  It offers little more than minimum

17  wage to performers.  It requires dancers "to perform dances

18  for any customer who requests to purchase a dance," which

19  appears coercive given the nature of the performance.  The

20  undisputed evidence is that managers "told" plaintiffs to

21  reject the "Offer of Employment" and sign the "Performer

22  Contract."

23      Unlike Circuit City Stores, Inc. v. Ahmed, 283 F.3d

24  1198 (9th Cir. 2002), and Circuit City Stores, Inc. v.

25  Najd, 294 F.3d (9th Cir. 2002), on which defendants rely,

26

27      [2]    While other provisions in the "Performer
      Contracts" signed by various plaintiffs differ, the
28  arbitration provisions are identical.

1   plaintiffs were not presented with an opportunity to sign a

2   "Performer Contract" while opting out of the arbitration

3   provision.

4   2.   The arbitration provision is not substantively

5   unconscionable.  In California, "unconscionability has both

6   a procedural and a substantive element, the former focusing

7   on undue oppression or surprise due to unequal bargaining

8   power, the latter on overly-harsh or one-sided results."

9   Armendariz v. Foundation Health Psychare Svcs., Inc., 24

10   Cal. 4th 83, 114 (2000) (citing A&M Produce Co. v. FMC

11   Corp., 135 Cal. App. 3d 473, 486-87 (1982)) (internal

12   quotation marks omitted).  To invalidate a contract on

13   grounds of unconscionability, both procedural and

14   substantive unconscionability must be present, although not

15   necessarily to the same degree.  Id. (citing Stirlen v.

16   Supercuts, Inc., 51 Cal. App. 4th 1519, 1533 (1997)).  The

17   provision requires both parties to arbitrate their disputes

18   before a neutral arbitrator who is permitted to award any

19   relief available in Court, including fees and costs to the

20   prevailing party.[3]  The arbitration provision does not

21   provide for a filing fee; nor does it contain a cost-

22   splitting provision.  Compare Ingle, 328 F.3d at 1177-78.

23      The provision shortening the statute of limitations to

24

25   [3]   While plaintiffs also refer to an unequal "loser
pays" term, they do not specify the provision to which they

26   object.  The arbitration provision permits the arbitrator to
award "any relief available in Court, including fees and

27   costs to the prevailing party."  See Barton Decl., Ex. A.
This court cannot assume the arbitrator will award

28   attorney's fees to a prevailing party where such relief is
not available in court.

1  six months is unconscionable, at least as it applies to

2  plaintiffs' claims under the Fair Labor Standards Act

3  ("FLSA"), 29 U.S.C. § 201 *et seq.* Congress enacted the

4  FLSA with its own statute of limitations - two-years unless

5  the violation is willful, in which case it expands to three

6  years. See 29 U.S.C. § 255. "This two-tiered statute of

7  limitations makes it obvious that Congress intended to draw

8  a significant distinction between ordinary violations and

9  willful violations [of the FLSA]." Veliz v. Cintas Corp.,

10  No. C 03-1180 SBA, 2004 WL 2452851, at *20 (N.D. Cal. April

11  5, 2004) (quoting McLaughlin v. Richland Show Co., 486 U.S.

12  128, 132 (1988)) (internal quotation marks omitted). Given

13  the unequal bargaining power between the parties, I find

14  this one-sided effort to dramatically alter the statutory

15  scheme devised by Congress to be unconscionable. See id.

16  at *21; see also Ingle, 328 F.3d at 1175.[4]

17      The ban on class actions in the agreements between

18  plaintiffs Kimberly Jones, Roe One, Roe Two, and Roe Five

19  and defendant Chowder House is unconscionable. ("Performer

20  waives her right to pursue class action status.") The

21  provision lacks a modicum of bilaterality because it

22  applies unilaterally to "performers." See Ingle, 328 F.3d

23  at 1175-76; Ting v. AT&T, 319 F.3d 1126, 1150 (9th Cir.

24  2003). The class action ban is also contrary to the public

25

_____

26      [4]   This provision would not be unconscionable if it
only shortened the limitations period from one year
27  (wrongful termination) to six months. See Soltani v.
Western & Southern Life Ins. Co., 258 F.3d 1038, 1044 (9th
28  Cir. 2001).

1   policy underlying class actions as a procedural device for

2   resolving certain types of suits. <u>Ingle</u>, 328 F.3d at 1175;

3   <u>see also Deposit Guar. Nat'l Bank v. Roper</u>, 445 U.S. 326,

4   338-39 (1980); <u>Discover Bank v. Superior Court of Los</u>

5   <u>Angeles</u>, No S113725, 2005 WL 1500866, at *16 (Cal. June 27,

6   2005). Defendants have not even attempted to justify it.

7       The provision allowing either party to terminate the

8   contract with three days notice is not unconscionable, as

9   it is bilateral.

