Kevin J. McInerney, Esq., SBN 46941
Kelly McInerney, Esq., SBN 200017
Charles A. Jones, Esq., SBN 224915
**MCINERNEY & JONES**
18124 Wedge Parkway #503
Reno, NV 89511
Telephone:    (775) 849-3811
Facsimile:    (775) 849-3866

James F. Clapp, Esq.  SBN 145814
**DOSTART CLAPP GORDON & COVENEY LLP**
4370 La Jolla Village Dr., Suite 970
San Diego, CA 92122
Telephone:    (858) 623-4200
Facsimile:    (858) 623-4299

*Attorneys for Plaintiff* JESSICA JACKSON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JESSICA JACKSON,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**S.A.W. ENTERTAINMENT LIMITED aka SAW ENTERTAINMENT, LTD; LARRY FLYNT'S HUSTLER CLUB; DÉJÀ VU,** and **DOES 1-50,**<br><br>Defendants. | Case No. CV 09-0448 (EMC)<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION**<br><br>Date:   April 8, 2009<br>Time:   10:30 a.m.<br>Dept:   C<br><br>Judge:   Hon. Edward M. Chen |

Pursuant to the provisions of Federal Rule of Evidence 201, plaintiff respectfully

requests that this Court take judicial notice of the attached pleadings as follows:

1

1     (1)    Declaration of Linda M. Toutant In Support of <u>SAW Entertainment</u> Ltd.'s

2 Motion For An Order Compelling Arbitration, filed in the case entitled *Jones v. Déjà Vu, Inc.*, in

3 the United States District Court for the Northern District of California, Case Number C05-

4 0997BZ, a copy of which is attached as Exhibit 1.

5

6

7     (2)    Declaration of Xten Barton In Support of Chowder House Inc.'s  Motion For An

8 Order Compelling Arbitration, filed in the case entitled *Jones v. Déjà Vu, Inc.*, in the United

9 States District Court for the Northern District of California, Case Number C05-0997BZ, a copy

10 of which is attached as Exhibit 2.

11

12 DATED:  March 17, 2009

13                            Respectfully submitted,

14                            MCINERNEY & JONES
                           DOSTART CLAPP GORDON & COVENEY LLP

15

16                            By:  _/s/ Kelly McInerney____
                                Kelly McInerney

17

18                            *Attorneys for Plaintiff*
                           *And Others Similarly Situated*

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1  MICHAEL B. MARGOLIS, ESQ. SBN: 087785
   LINDA M. TOUTANT, ESQ. SBN: 158866
2  MARGOLIS & MORIN LLP
3  444 South Flower Street, 6th Floor
   Los Angeles, CA 90071
4  Telephone: (213) 683-0300
   Fax: (213) 683-0303
5  margolis@winlaw.com
   toutant@winlaw.com
6  Attorneys for Defendants CHOWDER HOUSE, INC. dba HUNGRY I; DÉJÀ VU - SAN
7  FRANCISCO LLC dba CENTERFOLDS; SAN FRANCISCO ROARING 20'S LLC dba
   ROARING 20'S; SAN FRANCISCO GARDEN OF EDEN LLC dba GARDEN OF EDEN; and
8  SAW ENTERTAINMENT LTD. dba LARRY FLYNT'S HUSTLER CLUB

9

10

11                   UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

13

14  KIMBERLY JONES, et al.,                  Case No. C-05-0997 BZ

15           Plaintiffs,                      **DECLARATION OF LINDA M. TOUTANT
                                              IN SUPPORT OF SAW ENTERTAINMENT
16       v.                                   LTD.'S MOTION FOR AN ORDER
                                              COMPELLING ARBITRATION OF ALL
17                                            CLAIMS BETWEEN SAW AND
18  DÉJÀ VU, INC., et al.,                    PLAINTIFFS ROE 3, ROE 4 AND ROE 6**

19           Defendants.
                                             [Complete List Of Moving Papers:
20                                              1. Notice of Motion and Motion;
                                                2. Memorandum of Points and Authorities;
21                                              3. Declaration of Linda M. Toutant;
                                                4. Request for Judicial Notice; and
22                                              5. [Proposed] Order.]

23
                                             **Date:   June 29, 2005**
24                                           **Time:   10:00 a.m.**
                                             **Dept:   G**
25

26

27

28

Case 3:05-cv-00997-BZ    Document 79    Filed 05/23/2005    Page 2 of 17
Case3:09-cv-00448-EMC   Document15   Filed03/18/09  Page5 of 39
M2C(ArbHsn)_30500_Dec(LMT)

1

## DECLARATION OF LINDA M. TOUTANT

2

I, Linda M. Toutant, declare:

3

1.    I am an attorney licensed to practice before this Court and am an associate with the law

4

firm of Margolis & Morin LLP, counsel for Defendant and moving party SAW Entertainment, Ltd.

5

dba Larry Flynt's Hustler Club ("SAW").

6

2.    I make this Declaration in support of Defendant SAW's Motion to Compel Arbitration

7

of all disputes between it and Plaintiffs Roe 3, Roe 4 and Roe 6.

8

3.    Attached hereto as Exhibit A is a true and correct redacted copy of the Performance

9

Contract between SAW and Plaintiff Roe 3 dated March 13, 2003.

10

4.    Attached hereto as Exhibit B is a true and correct redacted copy of the Performance

11

Contract between SAW and Plaintiff Roe 4 dated February 27, 2003.

12

5.    Attached hereto as Exhibit C is a true and correct redacted copy of the Performance

13

Contract between SAW and Plaintiff Roe 6 dated February 27, 2003.

14

6.    Attached hereto as Exhibit D is a true and correct copy of my correspondence to

15

Plaintiffs' counsel dated May 17, 2005, which was accompanied by the unredacted Performance

16

Contracts signed by Roes 3, 4 and 6 and referenced above in Paragraphs 3, 4 and 5. Plaintiffs have

17

not raised any challenge to the authenticity of these Performance Contracts. However, neither have

18

they agreed to stipulate to their authenticity or admissibility.

19

I declare under penalty of perjury under the laws of the United States that the foregoing is

20

true and correct of my own personal knowledge, and that if called upon to do so I would

21

competently testify to the facts stated herein, and that I executed this Declaration on May 20, 2005

22

at Los Angeles, California.

23

24

25

Linda M. Toutant

26

27

28

1

**EXHIBIT "A"**

# HUSTLER SAN FRANCISCO
## CLUB/PERFORMER CONTRACT

THIS IS A LEGAL DOCUMENT. DO NOT
SIGN UNLESS YOU UNDERSTAND IT.

WHEREAS: Owner, "MILENNIUM" operates a
business premise which is unique due to
zoning and/or licensing which allows it
to be used to offer live nude or semi-
nude entertainment to the adult public;

WHEREAS: Performer wants to market and
perform private dance entertainment on
Owners' unique premises;

WHEREAS: The parties desire to establish
how the proceeds from private room
rentals and private dance services
marketed at Owner's valuable and unique
premises are to be allocated between the
parties:

Performer and Owner agree as follows:

This Contract begins today and ends one
year from the signing, or when terminated
by proper notice by either party.

## I.    ALLOCATION OF PRIVATE DANCE FEES

1. Collection Box: The parties agree that
patrons will pay mandatory private dance
fees by depositing them into the dance
fee collection box, which is the property
of Owner.

2. Allocation of Private Dance Fees.

A. Minimum Dances. Performer agrees to
perform a minimum of 8 private dances
per performance date. This minimum may,
at owner's discretion, be reduced based
on scheduling concerns. The proceeds
from the mandatory price paid by the
patron for all minimum private dances
shall be the exclusive property of the
Owner.

B. Private Dances in excess of Minimum
Dances. The proceeds from the mandatory
price performed in excess of the minimum
set forth at Paragraph 2A shall be the
exclusive property of Performer.

## II    PERFORMER'S OBLIGATIONS

1. Market Private Dance Services.
Performer agrees to use her skills and
artistic talents to market private dance
services to club patrons for a set and
mandatory service fee, and

A. Perform nude or semi-nude
entertainment as permitted by law;

B. Possess permits as required by law and

be knowledgeable about and avoid
violating any laws, rules or regulations.

3. Schedule Performance Dates. Performer
agrees to perform a minimum of 3
performance dates per week during this
contract.

4. Appear on Stage and in Promotions.
Performer agrees to appear on stage a
minimum of 3 times per performance date,
and to appear in club promotional dances
held during her performance date.

5. Provide Advance Schedules: Performer
agrees to schedule her performances one
week in advance. On each scheduled
performance date, Performer promises to
arrive on time and complete her full
performance date as scheduled.

6. Respect Property, Law and Safety.
Performer agrees to avoid damaging
owners' property, and to comply with all
safety and legal requirements, including
Owner's no tolerance policy concerning
the use of drugs or under-age drinking on
its premises.

7. No Assignment: This contract concerns
Performer's personal skill and artistic
talents. She may not assign her rights or
obligations under this Contract, but may
supply a qualified substitute.

