Kevin J. McInerney, Esq., SBN 46941
Kelly McInerney, Esq., SBN 200017
Charles A. Jones, Esq., SBN 224915
**MCINERNEY & JONES**
18124 Wedge Parkway #503
Reno, NV 89511
Telephone: (775) 849-3811
Facsimile: (775) 849-3866

James F. Clapp, Esq. SBN 145814
**DOSTART CLAPP GORDON & COVENEY LLP**
4370 La Jolla Village Dr., Suite 970
San Diego, CA 92122
Telephone: (858) 623-4200
Facsimile: (858) 623-4299

*Attorneys for Plaintiff* JESSICA JACKSON

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JESSICA JACKSON,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**S.A.W. ENTERTAINMENT LIMITED** aka **SAW ENTERTAINMENT, LTD;** **LARRY FLYNT'S HUSTLER CLUB;** **DÉJÀ VU,** and **DOES 1-50,**<br><br>Defendants. | Case No. CV 09-0448 (EMC)<br><br>**PLAINTIFF'S POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION**<br><br>Date: April 8, 2009<br>Time: 10:30 a.m.<br>Dept: C<br><br>Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

I. THE NARROW ISSUE………………………………………….....……………….1

II. The ORDER IN <u>KIMBERLY JONES v. DEJA VU, INC.</u>
ATTACHED AS EXHIBIT 2 TO DEFENDANT'S RJN ………………..4

III. THE ARBITRATION AGREEMENT IS PROCEDURALLY
UNCONSCIONABLE……………………………..…………………………….....6

IV. THE ARBITRATION AGREEMENT IS SUBSTANTIVELY
UNCONSCIONABLE……………………………..…………………………….8

    A. Section V.6, The Arbitration Paragraph, Is Substantively
Unconscionable……………………………………………………….9

    B. Section V.7, the Waiver of the Statute of Limitations, Is
Substantively Unconscionable…………………………………….11

    C. Section V.8, The Class Action Waiver Provision, Is
Substantively Unconscionable……………………………………12

V. THE UNCONSCIONABLE PROVISIONS CANNOT BE
SEVERED AND THUS DEFENDANT'S PETITION TO
COMPEL ARBITRATION MUST BE DENIED…………………...15

# TABLE OF AUTHORITIES

## STATE CASES

Armendariz v. Foundation Health Psychcare Service, Inc.
(2000) 24 Cal.4th 83 .................................................................................................9, 16

Bell v. Farmers Inc. Exchange
(2004) 115 Cal.App.4th 715........................................................................................13

Brazil v. Dell, Inc.
2007 WL 2255296 ......................................................................................................16

Discover Bank v. Superior Court
(2005) 36 Cal.4th 148..........................................................................................13, 14

Franco v. Athens Disposal Company, Inc.
2009 WL 596604 (Cal.App. 2 Dist., March 10. 2009) ...........................................5, 16

Gentry v. Superior Court
(2007) 42 Cal.4th 443 .....................................................................................9, 10, 13, 14

Kinney v. United Healthcare Services, Inc.
(1999) 70 Cal.App.4th 1332........................................................................................15

Murphy v. Check 'N Go of California, Inc.
(2007) 156 Cal.App.4th 138....................................................................................5, 15

Sanchez v. Western Pizza Enterprises, Inc.
2009 WL 683701 (Cal.App. 2 Dist., March 17, 2009) ...........................................5, 16

Stirlen v. Supercuts, Inc.
(1997) 51 Cal.App.4th 1519..........................................................................................6

Szetela v. Discover Bank
(2002) 97 Cal.App.4th 1094 .......................................................................................14

## FEDERAL CASES

Circuit City Stores, Inc. v. Ahmed
283 F.3d 1198 (9th Cir. 2002)....................................................................................6, 8

Circuit City Stores, Inc. v. Najd
294 F.3d 1104 (9th Cir. 2002)....................................................................................6, 8

Hoffman v. Citibank
(2008) 546 F.3d 1078.........................................................................................6, 8, 13

Ingle v. Circuit City Stores, Inc.
328 F.3d 1165 (9th Cir. 2003).................................................................4, 6, 8, 12, 14, 15

Shroyer v. Cingular Wireless Services, Inc.
498 F.3d 976 (9th Cir. 2007).......................................................................................12

# I

# THE NARROW ISSUE

Defendant spends several pages of its Petition to Compel Arbitration casting unfounded aspersions on the plaintiff and trying to convince this Court that there is only one possible defendant. However, those issues are not properly before the Court at this time and therefore plaintiff will not respond. What is properly before the Court is whether or not defendant's Petition to Compel Arbitration should be granted. Defendant perhaps attempted to obfuscate the real issue with speculations about the plaintiff's on irrelevant points because the answer to that question of is a resounding "no."

