UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA JACKSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>S.A.W. ENTERTAINMENT LIMITED aka SAW ENTERTAINMENT LTD., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-09-0448 EMC<br><br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**(Docket No. 8)** |

Plaintiff Jessica Jackson has brought a class action against Defendant S.A.W. Entertainment Ltd. ("S.A.W."), alleging violations of the California Labor Code, the California Business and Professions Code, and the San Francisco Minimum Wage Ordinance.[1] Currently pending before the Court is S.A.W.'s motion to compel arbitration. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **DENIES** S.A.W.'s motion. The Court finds the parties' arbitration agreement unenforceable.

### I.     **FACTUAL & PROCEDURAL BACKGROUND**

Ms. Jackson is an exotic dancer or adult entertainer. She brings this action on behalf of herself as well as other dancers and entertainers who are similarly situated. S.A.W. is a corporation that owns the Larry Flynt's Hustler Club ("Club"), located in San Francisco, California. The parties

---

[1] In her complaint, Ms. Jackson named two additional defendants but has since dismissed them from the case. *See* Docket No. 19 (notice of voluntary dismissal, filed on 3/26/09).

1  are in agreement that, in April 2008, Ms. Jackson performed at the Club.  *See* Compl. ¶ 3 (alleging
2  that she performed work at the Club in April 2008); Doyle Decl. ¶ 5 (stating that Ms. Jackson
3  performed on three dates in April 2008 -- *i.e.*, April 16, 18, and 19).  The parties dispute whether
4  Ms. Jackson was an independent contractor while she performed at the Club (S.A.W.'s position) or
5  whether she was actually an employee of S.A.W. (Ms. Jackson's position).  They likewise dispute
6  whether other exotic dancers working at the Club were properly characterized as independent
7  contractors instead of employees.

8        The evidence of record indicates that, on or about April 15, 2008, Ms. Jackson signed a
9  document provided by S.A.W. titled "Notice of Contract Alternative: Employee Status."  Compl.,
10 Ex. A (notice).  The document states that "[e]ntertainers have historically performed at [the Club] as
11 independent contractors who control if, when, where, how and for whom they perform.  However, ***if***
12 ***you wish to become an 'EMPLOYEE' of [the Club], you may apply to do so***."  Compl., Ex. A
13 (notice) (emphasis in original).  The document then lists certain terms and conditions to which an
14 employee would be subject if she entered into an employment relationship with S.A.W.  *See* Compl.,
15 Ex. A.  An entertainer is required to sign the document to indicate that she has read its contents and
16 also to indicate whether she wishes (1) to be provided with employee application forms or (2) to
17 "[d]ecline to apply as an employee dancer, and choose to work as a contract entertainer" instead.
18 Compl., Ex. A (notice).  Ms. Jackson opted for the latter, *i.e.*, to work as an independent contract
19 instead of as an employee.

20       On the same day that she signed the above-described notice, Ms. Jackson also signed a
21 contract with S.A.W.  The contract she signed specified that she was not an employee.  *See* Compl.,
22 Ex. A (Club/Performer Contract ¶ V.1) ("THE PARTIES DISAVOW AN EMPLOYMENT
23 RELATIONSHIP . . . .").  The contract also contained several provisions that are relevant to
24 S.A.W.'s currently pending motion to compel arbitration.  Those provisions are as follows.

> **5. Severability:** Any unenforceable portion of this Contract, to the extent possible, shall be severable from the Contract as a whole.
>
> **6. Arbitration:** Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, the relationship between the parties, or any other dispute between the parties, shall be decided by binding Arbitration, shall be pursuant to

2

the Federal Arbitration Act, and shall be before a neutral arbitrator agreed upon by the parties who shall be permitted to award any relief available in a Court. Any award may be entered in any court having jurisdiction. The arbitrator shall have no authority or jurisdiction over a class action.