10  3.  The unconscionable provisions should be severed from

11  the arbitration provision. A court has discretion to sever

12  unconscionable provisions. <u>See</u> Cal. Civ. Code § 1670.5;

13  <u>Armendariz</u>, 24 Cal. 4th at 121-22. Severance is

14  appropriate where the unconscionable provisions are

15  collateral to the main purpose of the contract. <u>See</u>

16  <u>Circuit City Stores, Inc. v. Mantor</u>, 335 F.3d 1101, 1109

17  (9th Cir. 2003) (citing <u>Armendariz</u>, 24 Cal. 4th at 124);

18  <u>Little v. Auto Stiegler, Inc.</u>, 29 Cal. 4th 1064, 1074-75

19  (2003). "If the offending provision can be excised from

20  the contract . . . then the remainder of the contract can

21  be enforced." <u>Mercuro v. Superior Court</u>, 96 Cal. App. 4th

22  167, 184 (2002). The contracts at issue also provide that

23  any unenforceable provisions may be severed. I find that

24  the unconscionable provisions shortening the statute of

25  limitations and prohibiting class actions are collateral to

26  the main purpose of the parties' contracts and do not so

27  pervade the entirety of the contracts as to render the

28

1    contracts unenforceable.  See McManus v. CIBC World Markets

2    Corp., 109 Cal. App. 4th 76, 101-02 (2003); Fittante v.

3    Palm Springs Motors, Inc., 105 Cal. App. 4th 708, 727

4    (2003).

5    4.  Plaintiffs erroneously contend that they should not be

6    compelled to arbitrate claims that arose during those

7    periods when the contracts containing the arbitration

8    provision had either not yet been signed or had lapsed.[5]

9    Where an arbitration provision does not contain a temporal

10   limitation, the parties may be compelled to arbitrate

11   despite the fact that the challenged conduct predates the

12   signing of the agreement.  See Smith/Enron Cogeneration

13   Ltd. P'ship. v. Smith Cogeneration Int'l, Inc., 198 F.3d

14   88, 99 (2d Cir. 1999); Ryan Beck & Co. LLC v. Fakih, 268 F.

15   Supp. 2d 210, 224 n.28 (E.D.N.Y. 2003).  Likewise, a

16   "party's contractual duty to arbitrate disputes may survive

17   termination of the agreement giving rise to that duty." See

18   Ajida Technologies, Inc. v. Roos Instruments, Inc., 87 Cal.

19   App. 4th 534, 545-46 (2001); see also Cal. Civ. P. Code §

20   1280(f); Luden's Inc. v. Local Union No.6, 28 F.3d 347, 356

21   (3rd Cir. 1994); Kropfelder v. Snap-on Tools Corp., 859 F.

22   Supp. 952, 955 (D. Md. 1994); 2 Williston on Contracts §

23   6:42 (4th ed. 2004) ("When a contract of employment for a

24   definite time has been made, and the employees services are

25

26   _____

27   [5]   Some of the Roe plaintiffs had not yet signed
     contracts when they began working for defendants, and in
     some cases, when the contracts expired, several months
28   lapsed before a new contract was signed.

6

1   continued after the expiration of the definite time without
2   objection, the inference is ordinarily that the parties
3   have assented to another contract for a term of the same
4   length with the same salary and the same conditions of
5   service.").

6       The arbitration provision provides, "Any dispute
7   whether statutory, contractual or tort, arising out of this
8   Contract or Performer's performances, shall be decided by
9   binding Arbitration."  Plaintiffs' sixth through nineteenth
10  claims arise out of either the contracts or the performer's
11  performances.  The arbitration provision also provides that
12  it is to be interpreted "in conformity with the California
13  Arbitration Act," pursuant to which written agreements to
14  arbitrate may be "extended or renewed by an oral or implied
15  agreement."  See Cal. Civ. P. Code § 1280(f).  The
16  plaintiffs implicitly extended or renewed the arbitration
17  provision by continuing to perform at the defendant clubs.
18  I therefore find that the arbitration provision applies to
19  plaintiffs' sixth through nineteenth claims.
20  5.   Defendants' motions to compel arbitration of
21  plaintiffs' first through fifth claims are denied.[6]  These
22  claims are brought by those plaintiffs who own a club that

23

24       [6]   Plaintiffs' first through fifth claims are as
    follows:  unfair business practices under section 17200 of
25  the California Business and Professions Code (first claim);
    unfair competition under the Sherman Act, 15 U.S.C. §§ 1, 2
26  (second claim); tortious interference with economic
    relations (third claim); negligent interference with
27  economic relations (fourth claim); and violation of the
    Racketeer Influence and Corrupt Organizations Act (RICO), 18
28  U.S.C. § 1962 (fifth claim).

                                7

1   competes with defendants, and challenge defendants' alleged

2   unfair competition practices.  They do not arise out of the

3   contracts or the performer's performances, and therefore

4   are not subject to the arbitration provision.

5        For the foregoing reasons, defendants' motions for an

6   order compelling arbitration of all claims of Kimberly

7   Jones, and Jane Roes One through Six are granted in part

8   and denied in part.  Defendants' motions are granted with

9   respect to plaintiffs' sixth through nineteenth claims,

10  except that the provisions shortening the statute of

11  limitations and prohibiting class actions are severed.

12  These claims are stayed pending their resolution in

13  arbitration.  The parties must notify the court within ten

14  days of the arbitrator's decision.  Defendants' motions are

15  denied as to plaintiffs' first through fifth claims.

16  Dated:   June 30, 2005

17                        /s/Bernard Zimmerman
                             Bernard Zimmerman
18                     United States Magistrate Judge

19

20  G:\BZALL\-BZCASES\DEJA VU\COMPEL4.wpd

21

22

23

24

25

26

27

28