8. Non-Exclusive: Performer's
obligations are non-exclusive; she is
free to perform at other businesses.

9. Control of Performances: Performer
retains exclusive control over the
character, manner and means of her
performances, so long as no law is
violated.

10. Intellectual Property: Performer
shall retain all intellectual property
rights to her performances, stage names
and likeness unless assigned in writing.

11. Costumes: Performer shall provide her
own costumes over which she retains
exclusive control provided they comply
with applicable laws.

12. Nature of Business: Performer
recognizes that she may be subjected to
nudity, sexually explicit language and
depictions of explicit conduct.
Performer represents that she does not
find such sights or sounds offensive.

Initial Page

Date Page  3/13/C

1

13. Tips or gratuities. Performer agrees not to charge patrons more than the mandatory service fee for private dances. However, any amounts voluntarily given by a patron to a performer which are over and above the mandatory price for private dances is a "tip" and is the sole property of performer.

## III.  OWNER'S OBLIGATIONS

14. COMPENSATION

A. VIP Room Rentals. Owner shall pay to Performer two-thirds (2/3) of each VIP Room Rental paid by a patron for private entertainment by Performer.

B. Champagne Room Rentals. Owner shall pay to Performer 75% of each Champagne Room Rental paid by a patron for private entertainment by Performer.

C. "Beaver Bucks". Owner shall pay Performer 90% of the face value of every Beaver Buck she accepts from patrons.

Private dance fees paid to Performer by a patron during Champagne Room rentals are the sole property of Performer, provided such private dances are in excess of Performer's minimum private dance requirement as set out in Paragraph 2A.

All compensation due Performer by Owner shall be paid by Owner at the end of the performance date.

D. Taxes. Performer shall be solely and exclusively responsible for all taxes owed on compensation paid to her by club.

15. Premises/Licenses: Owner agrees to maintain the premises and all applicable licenses and permits and will incur all costs associated therewith.

16. Advertising and Music copyright fees. Owner agrees to pay for all copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties, and will incur all costs associated therewith.

17. Dance Records: Owner will keep an accurate tally of private dances, VIP and Champagne Room Rentals attributable to Performer.

18. Mandatory Fees for Private Dances and Room Rentals. Owner will post and announce mandatory service fees for private dance services, VIP and Champagne Room Rentals such that patrons are notified of the mandatory fee for such services.

19. Privacy Rights: Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

## IV.  OTHER CONTRACT TERMS

20. No Employment Relationship, Joint Venture or Partnership. THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP. PERFORMER ACKNOWLEDGES AND AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE ANY EMPLOYEE-RELATED BENEFITS.

The parties agree that if they were "employer and employee", Owner would retain as its sole property all mandatory private dance service and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

21. Unjust Enrichment: If Performer is deemed to be an employee entitled to wages during any period of this Contract, then Performer agrees to account for all mandatory patron revenues she maintained under the terms of this contract, and return to Owner all such patron revenues which she retained under the terms of this Contract during such period.

22. Material Breach/Notice: In the event of a Material Breach, the non-breaching party may terminate this Contract UPON 24 hours NOTICE to the other. A Material Breach is breaching this contract on two consecutive performance dates, and is grounds for termination of the Contract.

23. Voluntary Termination/Notice: Either party may terminate this contract on 3 days notice to the other for any or no reason.

24. Severability: Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

25. Arbitration: Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, shall be decided by binding Arbitration under the Federal Arbitration Act and in conformity with the California Arbitration Act. Such Arbitration shall be before a neutral arbitrator who shall be permitted to award any relief available in a Court, including fees and costs to the prevailing party. Any award may be entered in any court having jurisdiction.

26. Waiver of Statute of Limitations. THE PARTIES AGREE THAT ANY CLAIMS MUST BE BROUGHT WITHIN 6 MONTHS. The parties agree to commence any action relating to this contract within 6 months and to waive any statute of limitation to the contrary.

27. LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT OF LEGAL AGE 18. PERFORMER REPRESENTS THAT SHE IS OF LAWFUL AGE, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.

Initial Page _____
Date Page _____

PERFORMER REPRESENTS AS FOLLOW THAT SHE
HAS FULLY READ THIS CONTRACT AND HAD AN
OPPORTUNITY TO HAVE HER LAWYER REVIEW THE
CONTRACT.

Owner:  SAW ENTERTAINMENT LTD, LLC

ADDRESS 1031 KEARNY STREET

City    SAN FRANCISCO, CA 94133

BY:  GREG BUFFIN

Signature

Its  MGR  (Atm)

DATE:  3·13·03

B(11)002est

Performers' Name  May

Signature  Vixen  Redacted

Stage name  Vixen  Redacted

Addres  Redacted          SS

City  San Francisco  94110

Phone #  Redacted

Social Security #  Redacted

License/Permit #

Date:  3/13/03

# EXHIBIT "B"

# HUSTLER SAN FRANCISCO
## CLUB/PERFORMER CONTRACT

**THIS IS A LEGAL DOCUMENT. DO NOT SIGN UNLESS YOU UNDERSTAND IT.**

WHEREAS, Owner, "MILENNIUM" operates a business premise which is unique due to zoning and/or licensing which allows it to be used to offer live nude or semi-nude entertainment to the adult public;

WHEREAS: Performer wants to market and perform private dance entertainment on Owners' unique premises;

WHEREAS: The parties desire to establish how the proceeds from private room rentals and private dance services marketed at Owner's valuable and unique premises are to be allocated between the parties;

Performer and Owner agree as follows:

This Contract begins today and ends one year from the signing, or when terminated by proper notice by either party.

### I.    ALLOCATION OF PRIVATE DANCE FEES

1. **Collection Box:** The parties agree that patrons will pay mandatory private dance fees by depositing them into the dance fee collection box, which is the property of Owner.

2. **Allocation of Private Dance Fees.**

A. **Minimum Dances.** Performer agrees to perform a minimum of **8** private dances per performance date.  This minimum may, at owner's discretion, be reduced based on scheduling concerns.  *The proceeds from the mandatory price paid by the patron for all minimum private dances shall be the exclusive property of the Owner.*

B. **Private Dances in excess of Minimum Dances.** *The proceeds from the mandatory price performed in excess of the minimum set forth at Paragraph 2A shall be the exclusive property of Performer.*

### II.    PERFORMER'S OBLIGATIONS

1. **Market Private Dance Services.** Performer agrees to use her skills and artistic talents to market private dance services to club patrons for a set and mandatory service fee, and

A. Perform nude or semi-nude entertainment as permitted by law;

B. Possess permits as required by law and

be knowledgeable about and avoid violating any laws, rules or regulations.

3. **Schedule Performance Dates.**  Performer agrees to perform a minimum of **3** performance dates per week during this contract.

4. **Appear on Stage and in Promotions.** Performer agrees to appear on stage a minimum of **3** times per performance date, and to appear in club promotional dances held during her performance date.

5. **Provide Advance Schedules.** Performer agrees to schedule her performances one week in advance.  On each scheduled performance date, Performer promises to arrive on time and complete her full performance date as scheduled.

6. **Respect Property, Law and Safety.** Performer agrees to avoid damaging owners' property, and to comply with all safety and legal requirements, including Owner's *no tolerance policy* concerning the use of drugs or under-age drinking on its premises.

7. **No assignment:** This contract concerns Performer's personal skill and artistic talents. She may not assign her rights or obligations under this Contract, but may supply a qualified substitute.

8. **Non-Exclusive:** Performer's obligations are non-exclusive; she is free to perform at other businesses.

9. **Control of Performances:** Performer retains exclusive control over the character, manner and means of her performances, so long as no law is violated.

10. **Intellectual Property:** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

11. **Costumes:** Performer shall provide her own costumes over which she retains exclusive control provided they comply with applicable laws.

12. **Nature of Business:** Performer recognizes that she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive.

Initial Page _____

Date Page _____

1

13. Tips or gratuities. Performer agrees not to charge patrons more than the mandatory service fee for private dances. However, any amounts voluntarily given by a patron to a performer which are over and above the mandatory price for private dances is a "tip" and is the sole property of performer.

## III.  OWNER'S OBLIGATIONS

### 14. COMPENSATION

A. VIP Room Rentals. Owner shall pay to Performer two-thirds (2/3) of each VIP Room Rental paid by a patron for private entertainment by Performer.

B. Champagne Room Rentals. Owner shall pay to Performer 75% of each Champagne Room Rental paid by a patron for private entertainment by Performer.

C. "Beaver Bucks". Owner shall pay Performer 90% of the face value of every Beaver Buck she accepts from patrons.

Private dance fees paid to Performer by a patron during Champagne Room rentals are the sole property of Performer, provided such private dances are in excess of Performer's minimum private dance requirement as set out in Paragraph 2A.

All compensation due Performer by Owner shall be paid by Owner at the end of the performance date.