There are so many problems with defendant's Club/Performer Contract that it is difficult to know where to begin. To name just a few of the most glaring deficiencies, defendant has a a procedurally and substantively unconscionable contract of adhesion that does not provide a right to opt out of arbitration, that includes a class action waiver, and that attempts to reduce the statute of limitations from four years to six months. Initially, defendant states, "The court is to review the issue of arbitrability separate from the contract in which it is embedded. Arbitration provisions are enforceable despite defenses to the underlying contract." (Defendant's Notice of Petition to Compel Arbitration, page 6, lines 16-17.) In other words, the defendant wants us to look at <u>only</u> the single provision captioned "Arbitration" to see if it is enforceable and to ignore the rest of the many paragraphs contained in the Club/Performer Contract. The arbitration provision, contained in Section V.6 reads in full:

> **6. Arbitration:** Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, the relationship between the parties, or any other dispute between the parties, shall be decided by binding Arbitration, shall be pursuant to the Federal Arbitration Act, and shall be before a neutral arbitrator agreed upon by the parties who shall be permitted to award any relief available in a Court. Any award may be entered in any court having

jurisdiction. **The arbitrator shall have no authority or jurisdiction over a class action.** [emphasis added]

Since this lawsuit was most definitely filed as a class action, as acknowledged repeatedly by the defendant, an arbitrator would have "no authority or jurisdiction" over this case. In other words, defendant's motion must be denied by the very terms of the arbitration provision.

Moreover, the defendant does not abide by its own admonishment and repeatedly references other provisions of the contract and even extrinsic documents. For example, defense counsel cites to the "Notice of Contract Alternative: Employee Status" which is included in the defendant's RJN (Document 9, page 20) and is referenced extensively in the Petition to Compel Arbitration (P&A's 1:20-21; 2:14-17; 3:5-10; 3:13-15; 3 @ fn 3; 3:16-18; 7:24; 8:2; 8:15-17; 9:26-27). In an effort to further prop up the severely distressed arbitration clause (V.6), defense counsel itself has urged this Court to consider other portions of the overall contract including:

- ▶ "This is a legal document…" (P&A's 3:21-22)
- ▶ "Genuine consent…" (P&A's 4:7-11)
- ▶ "As detailed below, the arbitration agreement in the Performer Contract is not unconscionable; <u>neither is the Performer Contract in general</u>" (P&A's 6:2-4; emphasis added; footnote 6 omitted)
- ▶ "Although the Performer Contract includes a provision [V.7] shortening the statute of limitations to six months…"(P&A's 8:25-9:7)
- ▶ "Finally, the class waiver [V.8] …" (P&A's 9:8-10:2)

Thus, while abjuring us all to look only at V.6 (the paragraph specifically captioned "Arbitration") the defendant has sought to bolster this one paragraph by not only references to

numerous other provisions of the Performer Contract but by reliance on documents that are extrinsic to it.

Just because the defendant chose to break up several aspects that affect arbitration, such as the class action waiver and the shortening of the statute of limitations to six months, into different sub-sections of the same document, does not mean that the defendant can have the Court look only at Section V.6. By shortening the statute of limitations (V.7), the defendant necessarily limits what can and cannot be resolved in any arbitration. Similarly, by an attempted waiver of class or representative claims (V.8), the defendant necessarily limits the claims which may be subject to arbitration. This along with the statute of limitations clause, are integral to the scope of arbitration. And ironically, if the class waiver fails, the Petition cannot be granted. After all the last sentence of Section V.6 reads **The arbitrator shall have no authority or jurisdiction over a class action.**