**7. Waiver of Statute of Limitations -- Claims to be Brought Within 6 Months of the Event.** Due to the transient nature of some individuals associated with this industry, and the difficulty presented in locating witnesses, the parties agree to commence any action between them within 6 months of the event giving rise to the action and to waive any statute of limitation to the contrary.

**8. Waiver of Class Action.** Performer agrees that any substantial claim she may make shall be in her individual capacity, and not as a representative or class action, and that any claims she may have against Owner shall not be consolidated with the claims of others.

Club/Performer Contract ¶¶ V.5-8.

On December 12, 2008, Ms. Jackson filed a complaint in state court alleging that the Club and its owners misclassified her as an independent contractor. S.A.W. removed the case to federal district court and subsequently filed the pending motion to compel arbitration. Ms. Jackson opposes S.A.W.'s motion on the ground that the arbitration agreement is unenforceable due to unconscionability.

## II. DISCUSSION

A. Legal Standard

As indicated above, the contract entered into between Ms. Jackson and S.A.W. includes an arbitration provision. That provision specifies that any dispute between the parties "shall be decided by binding Arbitration" and "shall be pursuant to the Federal Arbitration Act." Club/Performer Contract § V.6. Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996).

B. Unconscionability

The Ninth Circuit has instructed that,

3

> in assessing whether an arbitration agreement or clause is enforceable, [a court] "should apply ordinary state-law principles that govern the formation of contracts.' [¶] Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable. Courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice-versa." Still, "both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.

*Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007).

### 1. Procedural Unconscionability

"In assessing procedural unconscionability, the court focuses on whether the contract was one of adhesion. Was it imposed on employees as a condition of employment? Was there an opportunity to negotiate? . . . [The test] focuses on factors of oppression and surprise." *Id.* at 1073.

In the instant case, there is no real evidence of surprise. "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Stirlen v. Supercuts*, 51 Cal. App. 4th 1519, 1532 (1997). Here, the arbitration provision is not overly complex and therefore is fairly easily understood. *See Trend Homes, Inc. v. Superior Court*, 131 Cal. App. 4th 950, 959 (2005) (noting that "[t]here . . . is no element of surprise, since the provision is clearly written, entirely capitalized, and easily understood"). In addition, the provision is contained within the Club/Performer Contract (only two pages in length) and not, *e.g.*, "concealed in an employee handbook." *Id.* Finally, although the provision is not in bold or uppercase text, it is a distinct clause not "buried in fine print." *Id.*

That evidence of surprise is lacking, however, does not mean that there is no procedural unconscionability. As noted above, oppression must also be considered. Oppression by itself is enough to make an arbitration agreement procedurally unconscionable. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2007). Under California law, "'[o]ppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *Stirlen*, 51 Cal. App. 4th at 1532. Oppression is established if "the arbitration provision was presented on a take-it-or-leave-it basis." *Nagrampa*, 469 F.3d at 1281; *see also*

4

*Gatton v. T-Mobile USA*, 152 Cal. App. 4th 571, 586 (2007) (finding procedural unconscionability even where "market alternatives" existed because the contract was drafted by the party with significantly greater bargaining power and was presented on a "take it or leave it" basis); *Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 557 (2005) (stating that there is "quintessential procedural unconscionability" where an arbitration agreement is presented on a take-it-or-leave-it basis with no opportunity to opt out). *Compare Davis*, 485 F.3d at 1073 (indicating that there is no procedural unconscionability where an employee may opt out of an arbitration provision and "still preserve his or her job").

The Court finds that the arbitration provision in the instant case is procedurally unconscionable because it was presented on a take-it-or-leave-it basis without an opportunity to opt out. There can be no real dispute that the agreement to arbitrate was a condition of being hired as an independent contractor because the arbitration provision was part of the form Club/Performer Contract, which was drafted by S.A.W. There is nothing to suggest that Ms. Jackson had the opportunity to negotiate or to opt out of the arbitration provision and still be hired.[2] *See Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 114 (2004) ("No evidence indicates Martinez had any opportunity to negotiate or refuse to sign the arbitration agreement.").