D. Taxes. Performer shall be solely and exclusively responsible for all taxes owed on compensation paid to her by club.

15. Premises/Licenses: Owner agrees to maintain the premises and all applicable licenses and permits and will incur all costs associated therewith.

16. Advertising and Music copyright fees. Owner agrees to pay for all copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties, and will incur all costs associated therewith.

17. Dance Records: Owner will keep an accurate tally of private dances, VIP and Champagne Room Rentals attributable to Performer.

18. Mandatory Fees for Private Dances and Room Rentals. Owner will post and announce mandatory service fees for private dance services, VIP and Champagne Room Rentals such that patrons are notified of the mandatory fee for such services.

19. Privacy Rights: Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

## IV.    OTHER CONTRACT TERMS

20. No Employment Relationship, Joint Venture or Partnership.  .THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP.  PERFORMER ACKNOWLEDGES AND AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE ANY EMPLOYEE-RELATED BENEFITS.

The parties agree that if they were "employer and employee", Owner would retain as its sole property all mandatory private dance service and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

21. Unjust Enrichment: If Performer is deemed to be an employee entitled to wages during any period of this Contract, then Performer agrees to account for all mandatory patron revenues she maintained under the terms of this contract, and return to Owner all such patron revenues which she retained under the terms of this Contract during such period.

22. Material Breach/Notice: In the event of a Material Breach, the non-breaching party may terminate this Contract UPON 24 hours NOTICE to the other. A Material Breach is breaching this contract on two consecutive performance dates, and is grounds for termination of the Contract.

23. Voluntary Termination/Notice: Either party may terminate this contract on 3 days notice to the other for any or no reason.

24. Severability: Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

25. Arbitration: Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, shall be decided by binding Arbitration under the Federal Arbitration Act and in conformity with the California Arbitration Act. Such Arbitration shall be before a neutral arbitrator who shall be permitted to award any relief available in a Court, including fees and costs to the prevailing party. Any award may be entered in any court having jurisdiction.

26. Waiver of Statute of Limitations. THE PARTIES AGREE THAT ANY CLAIMS MUST BE BROUGHT WITHIN 6 MONTHS. The parties agree to commence any action relating to this contract within 6 months and to waive any statute of limitation to the contrary.

27. LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT OF LEGAL AGE 18. PERFORMER REPRESENTS THAT SHE IS OF LAWFUL AGE, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.

Initial Page _____
Date Page _____

2

PERFORMER REPRESENTS AS FOLLOW THAT SHE
HAS FULLY READ THIS CONTRACT AND HAD AN
OPPORTUNITY TO HAVE HER LAWYER REVIEW THE
CONTRACT.

Owner:   SAW ENTERTAINMENT LTD, LLC

ADDRESS 1031 KEARNY STREET

City   SAN FRANCISCO, CA 94133

BY: CLEG RUFFIN

Signature

Its   MGR (COM)

DATE: 2.29.03

Bt]11002est

Performers' Name   Redacted

Signature   Redacted

Stage name   Redacted

Address   Redacted

City   San Fra...  Zip 94107
Phone #   Redacted
Soci  Security  
License/Permit #

Date:   1/29/03

3

**EXHIBIT "C"**

# HUSTLER SAN FRANCISCO
## CLUB/PERFORMER CONTRACT

THIS IS A LEGAL DOCUMENT. DO NOT
SIGN UNLESS YOU UNDERSTAND IT.

WHEREAS: Owner, "MILENNIUM" operates a
business premise which is unique due to
zoning and/or licensing which allows it
to be used to offer live nude or semi-
nude entertainment to the adult public;

WHEREAS: Performer wants to market and
perform private dance entertainment on
Owners' unique premises;

WHEREAS: The parties desire to establish
how the proceeds from private room
rentals and private dance services
marketed at Owner's valuable and unique
premises are to be allocated between the
parties;

Performer and Owner agree as follows:

This Contract begins today and ends one
year from the signing, or when terminated
by proper notice by either party.

## I.   ALLOCATION OF PRIVATE DANCE FEES

1. Collection Box: The parties agree that
patrons will pay mandatory private dance
fees by depositing them into the dance
fee collection box, which is the property
of Owner.

2. Allocation of Private Dance Fees.

A. Minimum Dances. Performer agrees to
perform a minimum of $\underline{8}$ private dances
per performance date. This minimum may,
at owner's discretion, be reduced based
on scheduling concerns. *The proceeds
from the mandatory price paid by the
patron for all minimum private dances
shall be the exclusive property of the
Owner.*

B. Private Dances in excess of Minimum
Dances. *The proceeds from the mandatory
price performed in excess of the minimum
set forth at Paragraph 2A shall be the
exclusive property of Performer.*

## II.   PERFORMER'S OBLIGATIONS

1. Market Private Dance Services.
Performer agrees to use her skills and
artistic talents to market private dance
services to club patrons for a set and
mandatory service fee, and

A. Perform nude or semi-nude
entertainment as permitted by law;

B. Possess permits as required by law and

be knowledgeable about and avoid
violating any laws, rules or regulations.

3. Schedule Performance Dates. Performer
agrees to perform a minimum of $\underline{3}$
performance dates per week during this
contract.

4. Appear on Stage and in Promotions.
Performer agrees to appear on stage a
minimum of $\underline{3}$ times per performance date,
and to appear in club promotional dances
held during her performance date.

5. Provide Advance Schedules: Performer
agrees to schedule her performances one
week in advance. On each scheduled
performance date, Performer promises to
arrive on time and complete her full
performance date as scheduled.

6. Respect Property, Law and Safety.
Performer agrees to avoid damaging
owners' property, and to comply with all
safety and legal requirements, including
Owner's no tolerance policy concerning
the use of drugs or under-age drinking on
its premises.

7. No assignment: This contract concerns
Performer's personal skill and artistic
talents. She may not assign her rights or
obligations under this Contract, but may
supply a qualified substitute.

8. Non-Exclusive: Performer's
obligations are non-exclusive; she is
free to perform at other businesses.

9. Control of Performances: Performer
retains exclusive control over the
character, manner and means of her
performances, so long as no law is
violated.

10. Intellectual Property: Performer
shall retain all intellectual property
rights to her performances, stage names
and likeness unless assigned in writing.

11. Costumes: Performer shall provide her
own costumes over which she retains
exclusive control provided they comply
with applicable laws.

12. Nature of Business: Performer
recognizes that she may be subjected to
nudity, sexually explicit language and
depictions of explicit conduct.
Performer represents that she does not
find such sights or sounds offensive.

Initial Page _____ 6~

Date Page _____ 2.27.03

1

13. Tips or gratuities. Performer agrees not to charge patrons more than the mandatory service fee for private dances. However, any amounts voluntarily given by a patron to a performer which are over and above the mandatory price for private dances is a "tip" and is the sole property of performer.

III.   OWNER'S OBLIGATIONS

14. COMPENSATION

A. VIP Room Rentals. Owner shall pay to Performer two-thirds (2/3) of each VIP Room Rental paid by a patron for private entertainment by Performer.

B. Champagne Room Rentals. Owner shall pay to Performer 75% of each Champagne Room Rental paid by a patron for private entertainment by Performer.

C. "Beaver Bucks". .Owner shall pay Performer 90% of the face value of every Beaver Buck she accepts from patrons.

Private dance fees paid to Performer by a patron during Champagne Room rentals are the sole property of Performer, provided such private dances are in excess of Performer's minimum private dance requirement as set out in Paragraph 2A.

All compensation due Performer by Owner shall be paid by Owner at the end of the performance date.

D. Taxes. Performer shall be solely and exclusively responsible for all taxes owed on compensation paid to her by club.

15. Premises/Licenses: Owner agrees to maintain the premises and all applicable licenses and permits and will incur all costs associated therewith.

16. Advertising and Music copyright fees. Owner agrees to pay for all copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties, and will incur all costs associated therewith.

17. Dance Records: Owner will keep an accurate tally of private dances, VIP and Champagne Room Rentals attributable to Performer.

18. Mandatory Fees for Private Dances and Room Rentals. Owner will post and announce mandatory service fees for private dance services, VIP and Champagne Room Rentals such that patrons are notified of the mandatory fee for such services.

19. Privacy Rights: Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

IV.    OTHER CONTRACT TERMS

20. No Employment Relationship, Joint Venture or Partnership. .THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP. PERFORMER ACKNOWLEDGES AND AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE ANY EMPLOYEE-RELATED BENEFITS.

The parties agree that if they were "employer and employee", Owner would retain as its sole property all mandatory private dance service and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

21. Unjust Enrichment: If Performer is deemed to be an employee entitled to wages during any period of this Contract, then Performer agrees to account for all mandatory patron revenues she maintained under the terms of this contract, and return to Owner all such patron revenues which she retained under the terms of. this Contract during such period.

22. Material Breach/Notice: In the event of a Material Breach, the non-breaching party may terminate this Contract UPON 24 hours NOTICE to the other. A Material Breach is breaching this contract on two consecutive performance dates, and is grounds for termination of the Contract.