It must be noted that while the defendant asserts there was an opt-in to arbitration because the plaintiff "elected" to work as an independent contractor, the defendant has not proven that a choice to be treated as an employee would have avoided a similar arbitration provision.[1] If one examines the "Notice of Contract Alternative: Employee Status" (Document 9, p.20, Exhibit 1 to Defendant's RJN), it does not indicate one way or another whether a job applicant who elects the employee characterization would be required to arbitrate. What is very clear is that this document is just the beginning of the paperwork. Just as the plaintiff here signed "chose to work as a contract entertainer" and then had to sign a form contract that purported to be a contract for independent contractors, any job seeker who chose the alternative would be signing other paperwork. The contract alternative page says at the top, "If you wish to

---

[1] Prior to seeing defendant's petition to compel, plaintiff's counsel was unaware that independent contractor / employee status was determined by the worker's election.

become an 'EMPLOYEE' of this club, you may apply to do so." Then as the first condition, it provides: "<u>After completing all employee forms</u>, you will be placed on the Club's payroll." [emphasis added]. The document continues on to state, "This offer does not constitute an employment contract" and ends, above the applicant's signature line, with "Please provide me with the employee Application Forms."

## II.
## THE ORDER IN <u>KIMBERLY JONES V. DEJA VU, INC.</u> ATTACHED AS EXHIBIT 2 TO DEFENDANT'S RJN

One wonders why in the world defendant chose to attach the order in <u>Jones v. Déjà Vu, Inc.</u>. Plaintiff attaches the arbitration agreements at issue in the <u>Jones</u> case as Exhibits 1 and 2 to Plaintiff's RJN in Support of the Opposition to the Petition to Compel. Defendant states, "A substantially similar arbitration provision was recently upheld and enforced by this Court in a previous exotic dancer case against SAW." (Defendant's P&A's, page 6, fn 6) Actually, the arbitration provision was not "substantially similar" because the arbitration provision in that case (Paragraph 25) did not include the last sentence of Section V.6 in this case, namely, "The arbitrator shall have no authority or jurisdiction over a class action." (Plaintiff's RJN, Exhibit 1, Declaration of Linda M. Toutant, Document 79, pages 5, 9, and 13).

There is no doubt that the arbitration provisions in the instant case are more egregious than the one in <u>Jones v. Déjà Vu, Inc.</u>. Nonetheless, Magistrate Judge Bernard Zimmerman held the arbitration provision in <u>Jones v. Déjà Vu, Inc.</u> to be procedurally unconscionable pursuant to <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1171 (9th Cir. 2003) because:

> "It was drafted by the party with a superior bargaining position; offered on essentially a take-it-or-leave-it basis; and provided without a meaningful opportunity to opt out of the arbitration provision. See <u>id.</u> At 1172-73. The "Offer of Employment Status" does not provide a meaningful opportunity to opt out of the arbitration provision in the "Performer Contract." It offers little more than minimum wage to performers. It requires dancers

"to perform dances for any customer who requests to purchase a dance," which appears coercive given the nature of the performance." (Page 2 of the Order)

The Court also found that the provision shortening the statute of limitations to six months to be unconscionable (Pages 3 and 4 of the Order) and the ban on class actions to be unconscionable because it lacked mutuality and because it was "contrary to the public policy underlying class actions as a procedural device for resolving certain types of suits." (Pages 4 and 5 of the Order).[2]

The Court in <u>Jones v. Déjà Vu, Inc.</u> found that the unconscionable provisions (the sections shortening the statute of limitations and banning class actions) should be severed from the arbitration provision because they "do not so pervade the entirety of the contracts as to render the contracts unenforceable." (Order, pages 5 and 6). However, in the instant case, the unconscionable provisions <u>cannot</u> be severed because the last sentence of the arbitration provision, Section V.6, states, "The arbitrator shall have no authority or jurisdiction over a class action." This is in marked contrast to the arbitration provisions in the <u>Jones v. Déjà Vu, Inc.</u> which did not include such a statement. By inserting that sentence in Section V.6, the defendant has guaranteed that the unconscionable provisions cannot be severed and therefore the Petition to Compel Arbitration must be denied.

Recent California cases indicate that where there is systemic unconscionability, the arbitration agreement cannot be saved by severance. See <u>Murphy v. Check 'N Go of California, Inc.</u> (2007) 156 Cal.App.4th 138, 149; <u>Franco v. Athens Disposal Company, Inc.</u>, 2009 WL 596604, *18, (Cal.App. 2 Dist., March 10, 2009); and <u>Sanchez v. Western Pizza Enterprises, Inc.</u>, 2009 WL 683701, *16 (Cal.App. 2 Dist., March 17, 2009).