S.A.W. argues that Ms. Jackson was given an opportunity to opt out of the arbitration provision because she could have been hired as an employee rather than as an independent contractor. *See* Mot. at 7-8. But there is no evidence as to what the terms of any contract would be if Ms. Jackson had decided to pursue an employee status with S.A.W. As Ms. Jackson notes, an employer-employee contract with S.A.W. might well have contained an arbitration provision, too. The critical question here is whether Ms. Jackson could have worked for S.A.W. in some capacity -- whether as an employee or as an independent contractor -- without being subject to an arbitration

---

[2] The fact that the Club/Performer Contract includes a statement that an entertainer should "[s]ign this agreement only if you genuine agree with its terms" and "take the time to read it, consider the terms, and have someone assist you (a lawyer or accountant, or any other person you rely on to give you reasoned advice) before signing this contract," Club/Performer Contract ¶ V.10, is immaterial. As the California Supreme Court has noted, "it is unrealistic to expect anyone other than higher echelon employees to hire an attorney to review what appears to be a routine personnel document." *Gentry v. Superior Court*, 42 Cal. 4th 443, 471 (2007).

5

provision. S.A.W. did not offer any evidence that employees are not subject to arbitration. Notably, the case that S.A.W. cites, *Circuit City Stores v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), is distinguishable precisely because, there, if the employee "had decided to opt-out of the arbitration program, *he would have been allowed to keep his job* and not participate in the program." *Id.* at 1199 (emphasis); *see also Jones v. Deja Vu*, 419 F. Supp. 2d 1146, 1148 (N.D. Cal. 2005) (distinguishing *Circuit City Stores* on the same basis). Moreover, there are terms of employment imposed on employees which appear onerous, or at least disadvantageous. For example, as reflected in the "Notice of Contract Alternative: Employee Status," employees are "require[d] . . . to sell and perform private dance services," there is a ten-dance per shift quota for employees, employees are "required to perform dance services for *any* customer who requests to purchase a dance," employees are "not guaranteed any minimum number of hours," and employees are not "permitted to work overtime" or even "permitted to be on schedule for more than 4 hours, unless directed by management." Compl., Ex. A (notice).

2. <u>Substantive Unconscionability</u>

While the Court finds procedural unconscionability, that unconscionability is not as strong as cases where the party objecting to arbitration was given no choice at all. Accordingly, in assessing substantive unconscionability, the Court applies the sliding scale test. "Substantive unconscionability addresses the fairness of the term in dispute. Substantive unconscionability 'traditionally involves contract terms that are so one-sided as to "shock the conscience," or that impose harsh or oppressive terms.'" *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1099 (2002).

In considering whether there is substantive unconscionability, the Court must bear in mind that, at this juncture, it is examining unconscionability only as it relates to arbitration; in other words, the Court is not concerned with whether the Club/Performer Contract as a whole is unconscionable or whether terms not related to arbitration are unconscionable. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967) (noting that, under the FAA, "if the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the 'making' of the agreement to arbitrate -- the federal court may proceed to adjudicate it [b]ut the statutory language does not permit the federal court to consider claims of fraud in the inducement of

the contract generally"). In the instant case, the contract terms relevant to the substantive unconscionability analysis are (1) the class action/arbitration waiver and (2) the statute of limitations waiver.[3]

### a. Class Action/Arbitration Waiver

As indicated above, the Club/Performer Contract signed by Ms. Jackson contains a class action waiver. Paragraph V.8 of the Contract provides: "Performer agrees that any substantial claim she may make shall be in her individual capacity, and not as a representative or class action, and that any claims she may have against Owner shall not be consolidated with the claims of others." Club/Performer Contract ¶ V.8.

The Contract provides not only for a waiver of any class action but also for a waiver of any class arbitration. Paragraph V.6 of the Contract states:

> Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, the relationship between the parties, or any other dispute between the parties, shall be decided by binding Arbitration, shall be pursuant to the Federal Arbitration Act, and shall be before a neutral arbitrator agreed upon by the parties who shall be permitted to award any relief available in a Court. Any award may be entered in any court having jurisdiction. *The arbitrator shall have no authority or jurisdiction over a class action.*

Club/Performer Contract ¶ V.6 (emphasis added).