23. Voluntary Termination/Notice: Either party may terminate this contract on 3 days notice to the other for any or no reason.

24. Severability: Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

25. Arbitration: Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, shall be decided by binding Arbitration under the Federal Arbitration Act and in conformity with the California Arbitration Act. Such Arbitration shall be before a neutral arbitrator who shall be permitted to award any relief .available in a Court, including fees and costs to the prevailing party. Any award may be entered in any court having jurisdiction.

26. Waiver of Statute of Limitations. THE PARTIES AGREE THAT ANY CLAIMS MUST BE BROUGHT WITHIN 6 MONTHS.  The parties agree to commence any action relating to this contract within 6 months and to waive any statute of limitation to the contrary.

27. LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT OF LEGAL AGE 18, PERFORMER REPRESENTS THAT SHE IS OF LAWFUL AGE, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.

Initial Page  ___
Date Page     2/27/03

2

PERFORMER REPRESENTS AS FOLLOW THAT SHE
HAS FULLY READ THIS CONTRACT AND HAD AN
OPPORTUNITY TO HAVE HER LAWYER REVIEW THE
CONTRACT.

Owner:   SAW ENTERTAINMENT LTD, LLC

ADDRESS 1031 KEARNY STREET

City    SAN FRANCISCO, CA 94133

BY:

Signature

Its: MGR   (CAM )

Performers' Name _____ [Redacted]

Signature _____ [Redacted]

Stage name _____ [Redacted]

Address _____ [Redacted]

City  SAN FRANCISCO  Zip  CA 94103
Phone # _____ [Redacted]
Social Security _____ [Redacted]
License/Permit # _____

DATE: 2-22-03

Date: 2/27/03

B:111002est

**EXHIBIT "D"**

# MARGOLIS & MORIN LLP

### ATTORNEYS AT LAW

| | | |
|---|---|---|
| SAN DIEGO<br>750 B STREET<br>SUITE 3300<br>SAN DIEGO, CA 92101<br>Telephone (619) 685-1625<br>Fax (619) 685-1626 | LOS ANGELES<br>444 SOUTH FLOWER STREET<br>SIXTH FLOOR<br>LOS ANGELES, CA 90071<br>Telephone (213) 683-0300<br>Fax (213) 683-0303<br>www.winlaw.com | SAN FRANCISCO<br>111 PINE STREET<br>SUITE 1315<br>SAN-FRANCISCO, CA 94111<br>Telephone (415) 986-2144<br>Fax (415) 986-4461 |

Writer's Direct Dial
(213) 243-6370

May 17, 2005

**By Fax: (415) 474-7108**

Gregory S. Walston
Williams Walston LLP
225 Bush Street, 16th Floor
San Francisco, CA 94104

> Re:    Jones, et al. v. Déjà Vu, Inc., et al.
>          USDC Case No. C-05-0997 BZ

# ATTACHMENTS SUBJECT TO COURT-ORDERED PROTECTION;
# FOR ATTORNEYS EYES ONLY

Dear Mr. Walston:

Yesterday I forwarded various arbitration agreements signed by Plaintiffs Roes 1, 2 and 5 and agreeing to arbitrate with Defendant Chowder House, Inc. I asked that you respond to Chowder's arbitration demand by days end. I have yet to hear from you.

Today I forward additional arbitration agreements signed by Plaintiffs Roes 3, 4 and 6 which agree to arbitrate with Defendant SAW Entertainment Ltd. I also enclose agreements signed by Plaintiff Roe 7 agreeing to arbitrate with Defendant Déjà Vu San Francisco LLC. Relative to these contracts as well, Defendants demand that Plaintiffs comply with their arbitration agreements and dismiss their claims against these Defendants in the above-referenced litigation.

Finally, given the Court's May 4, 2005 Protective Order, I ask that you stipulate to the authenticity and admissibility of each of the "Attorneys Eyes Only" arbitration agreements forwarded to you today and yesterday so that they might be presented to the Court in support of Defendants' various anticipated motions to compel arbitration.

LGW_02117

MARGOLIS & MORIN LLP

ATTORNEYS AT LAW

Gregory S. Walston
May 17, 2005
Re: Jones, et al. v. Déjà Vu, Inc., et al.
Page 2

Thank you for your immediate responses to the foregoing.

Very truly yours,

Linda Toutant

LMT:mmf
Enclosure(s )

cc: Doug Melton, Esq. (by fax 415-397-6392; w/o enclosures)
    Edith S. Thomas, Esq. (by fax 760 728-9518;.w/o enclosures)
    Michael B. Margolis, Esq. (w/o enclosures)

# EXHIBIT 2

1  MICHAEL B. MARGOLIS, ESQ. SBN: 087785
   LINDA M. TOUTANT, ESQ. SBN: 158866
2  MARGOLIS & MORIN LLP
3  444 South Flower Street, 6th Floor
   Los Angeles, CA 90071
4  Telephone: (213) 683-0300
   Fax: (213) 683-0303
5  margolis@winlaw.com
   toutant@winlaw.com
6  Attorneys for Defendants CHOWDER HOUSE, INC. dba HUNGRY I; DÉJÀ VU - SAN
7  FRANCISCO LLC dba CENTERFOLDS; SAN FRANCISCO·ROARING 20'S LLC dba
   ROARING 20'S; SAN FRANCISCO GARDEN OF EDEN LLC dba GARDEN OF EDEN; and
8  SAW ENTERTAINMENT LTD. dba LARRY FLINT'S HUSTLER CLUB

9

10

11                    UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

13

14  KIMBERLY JONES, et al.,                Case No. C-05-0997 BZ

15              Plaintiffs,                 **DECLARATION OF XTEN BARTON
                                            IN SUPPORT OF CHOWDER HOUSE,**
16       v.                                 **INC.'S MOTION FOR AN ORDER
                                            COMPELLING ARBITRATION OF ALL**
17                                          **CLAIMS BETWEEN DEFENDANT
                                            CHOWDER HOUSE, INC. AND**
18  DÉJÀ VU, INC., et al.,                  **PLAINTIFFS KIMBERLY JONES, ROE 1,
                                            ROE 2 AND ROE 5 (NOW PUBLICLY**
19              Defendants.                 **IDENTIFIED AS MELISSA LEWIS)**

20

21                                          [Complete List Of Moving Papers:
                                             1.  Notice of Motion and Motion;
22                                           2.  Memorandum of Points and Authorities;
                                             3.  Declaration of Xten Barton;
23                                           4.  Declaration of Linda M. Toutant;
                                             5.  Request for Judicial Notice; and
24                                           6.  [Proposed] Order]

25

26                                          **Date:   June 29, 2005**
                                            **Time:   10:00 a.m.**
27                                          **Dept:   G**

28

MLC(AabCrow)_50600|Dec(XB)

## DECLARATION OF XTEN BARTON

I, Xten Barton, declare:

1.    I am a manager for Chowder House, Inc. dba Hungry I, Defendant in this action.

2.    Attached hereto as Exhibit A is a true and correct copy of a February 20, 2004 agreement entitled "HUNGRY I CLUB/PERFORMER CONTRACT" which agreement I recognize as having been signed by General Manager Ed Sharp and a woman known to me by the stage name "Mika" and otherwise legally named Kimberly Jones.

3.    Attached hereto collectively as Exhibit B are true and correct copies of agreements entitled "HUNGRY I CLUB/PERFORMER CONTRACT" dated December 17, 2002, April 8, 2003 and April 4, 2005, which agreements I recognize as having been signed by General Managers Duane Singh and Ian Cabungcal and a woman known to me by the stage name "Alex" and otherwise legally named Melissa Lewis.

4.    Attached hereto as Exhibit C is a true and correct copy of a February 20, 2004 offer entitled "TO ALL ENTERTAINERS OFFER OF EMPLOYMENT STATUS" which offer I also recognize as having been signed by Kimberly Jones.

5.    Attached hereto as Exhibit D, collectively, are true and correct copies of a December 17, 2002 and a April 4, 2005 offer each entitled "TO ALL ENTERTAINERS OFFER OF EMPLOYMENT STATUS" which offers I also recognize as having been signed by Melissa Lewis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct of my own personal knowledge, and that if called upon to do so I would competently testify to the facts stated herein, and that I executed this Declaration on May 17, 2005 at San Francisco, California.

Xten Barton

1

EXHIBIT "A"

# HUNGRY I CLUB / PERFORMER CONTRACT
## CLUB/PERFORMER CONTRACT

**THIS IS A LEGAL DOCUMENT. DO NOT SIGN UNLESS YOU UNDERSTAND IT.**

WHEREAS: Hungry I _____, operates a business premise which is unique due to zoning and/or licensing which allows it to be used to offer live nude or semi-nude entertainment to the adult public;

WHEREAS: Performer wants to market and perform private dance entertainment on Owners' unique premises;

WHEREAS: The parties desire to establish how the proceeds from Private Dance services marketed at Owner's valuable and unique premises are to be allocated between the parties;

Performer and Owner agree as follows:

This Contract begins today and ends _____, 2003, or when terminated with proper notice by either party.