---

[2] The SAW agreement did not contain a class action waiver, but the agreement of one of the other defendants, Chowder House, did contain such a ban. Like the class action waiver in the instant case, the provision in <u>Jones v. Déjà Vu</u> applied unilaterally to performers and therefore lacked mutuality. See Plaintiff's RJN, Exhibit 2, which contains the performer contract for Chowder House/Hungry I Club, Document 74, pages 5, 8, 9 and 11.

III

**THE ARBITRATION AGREEMENT IS PROCEDURALLY UNCONSCIONABLE**

In Ingle v. Circuit City, 328 F.3d 1165, 1171-1172 (9th Cir. 2003), the Court held, "A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract." The Court found, "Because of the stark inequality of bargaining power between Ingle and Circuit City, we conclude that Circuit City's 1998 arbitration agreement is also procedurally oppressive." Citing to Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1533-34 (finding procedural unconscionability when an arbitration clause was part of a contract of adhesion in which the employee was presented with an employment contract on a "take it or leave it" basis).[3] The Court in Ingle went on to state,

> "We follow the reasoning in *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 (2002), in which the California Court of Appeal held that the availability of other options does not bear on whether a contract is procedurally unconscionable. *Id.* at 1100, 118 Cal.Rptr.2d 862. Rather, when a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, "oppression and therefore, procedural unconscionability, are present." *Ferguson*, 298 F.3d at 784; *Szetla*, 97 Cal.App.4th at 1100, 118 Cal.Rptr. 2d 862."

There is no doubt that in the instant case, the defendant was in a superior bargaining position and that the dancers were unable negotiate the terms of the agreement. Defendant attempts to argue nonetheless that the arbitration provision is not procedurally unconscionable because the dancers had a "meaningful opportunity to opt out" of the Performer Contract" citing to Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198 (9th Cir. 2002). (Defendant's P&A's, 7:20-8:2) This is, at

---

[3] See also Hoffman v. Citibank (2008) 546 F.3d 1078, 1084, "With respect to procedural unconscionability, it is plain that [defendant] was in a superior bargaining position to [plaintiff] and that [defendant's] contract was offered in such a way that [plaintiff] was unable to negotiate its terms. These two elements often render a contract provision oppressive, and therefore procedurally unconscionable."

best, a tortured interpretation of the caselaw, and more likely an attempt to mislead the Court. In <u>Circuit City Stores, Inc. v. Ahmed</u>, the employee was presented with an arbitration agreement that contained an "opt-out" form. The employee had thirty days to consider the arbitration agreement and decide whether or not to send in the postcard. If the employee "decided to opt-out of arbitration program, he would have been allowed to keep his job and not participate in the program." <u>Id</u>. At 1199. The court held that the arbitration agreement was not procedurally unconscionable because he had a meaningful opportunity to opt-out and "the arbitration agreement here also lacked any other indicia of procedural unconscionability." <u>Id.</u> The same was true in a similar case, <u>Circuit City Stores, Inc. v. Najd</u>, 294 F.3d 1104, 1109 (9th Cir. 2002) in which the employee was given thirty days to send in his "opt-out" form to the arbitration program. This situation is radically different from the instant case, in which the dancers were not provided with an "opt-out" form and given thirty days to consider the arbitration provision. Rather, defendant argues that the dancers could have "opted-out" by not agreeing to work as an independent contractor. The fallacy of this argument is discussed above where we point out that it is quite possible that even employees had to sign arbitration provisions. But perhaps Magistrate Judge Bernard Zimmerman stated it best in <u>Jones v. Déjà Vu, Inc.</u>, the case provided by the defendant, in finding that the arbitration provision was procedurally unconscionable:

> "It was drafted by the party with a superior bargaining position; offered on essentially a take-it-or-leave-it basis; and provided without a meaningful opportunity to opt out of the arbitration provision... The "Offer of Employment Status" does not provide a meaningful opportunity to opt out of the arbitration provision in the "Performer Contract." It offers little more than minimum wage to performers. It requires dancers "to perform dances for any customer who requests to purchase a dance," which appears coercive given the nature of the performance."
> "Unlike <u>Circuit City Stores, Inc. v. Ahmed</u>, 283 F.3d 1198 (9th Cir. 2002), and <u>Circuit City Stores, Inc. v. Najd</u>, 294 F.3d 1104, 1109 (9th Cir. 2002), on which defendants rely, plaintiffs were not presented with an opportunity to sign a "Performer Contract" while opting out of the arbitration provision.
> (Defendant's RJN, Exhibit 2, Pages 2 and 3 of the Order)