Both of these terms are lacking in mutuality, imposing as a practical matter limitations on the entertainer but not S.A.W. *See Abramson v. Juniper Networks Inc.*, 115 Cal. App. 4th 638, 657 (2004) ("[T]he paramount consideration in assessing [substantive] conscionability is mutuality."). While the class arbitration waiver is not on its face one-sided, it can hardly be said to be a mutual provision as "it is difficult to envision the circumstances under which the provision might negatively impact [S.A.W.], because [employers] typically do not sue their [employees] in class action lawsuits." *Gentry*, 42 Cal. 4th at 454 (internal quotation marks omitted).

---

[3] Although these terms are not formally part of the arbitration provision in the agreement (*i.e.*, ¶ V.6 of the Club/Performer Contract), they clearly relate to the arbitration provision as they define the scope of the arbitration. *See, e.g.*, *Gentry*, 42 Cal. 4th at 466 (discussing a class arbitration waiver that is part of an arbitration agreement); *Martinez*, 118 Cal. App. 4th at 117-18 (discussing an arbitration agreement that contains a shortened limitations period).

Although mutuality is lacking with respect to the class action and arbitration waivers, the California Supreme Court has stated that not all such waivers are necessarily unconscionable. *See Gentry*, 42 Cal. 4th at 454. Such waivers are unconscionable, however, when they are, in essence, exculpatory clauses -- *i.e.*, when they operate to insulate a party from liability or when they make it very difficult for those injured by unlawful conduct to pursue a legal remedy. *See id.* at 453-54, 457. For example, where there is a class action or arbitration waiver

> in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the [class action or arbitration] waiver becomes in practice the exemption of the party from responsibility for [its] own fraud, or willful injury to the person or property of another. Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Id.* at 454 (internal quotation marks omitted). In short, if enforcement is so problematic absent availability of a class action mechanism, that defendants committing wrongdoing are likely to escape liability, unconscionability will be found.

The instant case, of course, is not a consumer contract but rather an employment contract. Nevertheless, the California Supreme Court has made clear that the analysis used in consumer cases is the same analysis to be used in employment cases; that is, the question is whether a class action or arbitration waiver in an employment contract acts as an exculpatory clause. *See id.* at 457; *see also Murphy v. Check 'N Go of Cal., Inc.*, 156 Cal. App. 4th 138, 148 (2007) (in an employment case, noting that a waiver is unconscionable when it "is in practice the exemption of defendant from responsibility because a class action would be the only effective way to halt and redress the alleged violations") (internal quotation marks omitted).

S.A.W. contends that Ms. Jackson must submit specific, concrete evidence showing that a class action or class arbitration is the only effective way to halt and redress the alleged violations at issue or the waiver provisions in the case at bar may not be deemed unconscionable. No doubt Ms. Jackson must make a showing that the waiver provisions at issue are in effect exculpatory clauses, but S.A.W. overstates the case as to what kind of showing is necessary. For example, in *Gentry*, a

case involving a claim for overtime, the California Supreme Court discussed general public policy-type considerations that would weigh against a class action or arbitration waiver. It stated:

> [W]hen it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider . . . the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration.[4]

*Gentry*, 42 Cal. 4th at 463. In *Murphy*, a case in which an employee alleged that she had been misclassified, the state appellate court conceded that "plaintiff's declarations of counsel were the only evidence presented" on the question of whether a waiver provision was an exculpatory clause but still concluded that their opinions that "class members would have difficulty securing legal representation for individual cases because of the relatively small sums involved, and class actions are necessary to deter employers like defendant from misclassifying their employees," to be "substantial evidence supporting the [lower] court's ruling that the class action waiver provisions of the agreement were 'exculpatory clauses' . . . and therefore substantively unconscionable." *Murphy*, 156 Cal. App. 4th at 148.