1 YEAR FROM
DATE STAMP

### I.   ALLOCATION OF PRIVATE DANCE FEES

1. **Collection Box:** The parties agree that patrons will pay mandatory private dance fees by depositing them into the dance fee collection box.

2. **Allocation of Private Dance Fees:** The parties agree to allocate proceeds from Private Dance Fees collected as follows:

A. **Minimum Private Dances:** Performer agrees to perform a minimum of ___ Private Dances per performance date. *The Private Dance Fees paid by the patron for these Minimum Private Dances shall be the exclusive property of the Owner.*

B. **Reducing Minimum Private Dances:**

**Complete Performances:** The minimum shall be reduced to ___ if Performer, though not on schedule, completes **full** performance date.

**Scheduled Performances:** This minimum shall be reduced to ___ if Performer schedules ___ performance date in a week, performs at the time and date scheduled and completes the full Performance Date.

C. **Post Minimum Allocation.** The parties agree to the following allocation of all Private Dance Fees *which exceed the applicable minimum set forth above:*

| | | |
|---|---|---|
| $20 DANCES: | Performer $__ | Club $__ |
| $15 DANCES: | Performer $__ | Club $__ |
| VIP DANCES: | Performer $__ | Club $__ |

Allocation of Private Dance fees shall be made at the end of each performance date. Private Dance Counts will be relied upon in the event the collection box contains less private dance fees than dance counts

indicate.

D. **Income Taxes.** Each party shall be solely responsible for reporting their portion of the income for tax purposes.

### II.   PERFORMER'S OBLIGATIONS

1. **Market Private Dance Services.** Performer agrees to use her skills, artistic talents and best efforts to market private dance services to patrons for a set and mandatory service fee, and

A. Perform nude or semi-nude entertainment as permitted by law;

B. Possess permits as required by law and be knowledgeable about and avoid violating any laws, rules or regulations.

2. **Appear on Stage and in Promotions.** Performer agrees to appear on stage on rotational basis, and to appear in club promotional dances held during her performance date.

3. **Schedules:** Owner agrees to provide Performer with available Performance Dates. Performer is free to perform if and when she chooses based on such availability. If performer chooses to be on the schedule, she agrees to schedule her performances one-week in advance. Once scheduled, Performer promises to arrive on time and complete the full performance date as scheduled. Failure to do so is a breach of contract.

4. **Respect Property, Law and Safety.** Performer agrees not to damage owner's property, and to comply with safety and legal requirements, including Owner's *no tolerance policy* concerning the use of drugs or alcohol on its premises.

5. **No assignment:** This contract concerns Performer's personal skill and artistic talents. She may not assign her rights or obligations under this Contract, but may supply a qualified substitute.

6. **Non-Exclusive:** Performer's obligations are non-exclusive; she is free to perform at other businesses.

7. **Control of Performances:** Performer has exclusive control over the character, manner and means of her performances, so long as no law is violated.

8. **Intellectual Property:** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

9. **Costumes:** Performer shall provide her own costumes, over which she retains exclusive control provided they comply with applicable laws.

# HUNGRY I CLUB / PERFORMER CONTRACT

**10. Nature of Business:** Performer recognizes that she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive.

**11. Tips or gratuities.** Performer agrees not to charge patrons more than the mandatory service fee for private dances. However, any amounts voluntarily given by a patron to performer which are over and above the mandatory service fee for private dances is a "tip" and is the sole property of performer.

## III.    OWNER'S OBLIGATIONS

**1. Premises/Licenses:** Owner agrees to maintain the premises and all applicable licenses and permits and incur all costs associated therewith.

**2. Advertising and Music copyright fees.** Owner agrees to pay for all copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties, and to incur all costs associated therewith.

**3. Dance Records:** Owner will keep an accurate tally of private dances and room rentals attributable to Performer.

**4. Mandatory Fees for Private Dances and Room Rentals:** Owner will post and announce mandatory service fees for private dance services and room rentals such that patrons are notified of the mandatory fee for such services.

**5. Privacy Rights:** Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

## IV.    OTHER CONTRACT TERMS

**1. No Employment Relationship, Joint Venture or Partnership.** THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP. PERFORMER ACKNOWLEDGES AND AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE ANY EMPLOYEE-RELATED BENEFITS. The parties agree that if they were "employer and employee", Owner would retain as its' sole property all mandatory private dance service and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

**2. Unjust Enrichment:** If Performer is deemed to be an employee entitled to

wages during any period of this contract, then Performer agrees to account for all mandatory patron revenues she maintained under the terms of this contract, and return to Owner all such patron revenues which she retained under the terms of this Contract during such period. For any period during which Performer is deemed an employee, she shall be paid minimum wage along with any other legally required employee benefits.

**3. Material Breach/Notice:** In the event of a Material Breach, the non-breaching party may terminate this Contract UPON 24 hours NOTICE to the other. A Material Breach is a breach of this contract on two consecutive performance dates, and is grounds for termination of the Contract.

**4. Voluntary Termination/Notice:** Either party may terminate on 3 days notice to the other for any or no reason.

**5. Severability:** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

**6. Arbitration:** Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, shall be decided by binding Arbitration under the Federal Arbitration Act and in conformity with the California Arbitration Act. Such Arbitration shall be before a neutral arbitrator who shall be permitted to award any relief available in a Court, including fees and costs to the prevailing party. Any award may be entered in any court having jurisdiction.

**7. Waiver of Statute of Limitations.** The parties agree to commence any action relating to this contract within 6 months and to waive any statute of limitation to the contrary.

**8. Waiver of Class Action.** The parties agree that any dispute shall be litigated individually, and not as a class action. Performer waives her right to pursue class action status.

**9. LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT OF LEGAL AGE 21, PERFORMER REPRESENTS THAT SHE IS OF LAWFUL AGE, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.**

PERFORMER REPRESENTS THAT SHE HAS FULLY READ THIS CONTRACT AND HAD AN OPPORTUNITY TO HAVE HER LAWYER REVIEW THE CONTRACT.

Owner: Hungry I
ADDRESS 540 Broadway
City S.F. Zip 94133
BY: Ed Shapen
Signature _____
Its' G.M.

DATE: 2/20/04

Performers' Name Kimberly Jones
Signature _____
Stage name Mika
Address 905 Sumtn
City CA Zip 94111
Phone # 415-756-9412
Social Security # 547-46-K4F
Date: 2/20/04

72601hungWest

EXHIBIT "B"

# HUNGRY BLUE PERFORMANCE CRITICAL

## CLUB/PERFORMER CONTRACT

**THIS IS A LEGAL DOCUMENT. DO NOT SIGN UNLESS YOU UNDERSTAND IT.**

WHEREAS: Owner, Hungry | operates a business premise which is unique due to zoning and/or licensing which allows it to be used to offer live nude or semi-nude entertainment to the adult public;

WHEREAS: Performer wants to market and perform private dance entertainment on Owners' unique premises;

WHEREAS: The parties desire to establish how the proceeds from Private Dance services marketed at Owner's valuable and unique premises are to be allocated between the parties;

Performer and Owner agree as follows:

This Contract begins today and ends AUGUST 1, 2003, or when terminated with proper notice by either party.

### I. ALLOCATION OF PRIVATE DANCE FEES

1. **Collection Box:** The parties agree that patrons will pay mandatory private dance fees by depositing them into the dance fee collection box.

2. **Allocation of Private Dance Fees:** The parties agree to allocate proceeds from Private Dance Fees collected as follows:

A. **Minimum Private Dances:** Performer agrees to perform a minimum of **9** Private Dances per performance date. **The Private Dance fees paid by the patron for these Minimum Private Dances shall be the exclusive property of the Owner.**

B. Reducing Minimum Private Dances:

**Complete Performances:** The minimum shall be reduced to **0** if Performer, though not on schedule, completes **full** performance date.

**Scheduled Performances:** This minimum shall be reduced to **4** if Performer schedules **2** performance date in a week, performs at the time and date scheduled and completes the full performance Date.

C. **Post Minimum Allocation.** The parties agree to the following allocation of all Private Dance Fees which exceed the applicable minimum set forth above:

**10** | $20 DANCES: | Performer $**15** club $**5**
| $40 DANCES: | Performer $**10** club $**7**
| VIP DANCES: | Performer $**50** club $**150**

Allocation of Private Dance fees shall be made at the end of each performance date. Private Dance Counts will be relied upon in the event the collection box contains less private dance fees than dance counts

indicate.