## IV

## THE ARBITRATION AGREEMENT IS SUBSTANTIVELY UNCONSCIONABLE

As set forth in Ingle v. Circuit City, *supra*, 328 F.3d at 1172, "Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." The court in Ingle found numerous provisions in the Circuit City arbitration agreement to be unconscionable, including the limitation on the statute of limitations and the prohibition of class action, both of which are present in the instant case.[4]

Defense counsel advances the conclusion that "the case law defining substantively unconscionability with respect to arbitration agreements between employers and employees should not apply" because the plaintiff elected to dance as an independent contractor, not an employee, (Defendant's P&A's 8:15-17), all the while citing numerous employer/employee cases throughout its Petition to Compel Arbitration, including but not limited to, Ingle v. Circuit City, *supra*; Circuit City Stores, Inc. v. Ahmed, *supra;* and Circuit City Stores, Inc. v. Najd, *supra*.

///

///

///

---

4 The court in Hoffman, *supra*, 546 F.3d at 1084 stated:

> "Although this test [for unconscionability] contains "both substantive and procedural elements, these components exist on a sliding scale such that they need not be present in the same degree. *See Armendariz v. Found. Health Psycharcare Serv., Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (Cal.2000). Instead, even if the evidence of procedural unconscionability is slight, strong evidence of substantive unconscionability will tip the scale and render the arbitration provision unconscionable. [Citations omitted.] Under *Armendariz*, we conclude that courts are not obligated to enforce highly unfair provisions that undermine important public policies simply because there is some degree of consumer choice in the marketplace."

Employee cases are pertinent. The very gravamen of the Complaint is that the defendant misclassified its dancers as independent contractors instead of employees.[5] As a result, all of the employer/employee cases like Gentry v. Superior Court (2007) 42 Cal.4th 443 are applicable.

### A.  Section V.6, The Arbitration Paragraph, Is Substantively Unconscionable

The last sentence of Section V.6, the denominated arbitration paragraph, states: "The arbitrator shall have no authority or jurisdiction over a class action." This sentence inexorably intertwines the class action waiver in V.8 with the arbitration provision itself. As discussed below in Section IV(C), such a ban on class actions and representative actions is substantively unconscionable. The defendant, while acknowledging that "an evolving body of law in the Ninth Circuit has held that such [class action] waivers are unenforceable" (Defendant's P&A's 9:14-15), nonetheless tries to argue that the class action waiver is "separate from the arbitration provision and does not affect the arbitration provision's enforceability" (Defendant's P&A's 9:9-10). Defendant conveniently forgets the last sentence of Section V.6 which ties the arbitration provision to the class action ban.

Even without the inclusion of the last sentence, Section V.6 is still substantively unconscionable for several reasons. In Armendariz v. Foundation Health Psychcare Services,

---

[5] Although the defendant tries to phrase the argument as whether the dancers chose to perform as independent contractors or employees, the burden is on the defendant, not the dancers, to properly classify them. Moreover, as alleged in the Complaint at ¶13, the defendant made the terms of being an employee so onerous that there really was no choice at all. For example, if a dancer chose to be an employee, she would be required to make a ten dance per shift quota and failure to make quota may result in termination (Defendant's RJN, Document 9, Page 20, Notice of Contract Alternative: Employee Status, section 8); she is "required to perform dance services for any customer who requests to purchase a dance" (Section 10, in contrast to an independent performer had the right to refuse); the Club assigns the hours of work for any shifts available and the dancer is "not guaranteed any minimum number of hours" (Section 12); and the dancer will "not be permitted to work overtime or permitted to be on schedule for more than 4 hours, unless directed by management" (Section 16).