In light of *Gentry* and *Murphy*, the Court finds that Ms. Jackson has made a sufficient showing that the class action and arbitration waivers in the instant case are in essence exculpatory clauses. First, Ms. Jackson claims that she and other entertainers who worked at the Club should have been considered employees instead of independent contractors and thus should have been subject to wage and hour laws. As the California Supreme Court noted in *Gentry*, "individual

---

[4] The class representative in *Gentry* neither feared retaliation himself, as he was not a current employee, nor lacked awareness of his legal rights, as demonstrated by the fact that he had chosen to sue his employer. *See Genry*, 42 Cal. 4th at 464 n.7. Nevertheless, the court stated that these considerations might still apply to the class and should not be ignored, noting that "one of the advantages of class action litigation . . . is precisely the fact that the class representative spearheading the litigation is in a more advantageous position . . . . [I]t makes little sense to focus only on whether the class representative himself or herself would be stymied in the pursuit of an individual arbitration remedy." *Id.*

awards in wage-and-hour cases tend to be modest."[5] *Gentry*, 42 Cal. 4th at 457. That entertainers, if deemed employees, are likely to have modest awards is substantiated by S.A.W.'s own documents -- *i.e.*, the form Club/Performer Contract drafted by S.A.W. That contract makes specific note that "some individuals associated with this industry" are "transient." Club/Performer Contract ¶ V.7. Apparently, enough individuals are transient or S.A.W. would not have felt it necessary to include the provision shortening the statute-of-limitations period. If, indeed, entertainers are often transient, then it is a fair inference that any wage or wage-related claim by an individual entertainer would tend to be modest -- *i.e.*, an entertainer would not work at the Club long enough to accumulate a large wage claim.

Second, as in *Gentry*, an entertainer would likely face a greater risk of retaliation if she were to sue the company individually. *See Gentry*, 42 Cal. 4th at 459. Moreover, an entertainer who filed suit individually against S.A.W. might well fear that she would have difficulty working at other adult entertainment clubs in the area. That is, there may be a risk or at least a perceived risk of retaliation at a general level which could deter individual lawsuits.

Third, as the Court noted in *Gentry*, "some individual [entertainers] may not sue because they are unaware that their legal rights have been violated." *Id.* at 461. Even if, as S.A.W. claims, entertainers are relatively sophisticated and fairly knowledgeable, there is still a problem with a lack of awareness for two reasons: (1) S.A.W. presents entertainers with documents suggesting that the legal issue of employment cannot be litigated because it is up to the entertainer to decide whether to be an employee or an independent contractor, *cf. id.* (noting that "[t]he likelihood of employee unawareness is even greater when, as alleged in the present case, the employer does not simply fail to pay overtime but affirmatively tells its employees that they are not eligible for overtime"), and (2)

---

[5] An unpublished opinion from a state appellate court suggests that individual awards involving entertainers like Ms. Jackson would in fact be relatively modest. *See Moody v. Razooly*, No. A099065, 2003 WL 464076 (Cal. Ct. App. Feb. 25, 2003) (taking note of jury finding that, after accruing a minimum wage of $5.75 per hour over an eleven-month period, one dancer was due $5,916.75 plus interest in back wages, and another was due $3,547.75 plus interest; on appeal, reducing the judgment in the amount of the "special dance" fees that were due back to the employer, leaving one dancer with $3,941.75 and the other with a negative amount). Notably, the California Supreme Court indicated in *Gentry* that even the possibility of an individual award as high as $37,000 would not negate the value of a class action. *See Gentry*, 42 Cal. 4th at 458.

"due to the transient nature of their work, [entertainers] may not be in a position to pursue individual litigation against a former employer." *Id.*

Finally, there are real world obstacles to the vindication of entertainers' rights through individual arbitration -- most notably, the fact that there is likely to be difficulty in locating witnesses, a fact that S.A.W. acknowledges in its Club/Performer Contract. *See* Club/Performer Contract ¶ V.7 (imposing the statute of limitations waiver because of "the transient nature of some individuals associated with this industry, and the difficulty presented in locating witnesses").