D. **Income Taxes.** Each party shall be solely responsible for reporting their portion of the income for tax purposes.

### II. PERFORMER'S OBLIGATIONS

1. **Market Private Dance Services.** Performer agrees to use her skills, artistic talents and best efforts to market private dance services to patrons for a set and mandatory service fee, and

A. Perform nude or semi-nude entertainment as permitted by law;

B. Possess permits as required by law and be knowledgeable about and avoid violating any laws, rules or regulations.

2. **Appear on Stage and in Promotions.** Performer agrees to appear on stage on rotational basis, and to appear in club promotional dances held during her performance date.

3. **Schedules:** Owner agrees to provide Performer with available Performance Dates. Performer is free to perform if and when she chooses based on such availability. If performer chooses to be on the schedule, she agrees to schedule her performances one-week in advance. Once scheduled, Performer promises to arrive on time and complete the full performance date as scheduled. Failure to do so is a breach of contract.

4. **Respect Property, Law and Safety.** Performer agrees not to damage owner's property, and to comply with safety and legal requirements, including Owner's no tolerance policy concerning the use of drugs or alcohol on its premises.

5. **No assignment:** This contract concerns Performer's personal skill and artistic talents. She may not assign her rights or obligations under this Contract, but may supply a qualified substitute.

6. **Non-Exclusive:** Performer's obligations are non-exclusive; she is free to perform at other businesses.

7. **Control of Performances:** Performer has exclusive control over the character, manner and means of her performances, so long as no law is violated.

8. **Intellectual Property:** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

9. **Costumes:** Performer shall provide her own costumes, over which she retains exclusive control provided they comply with applicable laws.

Case 3:05-cv-00997-BZ Document 74 Filed 05/23/2005 Page 9 of 48
HUNGRY I. PERFORMER CONTRACT
Case 3:05-cv-00448-ENB /Document 15 Filed 13/18/09 Page 29 of 39

10. **Nature of Business:** Performer recognizes that she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive.

11. **Tips or gratuities.** Performer agrees not to charge patrons more than the mandatory service fee for private dances. However, any amounts voluntarily given by a patron to performer which are over and above the mandatory service fee for private dances is a "tip" and is the sole property of performer.

### III.   OWNER'S OBLIGATIONS

1. **Premises/Licenses:** Owner agrees to maintain the premises and all applicable licenses and permits and incur all costs associated therewith.

2. **Advertising and Music copyright fees.** Owner agrees to pay for all copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties, and to incur all costs associated therewith.

3. **Dance Records:** Owner will keep an accurate tally of private dances and room rentals attributable to Performer.

4. **Mandatory Fees for Private Dances and Room Rentals.** Owner will post and announce mandatory service fees for private dance services and room rentals such that patrons are notified of the mandatory fee for such services.

5. **Privacy Rights:** Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

### IV.   OTHER CONTRACT TERMS

1. **No Employment Relationship, Joint Venture or Partnership.** THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP. PERFORMER ACKNOWLEDGES AND AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE ANY EMPLOYEE-RELATED BENEFITS. The parties agree that if they were "employer and employee", Owner would retain as its sole property all mandatory private dance service and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

2. **Unjust Enrichment:** If Performer is deemed to be an employee entitled to

wages during any period of this contract, then Performer agrees to account for all mandatory patron revenues she maintained under the terms of this contract, and return to Owner all such patron revenues which she retained under the terms of this Contract during such period. For any period during which Performer is deemed an employee, she shall be paid minimum wage along with any other legally required employee benefits.

3. **Material Breach/Notice:** In the event of a Material Breach, the non-breaching party may terminate this Contract UPON 24 hours NOTICE to the other. A Material Breach is a breach of this contract on two consecutive performance dates, and is grounds for termination of the Contract.

4. **Voluntary Termination/Notice:** Either party may terminate on 3 days notice to the other for any or no reason.

5. **Severability:** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

6. **Arbitration:** Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, shall be decided by binding Arbitration under the Federal Arbitration Act and in conformity with the California Arbitration Act. Such Arbitration shall be before a neutral arbitrator who shall be permitted to award any relief available in a Court, including fees and costs to the prevailing party. Any award may be entered in any court having jurisdiction.

7. **Waiver of Statute of Limitations.** The parties agree to commence any action relating to this contract within 6 months and to waive any statute of limitation to the contrary.

8. **Waiver of Class Action.** The parties agree that any dispute shall be litigated individually, and not as a class action. Performer waives her right to pursue class action status.

9. **LEGAL AGE:** THIS CONTRACT IS VOID IF PERFORMER IS NOT OF LEGAL AGE **2l** PERFORMER REPRESENTS THAT SHE IS OF LAWFUL AGE, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.

PERFORMER REPRESENTS THAT SHE HAS FULLY READ THIS CONTRACT AND HAD AN OPPORTUNITY TO HAVE HER LAWYER REVIEW THE CONTRACT.

Owner: HUNGRY I.
ADDRESS CALL BROADWAY
City SAN FRANCISCO CA 94133
BY: HAL CARUNZAC
Signature _____
Its: GENERAL MANAGER

DATE: 12/16/02

Performers' Name Melissa Ann Lewis
Signature _____

Stage name ALEX
Address 1637 Grant Ave Apt 3
City San Francisco zip 94133
Phone # 805-215-2208
Social Security # 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
Date: 12/17/02

72602hungI/est

2

10. **Nature of Business:** Performer recognizes that she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive.

11. **Tips or gratuities.** Performer agrees not to charge patrons more than the mandatory service fee for private dances. However, any amounts voluntarily given by a patron to performer which are over and above the mandatory service fee for private dances is a "tip" and is the sole property of performer.

### III. OWNER'S OBLIGATIONS

1. **Premises/Licenses:** Owner agrees to maintain the premises and all applicable licenses and permits and incur all costs associated therewith.

2. **Advertising and Music copyright fees.** Owner agrees to pay for all copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties, and to incur all costs associated therewith.

3. **Dance Records:** Owner will keep an accurate tally of private dances and room rentals attributable to Performer.

4. **Mandatory Fees for Private Dances and Room Rentals.** Owner will post and announce mandatory service fees for private dance services and room rentals such that patrons are notified of the mandatory fee for such services.

5. **Privacy Rights:** Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

### IV. OTHER CONTRACT TERMS

1. **No Employment Relationship, Joint Venture or Partnership.** THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP. PERFORMER ACKNOWLEDGES AND AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE ANY EMPLOYEE-RELATED BENEFITS. The parties agree that if they were "employer and employee", Owner would retain as its sole property all mandatory private dance service and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

2. **Unjust Enrichment:** If Performer is deemed to be an employee entitled to

wages during any period of this contract, then Performer agrees to account for all mandatory patron revenues she maintained under the terms of this contract, and return to Owner all such patron revenues which she retained under the terms of this Contract during such period. For any period during which Performer is deemed an employee, she shall be paid minimum wage along with any other legally required employee benefits.

3. **Material Breach/Notice:** In the event of a Material Breach, the non-breaching party may terminate this Contract UPON 24 hours NOTICE to the other. A Material Breach is a breach of this contract on two consecutive performance dates, and is grounds for termination of the Contract.

4. **Voluntary Termination/Notice:** Either party may terminate on 3 days notice to the other for any or no reason.

5. **Severability:** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

6. **Arbitration:** Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, shall be decided by binding Arbitration under the Federal Arbitration Act and in conformity with the California Arbitration Act. Such Arbitration shall be before a neutral arbitrator who shall be permitted to award any relief available in a Court, including fees and costs to the prevailing party. Any award may be entered in any court having jurisdiction.

7. **Waiver of Statute of Limitations.** The parties agree to commence any action relating to this contract within 6 months and to waive any statute of limitation to the contrary.

8. **Waiver of Class Action.** The parties agree that any dispute shall be litigated individually, and not as a class action. Performer waives her right to pursue class action status.

9. **LEGAL AGE:** THIS CONTRACT IS VOID IF PERFORMER IS NOT OF LEGAL AGE TO 21 PERFORMER REPRESENTS THAT SHE IS OF LAWFUL AGE, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.

PERFORMER REPRESENTS THAT SHE HAS FULLY READ THIS CONTRACT AND HAD AN OPPORTUNITY TO HAVE HER LAWYER REVIEW THE CONTRACT.

Owner: HUNGRY  
ADDRESS  
City SAN FRANCISCO Zip 94163  
BY: IAN CARANGGAC  
Signature  
Its' GENERAL MANAGER  

DATE: 04.08.13

Performers' Name MELISSA LEWIS  
Signature  

Stage name ALEX  
Address  
City SAN FRANCISCO Zip  
Phone #  
Social Security #  
Date:                        72602hungWest

2

# HUNGRY I CLUB / PERFORMER CONTRACT

## CLUB/PERFORMER CONTRACT

**THIS IS A LEGAL DOCUMENT. DO NOT SIGN UNLESS YOU UNDERSTAND IT.**

**WHEREAS:** Owner, _Hungry I_, operates a business premise which is unique due to zoning and/or licensing which allows it to be used to offer live nude or semi-nude entertainment to the adult public;

**WHEREAS:** Performer wants to market and perform private dance entertainment on Owners' unique premises;

**WHEREAS:** The parties desire to establish how the proceeds from Private Dance services marketed at Owner's valuable and unique premises are to be allocated between the parties;

**Performer and Owner agree as follows:**

This Contract begins today and ends ~~August 17, 2005~~, or when terminated with proper notice by either party.