Inc. (2000) 24 Cal.4th 83, the California Supreme Court held that an employee arbitration agreement must contain certain minimal requirements:

(1) the arbitration agreement may not limit the damages normally available under the statute (page 103);

(2) there must be discovery sufficient to adequately arbitrate their statutory claim (page 106);

(3) there must be a written arbitration decision and judicial review sufficient to ensure the abitrators comply with the requirements of the statute (page 106); and

(4) the employer must pay all types of costs that are unique to arbitration (page 113).

These requirements were noted with approval by the California Supreme Court in Gentry v. Superior Court (2007) 42 Cal.4th 443, 456-457.

Section V.6 fails all four of these requirements. First, since the shortening of the statute of limitations must be read in conjunction with the denominated arbitration provision, the defendant's arbitration agreement limits the damages normally available from four years to six months. The fact that the defendant decided to place this in a different paragraph does not change the outcome. Second, the arbitration provision does not provide for any discovery, which is unfair since the defendant employer has unique access to records and the identity and location of witnesses. Third, the arbitration provision does not provide for judicial review and instead is binding by its explicit terms. And last but not least, the arbitration provision is silent as to which party pays for what costs. Defense counsel's misrepresentation on this issue is particularly troubling. On page 10, lines 9-11, of the Petition to Compel Arbitration, defense counsel states, "Likewise, per the terms of the arbitration agreement JACKSON signed, SAW bears the cost of the arbitrator's fee making arbitration a cost-effective forum to resolve even individual claims." To the contrary, the clause says nothing like that. In fact, it is absolutely silent as to who advances or ultimately pays the arbitration filing fees or the professional fees of

the professional fees of the arbitrator. The assertion that SAW bears "the cost of the arbitrator's fee" is blatantly false. The professional fees charged by the arbitrator are not only high, they are unique to that process; our judges do not charge litigants by the hour.

**B. Section V.7, the Waiver of the Statute of Limitations, Is Substantively Unconscionable**

The provision immediately following the arbitration provision reads as follows:

> **7. Waiver of Statute of Limitations – Claims to be Brought Within 6 Months of the Event.** Due to the transient nature of some individuals associated with this industry, and the difficulty presented in locating witnesses, the parties agree to commence any action between them within 6 months of the event giving rise to the action and to waive any statute of limitation to the contrary.

Defense counsel argues that "this provision is separate from the arbitration provision and does not make the arbitration provision unconscionable." (Defendant's P&A's 8:26-27). Giving this limiting provision a separate section number doesn't make a difference. Of course the waiver of the statute of limitations from four years in our case under B&P 17200 et seq. (plaintiff's fourth cause of action) to six months affects the arbitration provision. It limits what the arbitrator can hear. And this truncation of statutory limitations uniquely would benefit the defendant.

Magistrate Judge Bernard Zimmerman found the provision shortening the statute of limitations to be substantively unconscionable in <u>Jones v. Déjà Vu, Inc.</u>, the case provided by the defendant in its RJN. Specifically he stated, "Given the unequal bargaining power between the parties, I find this one-sided effort to dramatically alter the statutory scheme devised by Congress to be unconscionable." (Defendant's RJN, Exhibit 2, pages 3-4 of the Order). In the instant case it is the California Legislature rather than Congress (Magistrate Judge Zimmerman was discussing the statute of limitations under the Fair Labor Standards Act), but the outcome is still the same.

Defendant states, "This provision does not unduly benefit or disadvantage either party to the contract ..." (Defendant's P&A's 9:6-7). It is clear that shortening the statute of limitations from four years to six months would drastically reduce the damages, thereby giving an undue benefit to the defendant while unduly disadvantaging the class members. In Ingle v. Circuit City, *supra*, 328 F.3d at 1175, which contained a statute of limitations provision reducing the statute of limitations to one year, the court held "While Circuit City insulates itself from potential damages, an employee foregoes the possibility of relief under the continuing violations doctrine. Therefore, because the benefit of this provision flows only to Circuit City, we conclude that the statute of limitations provision is substantively unconscionable."

### C. Section V.8, The Class Action Waiver Provision, Is Substantively Unconscionable

Section V.8 reads as follows:

> **8. Waiver of Class Action**. Performer agrees that any substantial claim she may make shall be in her individual capacity, and not as a representative or class action, and that any claims she may have against Owner shall not be consolidated with the claims of others.