Because, for the reasons stated above, the class action and arbitration waivers provided for in S.A.W.'s Club/Performer Contract are exculpatory clauses, the Court concludes that both terms are substantively unconscionable. This is even under the sliding scale test where the evidence of procedural unconscionability is less than compelling.

        b.      <u>Statute of Limitations Waiver</u>

As noted above, Ms. Jackson contends that the statute of limitations waiver is also substantively unconscionable. Under the statute of limitations provision, all claims -- whether belonging to an entertainer or S.A.W. -- must be brought "within 6 months of the event giving rise to the action," Contract § V.7, notwithstanding any limitations periods provided for by statute.

Contractual agreements to shorten the statute of limitations period are generally disfavored because they "derogate" statutory intent. *Lewis v. Hopper*, 140 Cal. App. 2d 365, 367 (1956); *see also Western Filter Corp. v. Argan, Inc.*, 540 F.3d 947 (9th Cir. 2008) (citing *Lewis*). However, such agreements are not necessarily unenforceable. The critical question is whether "the period fixed [is] so unreasonable [so] as to show imposition or undue advantage in some way." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003) (internal quotation marks omitted). Notably, even bilateral statute of limitations waivers can be deemed substantively unconscionable.[6] *See Martinez*, 118 Cal. App. 4th at 117.

---

[6] Of course, a statute of limitations provision that would apply unilaterally to an employee, but not the employer, would more than likely be substantively unconscionable. *See, e.g.*, *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283 (2004) (finding statute of limitations waiver that limited the time for bringing claims to 180 days and applied unilaterally to the employee to be so one-sided so as to be substantively unconscionable).

11

*Martinez* is a particularly instructive case. There, the plaintiff and defendant had signed an arbitration agreement at the time that the former was hired by the latter. The agreement included a provision which "require[d] the assertion of all statutory and common law claims covered by the agreement within six months of the date when the claim arises." *Id.* at 117. Subsequently, the defendant fired the plaintiff and the plaintiff filed suit, alleging violations of the California Labor Code, national original discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), and wrongful termination.

The plaintiff argued, among other things, that the statute of limitations provision was substantively unconscionable. In resolving this issue, the state appellate court made note that

> [t]he statutes upon which [the plaintiff's] claims are premised provide *significantly longer* periods of time than six months within which to assert a claim of violation. Specifically, [the plaintiff's] claim of national origin discrimination arises out of the FEHA. That statute provides that [the plaintiff's] administrative charge must be filed within one year from the date of the discriminatory act, and that he must file any civil action within one year of the date on which the administrative agency issues a "right to sue" letter. "[A]n arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." Similarly, the Labor Code, which provides the bases for [the plaintiff's] causes of action for unpaid wages and penalties, affords an employee three or four years to assert the claims sued upon here. If there was any doubt, after *Armendariz*, it is clear that parties agreeing to arbitrate statutory claims must be deemed to consent to abide by the substantive and remedial provisions of the statute. . . . Otherwise, a party would not be able to fully vindicate [his or her] statutory cause of action in the arbitral forum. The shortened limitations period provided by [the defendant's] arbitration agreement is [therefore] unconscionable and insufficient to protect its employees' right to vindicate their statutory rights.

*Id.* at 117-18 (emphasis added; internal quotation marks omitted).

The instant case is analogous to *Martinez*. The statute of limitations provision in the case at bar, like the one in *Martinez*, requires claims to be brought within six months. As in *Martinez*, the statutes upon which Ms. Jackson's claims are premised provide significantly longer periods of time than six months within which to assert a claim. For example, Ms. Jackson's claims for unpaid wages and the accompanying waiting time penalties would ordinarily be subject to a three-year statute of limitations. *See Gentry*, 42 Cal. 4th at 470-71 (noting that there is a three-year statute of limitations for claims for overtime wages pursuant to California Code of Civil Procedure § 338);

*Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1112 (2007) (noting that claims for wages are subject to a three-year statute of limitations); Cal. Labor Code § 203(b) (providing that "[s]uit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise"). Ms. Jackson's claim for unfair business practices has an even longer statute of limitations period -- *i.e.*, four years. *See* Cal. Bus. & Prof. Code § 17208 (providing that "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued").