*[handwritten: 1 yr from date signed]*

### I.    ALLOCATION OF PRIVATE DANCE FEES

1. **Collection Box:** The parties agree that patrons will pay mandatory private dance fees by depositing them into the dance fee collection box.

2. **Allocation of Private Dance Fees:** The parties agree to allocate proceeds from Private Dance Fees collected as follows:

**A. Minimum Private Dances:** Performer agrees to perform a minimum of _9_ Private Dances per performance date. *The Private Dance Fees paid by the patron for these Minimum Private Dances shall be the exclusive property of the Owner.*

**B. Reducing Minimum Private Dances:**

**Complete Performances:** The minimum shall be reduced to _6_ if Performer, though not on schedule, completes _full_ performance date.

**Scheduled Performances:** This minimum shall be reduced to _4_ if Performer schedules _3_ performance date in a week, performs at the time and date scheduled and completes the full Performance Date.

**C. Post Minimum Allocation.** The parties agree to the following allocation of all Private Dance Fees which exceed the applicable minimum set forth above:

| | | |
|---|---|---|
| $20 DANCES: | Performer $ _15_ | Club $ _5_ |
| $10 DANCES: | Performer $ _70_ | Club $ _0_ |
| VIP DANCES: | Performer $ _700_ | Club $ _50_ |

*[handwritten: $108]*

Allocation of Private Dance fees shall be made at the end of each performance date. Private Dance Counts will be relied upon in the event the collection box contains less private dance fees than dance counts

indicate.

**D. Income Taxes.** Each party shall be solely responsible for reporting their portion of the income for tax purposes.

### II.    PERFORMER'S OBLIGATIONS

**1. Market Private Dance Services.** Performer agrees to use her skills, artistic talents and best efforts to market private dance services to patrons for a set and mandatory service fee, and

**A.** Perform nude or semi-nude entertainment as permitted by law;

**B.** Possess permits as required by law and be knowledgeable about and avoid violating any laws, rules or regulations.

**2. Appear on Stage and in Promotions.** Performer agrees to appear on stage on rotational basis, and to appear in club promotional dances held during her performance date.

**3. Schedules:** Owner agrees to provide Performer with available Performance Dates. Performer is free to perform if and when she chooses based on such availability. If performer chooses to be on the schedule, she agrees to schedule her performances one-week in advance.. Once scheduled, Performer promises to arrive on time and complete the full performance date as scheduled. Failure to do so is a breach of contract.

**4. Respect Property, Law and Safety.** Performer agrees not to damage owner's property, and to comply with safety and legal requirements, including Owner's no tolerance policy concerning the use of drugs or alcohol on its premises.

**5. No assignment:** This contract concerns Performer's personal skill and artistic talents. She may not assign her rights or obligations under this Contract, but may supply a qualified substitute.

**6. Non-Exclusive:** Performer's obligations are non-exclusive; she is free to perform at other businesses.

**7. Control of Performances:** Performer has exclusive control over the character, manner and means of her performances, so long as no law is violated.

**8. Intellectual Property:** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

**9. Costumes:** Performer shall provide her own costumes, over which she retains exclusive control provided they comply with applicable laws.

Date _4/4/05_

X _M_

# HUNGRY I CLUB / PERFORMER CONTRACT

**10. Nature of Business:** Performer recognizes that she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive.

**11. Tips or gratuities.** Performer agrees not to charge patrons more than the mandatory service fee for private dances. However, any amounts voluntarily given by a patron to performer which are over and above the mandatory service fee for private dances is a "tip" and is the sole property of performer.

## III.    OWNER'S OBLIGATIONS

**1. Premises/Licenses:** Owner agrees to maintain the premises and all applicable licenses and permits and incur all costs associated therewith.

**2. Advertising and Music copyright fees.** Owner agrees to pay for all copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties, and to incur all costs associated therewith.

**3. Dance Records:** Owner will keep an accurate tally of private dances and room rentals attributable to Performer.

**4. Mandatory Fees for Private Dances and Room Rentals.** Owner will post and announce mandatory service fees for private dance services and room rentals such that patrons are notified of the mandatory fee for such services.

**5. Privacy Rights:** Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

## IV.    OTHER CONTRACT TERMS

**1. No Employment Relationship, Joint Venture or Partnership. THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP. PERFORMER ACKNOWLEDGES AND AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE ANY EMPLOYEE-RELATED BENEFITS.** The parties agree that if they were "employer and employee", Owner would retain as its sole property all mandatory private dance service and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

**2. Unjust Enrichment:** If Performer is deemed to be an employee entitled to

wages during any period of this contract, then Performer agrees to account for all mandatory patron revenues she maintained under the terms of this contract, and return to Owner all such patron revenues which she retained under the terms of this Contract during such period. For any period during which Performer is deemed an employee, she shall be paid minimum wage along with any other legally required employee benefits.

**3. Material Breach/Notice:** In the event of a Material Breach, the non-breaching party may terminate this Contract UPON. 24 hours NOTICE to the other. A Material Breach is a breach of this contract on two consecutive performance dates, and is grounds for termination of the Contract.

**4. Voluntary Termination/Notice:** Either party may terminate on 3 days notice to the other for any or no reason.

**5. Severability:** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

**6. Arbitration:** Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, shall be decided by binding Arbitration under the Federal Arbitration Act and in conformity with the California Arbitration Act. Such Arbitration shall be before a neutral arbitrator who shall be permitted to award any relief available in a Court, including fees and costs to the prevailing party. Any award may be entered in any court having jurisdiction.

**7. Waiver of Statute of Limitations.** The parties agree to commence any action relating to this contract within 6 months and to waive any statute of limitation to the contrary.

**8. Waiver of Class Action.** The parties agree that any dispute shall be litigated individually, and not as a class action. Performer waives her right to pursue class action status.

**9. LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT OF LEGAL AGE 21. PERFORMER REPRESENTS THAT SHE IS OF LAWFUL AGE, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.** X _F.? C._

**PERFORMER REPRESENTS THAT SHE HAS FULLY READ THIS CONTRACT AND HAD AN OPPORTUNITY TO HAVE HER LAWYER REVIEW THE CONTRACT.** X _:? C._

Owner: _Hungry I_
ADDRESS _GILL Broadway_
CITY _SF_  zip _94111_
BY: _Dixie Singl_
Signature _____
It's' _____

DATE: _9/9/05_

Performers' Name _Helen Applebees_
Signature _____

Stage name _ALEX_
Address _4755 Center Court_
City _San Diego_  zip _92114_
Phone # _____
Social Security # _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_
Date: _04-08-09_    72601hungWest

2

EXHIBIT "C"

# TO ALL ENTERTAINERS
## OFFER OF EMPLOYMENT STATUS

The Club has been sued by a few dancers who claim they want employee status. *If you wish to become an "EXCLUSIVE EMPLOYEE" of this club, you may do so IMMEDIATELY.* Our offer for employment is as follows:

(1)　After completing all employee forms, you will be placed on the Club's payroll;

(2)　Your performance contract will be terminated;

(3)　Your position will require you to sell and perform private dance services;

(4)　You will be paid $8.00 per hour for every hour you work at the club;

(6)　You will be paid by check on a bi-weekly basis, with all required tax withholdings;

(7)　The Club will collect all dance fees on private dances;

(8)　You will be paid Commissions on all private dances as follows:
　　　(A)　50% of each dance fee after the first ten (10) dances (except for specialty dances where the Club gives a promotional item to the patron);
　　　(B)　25% of each speciality dance fee;

(9)　Commissions will be paid bi-weekly;

(10)　You will continue to be entitled to retain all gratuities ("tips") given to you (gratuities are the amounts given to you by patrons while you are on stage, or amounts voluntarily given to you by patrons over and above the posted dance fee);

(11)　There will be a ten (10) dance per shift and seven (7) drink per shift quota;

(12)　Quotas will be calculated based on weekly (not daily) totals;

(13)　You will be required to perform dance services for any customer who requests to purchase a dance, and perform in club promotions;

(14)　You will be required to report all tips to the club at the end of each shift, as required by federal tip reporting rules;

(15)　The Club will assign you hours of work for any shifts available, but will consider requests for full time, part time, night or day shift.

(16)　You will be required to arrive at work consistent with your scheduled time;

(17)　You will be required to clock in and out, including for all meals and breaks;

(18)　You will not be permitted to work overtime or permitted to be on schedule for more than 8 hours, unless directed by management;

(19)　The club will issue you one costume per month, at its own expense;

(20)　You will be entitled to one week of paid vacation per year, which begins accruing in the 13th month of full time employment;

(21)　Like all other club employees, including management, you will be an "at will" employee, which means you can be terminated with or without cause, as defined by applicable law.