Defendant concedes that "an evolving body of law in the Ninth Circuit has held that such waivers are unenforceable. *See, e.g., Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007)" (Defendant's P&A's 9:14-15). Just as the truncation of the statutory limitations impacts the scope of what is to be arbitrated, so does this waiver. It is integral to the defendant's arbitration scheme. Nonetheless, defendant argues that the class action waiver is separate from the arbitration provision and thus does not affect the arbitration provision's enforceability (Id. at 9:9-10). This, however, conveniently ignores the last sentence of Section V.6 which states, "The arbitrator shall have no authority or jurisdiction over a class action."

You really can't argue with a straight face that the class action waiver in V.8 is separate from V.6 when you see this last line.

Magistrate Judge Bernard Zimmerman found the ban on class actions substantively unconscionable in <u>Jones v. Déjà Vu, Inc.</u>, the case provided by the defendant in its RJN. Specifically he stated, "The provision lacks a modicum of bilaterality because it applies unilaterally to "performers"" and "is contrary to the public policy underlying class actions as a procedural device for resolving certain types of suits." (Defendant's RJN, Exhibit 2, pages 4-5 of the Order).

In <u>Hoffman v. Citibank</u>, 546 F.3d 1078 (9th Cir. 2008), the court noted that "the applicable state law controls whether an arbitration agreement is unconscionable and, therefore, unenforceable," and stated, "California has a fundamental policy against unconscionable class arbitration waivers" on page 1083. The Ninth Circuit explained:

> "The California courts have explained the need for the policy, reasoning that a defendant could "essentially grant[] itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers, will seek legal remedies" and that "[t]he potential for millions of customers to be overcharged small amounts without an effective method of redress cannot be ignored."

The California Supreme Court in <u>Gentry</u>, *supra*, 42 Cal.4th at 457-458 clarified that discussion of small amounts of money in cases such as <u>Discover Bank</u> are "not intended to suggest that consumer actions involving minuscule amounts of damages were the only actions in which class action waivers would not be enforced." Indeed, <u>Gentry</u> involved an employee suing an employer for misclassification as exempt from overtime, which can involve more substantial sums of money. As set forth by the court, "According to the DLSE's report in response to Gentry's Public Records Act request, the average award from its wage adjudication unit for 2000-2005 was $6,038." <u>Id</u>. at 458. The court also noted that the Court of Appeal in <u>Bell v. Farmers Ins. Exchange</u> (2004) 115 Cal.App.4th 715, "rejected the argument that even an award

as large as $37,000 would be "ample incentive" for an individual lawsuit for overtime pay, and would obviate the need for a class action, pointing to the expense and practical difficulties of such individual suits." Id. The court concluded, "Although we agree at least in theory with Circuit City that arbitration can be a relatively quick and inexpensive method of dispute resolution, the requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that may substantially drive up the costs of arbitration and diminish the prospect that the overtime laws will be enforced." Id. at 459. In the instant case, the same is true for dancers claiming they were misclassified as independent contractors.

The court in Gentry also noted a number of factors in favor of class actions, including the threat of retaliation for individual employees who sue their employers and the fact that many employees may not be aware that their legal rights have been violated. Id. at 459-461.[6]

The court in Ingle v. Circuit City, *supra*, 328 F.3d at 1175-1176, noted with approval that the court in Szetela stated that "by barring class arbitration in a contract of its own drafting, the defendant "sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights." "The Szetela court found the bar on class arbitration "harsh and unfair" to those who could benefit from proceeding as a class and offensive to the policies underlying class actions, such as promoting "judicial economy and streamlin[ing] the litigation process in appropriate cases."

---

[6] Defendant argues that various administrative procedures exist with the California Department of Labor and its Division of Labor Standards Enforcement for the resolution of wage and hour claims of the sort plaintiff alleges in her complaint. However, the California Supreme Court in Discover Bank v. Superior Court (2005) 36 Cal.4th 148,162 stated that they did not agree that small claims litigation, government prosecution, or informal resolution are adequate substitutes. Moreover, the Complaint at ¶23 specifically states, "a class action is superior to administrative complaints before the Labor Commissioner because such complaints are limited to three years [as opposed to the four years available under B&P 17200 et seq.] and because the ruling of the Labor Commissioner is subject to *de novo* review by the losing party in Superior Court anyway."