Because the statute of limitations waiver provided for in S.A.W.'s Club/Performer Contract significantly shortens the limitations period for Ms. Jackson's claims, the Court concludes that -- like the statute of limitations provision in *Martinez* -- it is substantively unconscionable.

C.     Severability

That the Court has found both procedural and substantive unconscionability, however, does not end the matter. The Court is still left with the decision as to whether there should be severance of the unconscionable terms -- *i.e.*, the class action and arbitration waivers and the statute of limitations waiver.

In making this decision, the Court is guided by the California Supreme Court's decision in *Armendariz*. In *Armendariz*, the court decided *not* to sever the provisions it found unconscionable for two reasons. First, "the arbitration agreement contain[ed] more than one unlawful provision . . . [which] indicate[d] a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Armendariz*, 24 Cal. 4th at 124. This indicated that the arbitration agreement was "permeated by an unlawful purpose." *Id.* Second, "permeation [was] indicated by the fact that there [was] no single provision a court [could] strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* at 124-25. A court is not authorized to affirmatively add terms in order to "reform" a contract and make it lawful; if the contract cannot be cured through severance, it cannot be enforced. *Id.* at 125.

In the instant case, S.A.W. argues that the Court should sever the illegal provisions from the Club/Performer Contract, both because of the public policy weighing in favor of arbitration and

13

because the contract itself provides for severance of all unenforceable provisions. *See* Club/Performer Contract ¶ V.5. S.A.W. also points to the fact that the contract otherwise meets the requirement in *Armendariz* that an arbitration agreement must (1) provide for neutral arbitrators, (2) provide for more than minimal discovery, (3) require a written award, (4) provide for all types of relief that would otherwise be available in court, and (5) not require entertainers to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *See Armendariz*, 24 Cal. 4th at 102. Finally, S.A.W. notes that, even if the illegal provisions are severed, there is enough in the arbitration provision to be enforced and the Court need not reform the contract by "augmenting it with additional terms." *Id.* at 125.

        The Court is not persuaded. S.A.W. is correct that, as a mechanical matter, the problematic provisions could be excised from the Club/Performer Contract, leaving enough of the arbitration and arbitration-related provisions for the Court to enforce and without requiring the Court to reform the agreement. *See Armendariz*, 24 Cal. 4th at 124 (stating that "courts must have the *capacity* to cure the unlawful contract through severance") (emphasis in original). But the fact that a severance can mechanically and grammatically be accomplished is not dispositive. As noted above, the California Supreme Court in *Armendariz* was also concerned with whether there was something in the arbitration agreement -- such as the fact of more than one unlawful provision -- which suggested that the party in the superior bargaining position was trying to impose arbitration not as an alternative to litigation but rather as an inferior forum. *See id.* at 124. The Court's concern was underscored by its additional statement that the "overarching inquiry" in deciding whether to sever "is whether the interests of justice would be furthered by severance." *Id.* (internal quotation marks omitted).

> Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement - particularly where there has been full or partial performance of the contract. Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme.