(22) Nude and semi-nude entertainment is performed at this club; you must affirm
　　　* a willingness to perform nude and semi-nude entertainment
　　　* that you are not offended by viewing others who are nude or semi-nude;
　　　* that you fully understand that you will be performing nude or semi-nude
　　　* you fully understand that you may be exposed to sexual comment

THIS OFFER DOES NOT CONSTITUTE AN EMPLOYMENT CONTRACT. THESE ARE
MERELY GUIDELINES AND ARE SUBJECT TO CHANGE AT MANAGEMENT
DISCRETION. MANAGEMENT RESERVES ALL ITS RIGHTS TO DIRECT AND
CONTROL EMPLOYEES AS PERMITTED BY LAW. **PLEASE NOTIFY THE
MANAGER IMMEDIATELY IF YOU WOULD LIKE TO TERMINATE
YOUR DANCER PERFORMANCE LEASE AND BECOME AN
'EMPLOYEE ENTERTAINER". IF YOU DO NOT WISH TO BECOME
AN "EMPLOYEE" YOU MAY CONTINUE PERFORMING AT THE
CLUB PURSUANT TO YOUR CONTRACT.**

**IMPORTANT NOTE:   THE CLUB'S MANAGERS HAVE NO OPINION
ON THIS MATTER,  AND THEY WILL NOT ENCOURAGE OR
DISCOURAGE YOUR DECISION.  IT IS YOUR FREE CHOICE.  YOU
MAY WISH TO CONSULT YOUR ATTORNEY OR ACCOUNTANT
PRIOR TO MAKING YOUR DECISION.**

I have read the Offer to Entertainers and            I have read the Offer to
accept.  Please provide me with the employee         Entertainers.  I CHOOSE TO
Forms immediately.                                    Decline the offer.

_____

DATE: _2/20/04_____

offer.91902

EXHIBIT "D"

# TO ALL ENTERTAINERS
# OFFER OF EMPLOYMENT STATUS

The Club has been sued by a few dancers who claim they want employee status, and do not want to perform under the Dancer Performer Lease.

*If you wish to become an "EXCLUSIVE DEJA VU EMPLOYEE-ENTERTAINER" of this club, you may do so IMMEDIATELY.* Our offer for employment is as follows:

(1)     After completing all employee forms, you will be placed on the Club's payroll;
(2)     Your Dancer Performance Lease will be terminated;
(3)     You will not pay lease fees or rents to the club;
(4)     You will be assessed contract damages;
(5)     You will be paid $8.00 per hour for every hour you work at the club;
(6)     You will be paid by check on a bi-weekly basis, with all required tax withholdings;
(7)     The Club will collect all dance fees on private dances;
(8)     You will be paid **Commissions on all private dances** as follows:
        (A)     50% of each dance fee after the first ten (10) dances (except for specialty dances where the Club gives a promotional item to the patron);
        (B)     25% of each specialty dance fee;.
(9)     **Commissions will be paid bi-weekly;**
(10)    You will continue to be entitled to retain all gratuities ("tips")  given to you (gratuities are the amount given to you by patrons while you are on stage, or amounts voluntarily given to you by patrons over the posted dance fee);
(11)    There will be a **ten (10) dance per shift and seven (7) drink per shift quota:**
(12)    Quotas will be calculated based on weekly (not daily) totals;
(13)    You will be required to **perform dance services for any customer** who request to purchase a dance, and perform in club promotions;
(14)    You will be **required to report all tips to the club** at the end of each shift, as required by federal tip reporting rules;
(15)    The **Club will assign you hours of work** for any shifts available, but will consider request for full time, part time, night or day shift.
(16)    You will be **required to arrive at work consistent with your scheduled time;**
(17)    You will **required to clock in and out,** including for all meals and breaks,
(18)    You will **not be permitted to work overtime** or to be on schedule for more than 8 hours, unless directed by management,
(19)    The club will issue you one customer per month, at its own expense;
(20)    You will be entitled to one week of paid vacation per year, which begins accruing in the 13th month of full time employment;
(21)   Like all other club employees, including management, you will be an "at will" employee, which means you can be terminated with or without cause, as defined by applicable law.
(22)    Nude and semi-nude entertainment is performed at this club; you must affirm
      o   a willingness to perform nude and semi-nude entertainment
      o   that you are not offended by viewing others who are nude or semi-nude
      o   that you fully understand that you will be performing nude or semi-nude
      o   you fully understand that you may be exposed to sexual comment

THIS OFFER DOES NOT CONSTITUTE AN EMPLOYMENT CONTRACT. THESE ARE MERELY GUIDELINES AND ARE SUBJECT TO CHANGE AT MANAGEMENT DISCRETION. MANAGEMENT RESERVES ALL ITS RIGHTS TO DIRECT AND CONTROL EMPLOYEES AS PERMITTED BY LAW.

PLEASE NOTIFY THE MANAGER IMMEDIATELY IF YOU WOULD LIKE TO TERMINATE YOUR DANCER PERFORMANCE LEASE AND BECOME AN "EMPLOYEE ENTERTAINER". IF YOU DO NOT WISH TO BECOME AN "EMPLOYEE" YOU MAY CONTINUE PERFORMING AT THE CLUB PURSUANT TO YOUR DANCER PERFORMANCE LEASE.

IMPORTANT NOTE: THE CLUB'S MANAGERS HAVE <u>NO OPINION</u> ON THIS MATTER, AND THEY WILL NOT ENCOURAGE OR DISCOURAGE YOUR DECISION. IT IS YOUR FREE CHOICE. YOU MAY WISH TO CONSULT YOUR ATTORNEY OR ACCOUNTANT PRIOR TO MAKING YOUR DECISION.

I have read the Offer to Entertainers and accept. Please provide me with the employee Forms immediately.

DATE:

I have read the Offer to Entertainers, I CHOOSE TO Decline the offer.

MelissaAnn Lewis
December 17, 2002
ALEX

TO PLESS

## TO ALL ENTERTAINERS
### "OFFER OF EMPLOYMENT STATUS"

*You have been offered a Contract to perform at this business on an independent contractor basis, whereby you will be entitled to choose schedules and customers for whom you will perform, and contractually share in revenues collected from customers. Alternatively, if you wish to become an "EXCLUSIVE EMPLOYEE of this club, you may do so as follows:*

(1)   After completing all employee forms, you will be placed on the Club's payroll;
(2).  Any performance contract in place will be terminated;
(3)   Your position will require you to sell and perform private dance services;
(4)   You will be paid **$8.50 per hour** for every hour you work at the club;
(5)   You will be paid by check on a bi-weekly basis, with all required tax withholdings;
(6)   The Club will collect and own all mandatory dance fees for private dances;
(8)   You retain all gratuities ("tips") given to you over and above the posted dance fee;
(9)   There will be a 10 dance per shift sales quota
(10)  Quotas will be calculated based on weekly (not daily) totals;
(11)  You will be required to perform dance services for any customer who requests to purchase a dance, and perform in club promotions;
(12)  You will be required to report all tips to the club at the end of each shift;
(13)  The Club will assign you hours of work for any shifts available;
(14)  You will be required to clock in and out, including for all meals and breaks;
(15)  You will not be permitted to work more than 8 hours a day/40 hours week;
(16)  The club will issue you one costume per month, at its own expense;
(17)  One week of paid vacation per year will begin accruing in the 13th month of full time employment;
(18)  You will be an "at-will" employee, meaning you can be terminated with or without cause;
(19)  **semi-nude entertainment is performed at this club; you must affirm:**
      **a)  a willingness to perform        semi-nude entertainment**
      **b)    that you are not offended by viewing others who are semi-nude;**
      **c)  that you fully understand that you will be performing semi-nude**
      **d)  that you fully understand that you may be exposed to sexual comment**

THIS OFFER DOES NOT CONSTITUTE AN EMPLOYMENT CONTRACT. THESE ARE MERELY GUIDELINES AND ARE SUBJECT TO CHANGE AT MANAGEMENT DISCRETION. MANAGEMENT RESERVES ALL ITS RIGHTS TO DIRECT AND CONTROL EMPLOYEES AS PERMITTED BY LAW. **IMPORTANT NOTE:  THE CLUB'S MANAGERS HAVE NO OPINION ON THIS MATTER; THEY WILL NOT ENCOURAGE OR DISCOURAGE YOUR DECISION.  IT IS YOUR CHOICE.  YOU MAY WISH TO CONSULT YOUR ATTORNEY OR ACCOUNTANT PRIOR TO MAKING YOUR DECISION.**

I have read the Offer to Entertainers and accept. Please provide me with the employee Forms immediately.

I have read the Offer to Entertainers. I CHOOSE To Decline the offer.

_____
Entertainer's Signature

_____
Entertainer's Signature

Manager's Signature _____
Manager's name PRINTED  Duane Singh
DATE:  4/14/05
#1004est