14
PLAINTIFF'S OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION


The court in Ingle concluded, "Therefore, because Circuit City's prohibition of class action proceedings in its arbitral forum is manifestly and shockingly one-sided, it is substantively unconscionable." Id. at 1176. The same must be found in the instant case.

## V

## THE UNCONSCIONABLE PROVISIONS CANNOT BE SEVERED AND THUS DEFENDANT'S PETITION TO COMPEL MUST BE DENIED

Magistrate Judge Bernard Zimmerman exercised his discretion in Jones v. Deja Vu, Inc., the case provided by the defendant in its RJN, to sever the unconscionable provisions. However, such severance is impossible in the instant case because the last sentence of Section V.6 which states, "The arbitrator shall have no authority or jurisdiction over a class action" inexorably intertwines the unconscionable class action waiver with the denominated arbitration paragraph.

Moreover, numerous cases have found the unconscionable provisions non-severable. In Ingle v. Circuit City, *supra*, 328 F.3d at 1180, the court noted with approval that the public policy in favor of arbitration "is manifestly undermined by provisions in arbitration clauses [that] seek to make the arbitration process itself an offensive weapon in one party's arsenal" citing to Kinney v. United Healthcare Services, Inc. (1999) 70 Cal.App.4th 1332. The Ingle court concluded that "because an "insidious pattern" exists in Circuit City's arbitration agreement "that functions as a thumb on Circuit City's side of the scale should an employment dispute ever arise between the company and one of its employees," we conclude that the agreement is wholly unenforceable." Id.

Likewise, in Murphy v. Check 'N Go of California, Inc. (2007) 156 Cal.App.4th 138, 149, the court upheld the trial court's decision not to sever the unconscionable provisions. Specifically, it stated, "An employment arbitration can be considered permeated by unconscionability if it "contains more than one unlawful provision….Such multiple defects

indicate a systemic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." Citing to Armendariz, *supra*, 24 Cal.4th at 124.

California courts within the last two weeks have chosen to declare an arbitration agreement unenforceable rather than to sever the unconscionable provisions. In Franco v. Athens Disposal Company, Inc., 2009 WL 596604, *18, (Cal.App. 2 Dist., March 10, 2009) the arbitration agreement sought to bar not only class but representative actions as well. This is true of SAW's contract also. Because California's Private Attorney General Act allows a representative action to recover civil penalties, the court found two unconscionable provisions. Specifically, the court held, "Because the arbitration agreement contains a class arbitration waiver and also precludes Franco from seeking civil penalties on behalf of other employees, contrary to the PAGA, we conclude that the agreement as a whole is tainted with illegality and is unenforceable…Athen's petition to compel arbitration should therefore be denied, and this case should proceed in a court of law." In Sanchez v. Western Pizza Enterprises, Inc., 2009 WL 683701, *16 (Cal.App. 2 Dist., March 17, 2009), the court held:

> "The arbitration agreement here includes a class arbitration waiver that is contrary to public policy and an unconscionable arbitrator selection clause, as we have stated. These are important provisions that, if they were not challenged in litigation, could create substantial disadvantages for an employee seeking to arbitrate a modest claim. Although it may be true that neither of these provisions alone would justify the refusal to enforce the entire arbitration agreement (citations omitted), we believe that these provisions considered together indicate an effort to impose on an employee a forum with distinct advantages for the employer. As in *Armendariz, supra*, 24 Cal. 4th at page 124, we conclude that the arbitration agreement is permeated by an unlawful purpose. Accordingly, the denial of the motion to compel arbitration was proper."

Lastly, as stated by the court in Brazil v. Dell Inc., 2007 WL 2255296, *8, "Because the class waiver provision is part of the arbitration provision and central to the mechanism to resolving the dispute between the parties, it cannot be severed. Accordingly, the court finds that

the arbitration provision substantively unconscionable and that the arbitration provision is therefore invalid and unenforceable under §2 of the FAA. The court declines to order the parties to arbitration." The same should be true in the instant case because the last sentence of Section V.6 makes the class waiver provision "part of the arbitration provision and central to the mechanism to resolving the dispute between the parties."

DATED: March 17, 2009

Respectfully submitted,

MCINERNEY & JONES
DOSTART CLAPP GORDON & COVENEY LLP

By: /s/ Kelly McInerney
Kelly McInerney

*Attorneys for Plaintiff
And Others Similarly Situated*