*Id.*

        In the instant case, the evidence that S.A.W. was trying to impose an "inferior forum" on entertainers is strong. The class action/arbitration waivers do not stand alone but rather are joined

14

1  by the provision that significantly shortens the statute of limitations period. An entertainer would be
2  unlikely to bring only an individual suit where the damages at issue would be exceedingly small by
3  virtue of the brief limitations period alone (not to mention the fact that, as noted above, wage claims
4  tend to be modest). That an employee would likely be deterred from initiating a suit is compounded
5  by the fact that the Club/Performer Contract does not expressly provide that S.A.W. will pay for all
6  costs that are unique to arbitration. Even if, under California law, "a mandatory employment
7  arbitration agreement that contains within its scope the arbitration of [statutory employment] claims
8  impliedly obliges the employer to pay all types of costs that are unique to arbitration," *id.* at 113,
9  there is likely to be a chilling effect upon individual workers in this situation in the absence of an
10 explicit provision in the arbitration agreement itself. *See id.* at 110 ("[I]t is not only the costs
11 imposed on the claimant but the *risk* that the claimant may have to bear substantial costs . . . to
12 vindicate their statutory right . . . and therefore chills the exercise of that right.") (emphasis in
13 original).

14 Moreover, the two reasons discussed in *Armendariz* that generally support severance have no
15 application in the instant case. First, voiding the arbitration and arbitration provisions in their
16 entirety would not give Ms. Jackson an undeserved benefit nor would it cause S.A.W. to suffer an
17 undeserved detriment. Second, there is no contractual relationship to preserve since it does not
18 appear that Ms. Jackson is still performing or is seeking to perform at the Club.

19 Accordingly, the Court concludes that severance of the unconscionable provisions in the
20 instant case is not appropriate and, therefore, S.A.W.'s motion to compel arbitration is denied.

21 The Court acknowledges that, in *Jones*, Judge Zimmerman of this District chose to sever
22 when, similar to here, there was both an unconscionable class action waiver and an unconscionable
23 statute of limitations provision in an arbitration agreement. *See Jones*, 419 F. Supp. 2d at 1149-50.
24 Judge Zimmerman explained his decision to sever as follows: "[T]he unconscionable provisions
25 shortening the statute of limitations and prohibiting class actions are collateral to the main purpose
26 of the parties' contracts and do not so pervade the entirety of the contracts as to render the contracts
27 unenforceable." *Id.* at 1150. This Court respectfully declines to follow the reasoning in *Jones*.
28 When a court considers an arbitration provision that is part of a larger agreement, the central

question is whether the arbitration provision represents a "systematic effort to impose arbitration . . . as an inferior forum that works to the employer's advantage." *Armendariz*, 24 Cal. 4th at 124. While the court in *Armendariz* cited California Civil Code § 1599 (which governs illegal contracts), that, "[i]f the illegality is collateral to the main purpose of the contract . . . severance and restriction are appropriate," *id.*, that statement must be viewed in context. In applying the principle to the unconscionable provision at hand, the *Armendariz* court looked to whether the "*arbitration agreement* is permeated by an unlawful purpose." *Id.* (emphasis added). In other words, the focus was on the arbitration agreement, not the larger employment contract between the plaintiffs and the defendants therein or the underlying conduct which was the subject of the suit.

Furthermore, the cases cited by Judge Zimmerman, in which there was severance, are markedly different from the case at hand. For example, in *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76 (2003), there was only one unconscionable provision and it concerned payment of costs, which is arguably a tangential matter. *See id.* at 101-02. In *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708 (2003), again, there was only one unconscionable provision and it concerned appeals, which the court specifically characterized as a collateral matter. *See id.* at 727 (noting that "[t]he appeal clause affects only a postaward proceeding, not the general conduct of the arbitration itself"). Here, there is more than one unconscionable provision, and the two provisions discussed above infect the arbitration agreement with systemic unconscionability. These differences parallel the distinction that the court in *Armendariz* drew in distinguishing two cases cited by the employer therein. *See d.* at 127 (stating that "the one-sidedness in the above two cases was confined to a single provision" which did not affect "the scope of the arbitration.").

///
///
///
///
///
///
///

16

### III. CONCLUSION

Accordingly, for the reasons discussed above, S.A.W.'s motion to compel arbitration is denied.

A Case Management Conference is scheduled for July 29, 2009, at 1:30 p.m. A Joint Case Management Conference statement shall be filed by July 22, 2009.

This order disposes of Docket No. 8.

IT IS SO ORDERED.

Dated: May 21, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge