DOUGLAS J. MELTON  State Bar #161353
HELEN MCFARLAND State Bar #231501
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, CA  94104
Telephone:     (415) 397-2222
Facsimile:      (415) 397-6392
Email:           dmelton@longlevit.com
                      hmcfarland@longlevit.com

*Attorneys for Defendant/Counterclaimant*
S.A.W. Entertainment Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>S.A.W. ENTERTAINMENT LIMITED aka SAW ENTERTAINMENT, LTD; LARRY FLYNT'S HUSTLER CLUB; DEJA VU, and Does 1-50,<br><br>Defendant.<br><br>S.A.W. ENTERTAINMENT LIMITED aka SAW ENTERTAINMENT, LTD<br><br>Counter-Claimant,<br><br>vs.<br><br>JESSICA JACKSON,<br><br>Counter-Defendant. | CASE No. CV 09 0448-EC<br><br>**COUNTERCLAIM OF DEFENDANT S.A.W. ENTERTAINMENT LIMITED FOR BREACH OF CONTRACT, FRAUD IN THE INDUCEMENT, RESTITUTION, AND UNJUST ENRICHMENT** |

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

CASE No. CV 09 0448-EC

COUNTERCLAIM OF SAW ENTERTAINMENT LIMITED

Defendant/Counterclaimant S.A.W. ENTERTAINMENT LIMITED, aka SAW ENTERTAINMENT LTD ("SAW") hereby counterclaims and alleges against Plaintiff/Counter-Defendant JESSICA JACKSON ("JACKSON") as follows:

**PARTIES AND JURISDICTION**

1. At all times relevant hereto, SAW has owned and operated a business called Larry Flynt's Hustler Club, which is located at 1031 Kearny Street in San Francisco, California ("the Club"). The Club is specially licensed, and occupies specially zoned properties, such that adult-oriented entertainment may be lawfully conducted on its business premises. SAW is a California corporation, with its principal place of business in the State of California.

2. JACKSON is a licensed exotic dancer, who is an experienced adult entertainer. She is a citizen of the State of Nevada who traveled to San Francisco to perform at the Club as a dancer in April 2008.

3. This Court has supplemental jurisdiction over these compulsory counterclaims pursuant to 28 U.S.C. §1367(a); this Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2), because JACKSON has filed a civil action between citizens of different states that is a purported class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. The proposed class is alleged to consist of at least 100 members, and JACKSON is a member of the purported class.

4. SAW's Counterclaims arise out of the same transaction or occurrence that is the subject matter of JACKSON's claims and do not require adding another party over whom the court cannot acquire jurisdiction.

**VENUE**

5. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(a)(3), because SAW is subject to personal jurisdiction in this district, and there is no district in which the action may otherwise be brought.

**FACTS**

6. On or about April 15, 2008, JACKSON approached SAW seeking an opportunity to perform at the Club as a professional dancer.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

CASE No. CV 09 0448-EC

COUNTERCLAIM OF SAW ENTERTAINMENT LIMITED

7. On or about April 15, 2008, JACKSON represented to SAW that she held two Entertainer Licenses in the state of Nevada and that she was also performing at that time at The Men's Club and Diamond Jacks/Diamond Dolls in Reno, Nevada. A true and correct copy of JACKSON's Application for Performance Contract is attached hereto as Exhibit A.

8. On or about April 15, 2008, SAW offered JACKSON the opportunity to perform at the Club as an employee entertainer. A true and correct copy of SAW's Offer of Employment Status is attached hereto as Exhibit B.

9. On or about April 15, 2008, JACKSON rejected SAW's Offer of Employment Status, reaffirming in writing that she had "read the Notice to Entertainers," and that she "CHOOSE[es] TO Decline the offer." (See, Exhibit B).

10. On or about April 15, 2008, after rejecting SAW's offer to become an employee, JACKSON entered into a written contract with SAW to perform as an independent contractor. A true and correct copy of the written contract, entitled "Hustler 2008 Club/Performer Contract" (hereinafter "Contract"), is attached hereto as Exhibit C. Pursuant to the Contract, the parties agreed that they were expressly disavowing an employment relationship, and instead, they were establishing an independent contractor agreement.

11. At all relevant times, JACKSON represented to SAW that she had the legal capacity to contract, and that she desired to enter into a contractual relationship with SAW.

12. The Contract entered into between SAW and JACKSON had lawful objectives, including but not limited to establishing how proceeds from private dances marketed by JACKSON at the Club were to be paid and how they were to be allocated between the parties. (See, Exhibit C, ¶¶ II.A, B).

13. Specifically, JACKSON agreed to charge her customers a posted, set and mandatory dance performance fee for each individual dance she performed at the Club ("Private Dance Fees"). (See, Exhibit C, ¶ II 2). JACKSON also agreed to collect the Private Dance Fees from patrons of the Club by directing the patrons to deposit the fees directly into a dance fee collection box owned by SAW. (See, Exhibit C, ¶ III 2).

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2   CASE No. CV 09 0448-EC
COUNTERCLAIM OF SAW ENTERTAINMENT LIMITED

14. In return, SAW agreed to permit JACKSON to retain a specified portion of the Private Dance Fees that were deposited in the collection box by patrons, and which would have otherwise belonged to SAW, as her own. SAW also agreed that JACKSON was entitled to all "tips" she received.

15. JACKSON agreed that the contractual allocation was subject to adjustment by SAW based on various stated factors, including whether JACKSON was on schedule, whether she performed for the full performance date, and whether she complied with the other terms of the Contract. (See, Exhibit C, ¶¶ II 2 B, III.).

16. Under the terms and conditions of the Contract, JACKSON also acknowledged and agreed that her right to be paid a portion of the Private Dance Fees, instead of an hourly wage, was contingent and conditional upon her relationship with SAW being contractual and not employer – employee.

17. Under the terms of the Contract, SAW and JACKSON agreed that, in the event their relationship was ever to be deemed employer and employee, SAW would own all Private Dance Fees provided by the clients of the Club, JACKSON would return to SAW all Private Dance Fees that she retained under the terms of the Contract, and SAW would pay JACKSON's wages and any benefits required by law. (See, Exhibit C, ¶ V 1).

18. JACKSON only performed at the Club on three dates: April 16, 18, and 19, 2008. Thereafter, JACKSON never again performed at SAW's Club.

19. During the three times she performed at SAW's Club, JACKSON regularly collected and retained her contract share of Private Dance Fees.

20. SAW fully performed all of its obligations under the Contract (except those it has been prevented from or is otherwise excused from fully performing), including permitting JACKSON to retain the agreed-upon portion of Private Dance Fees which, in the circumstances of an employment arrangement, would have been the exclusive property of SAW.

21. At no time during the time she performed at SAW's club, or thereafter prior to the filing and service of the Complaint in the above-entitled action, did JACKSON in any way advise SAW, or in any way claim entitlement to any of the rights, privileges or benefits of employment

status as set forth in the California Labor Code, or ask for or seek minimum wage or other employments benefits, claim to be an employee of SAW, claim that she was being treated as an employee of SAW, assert that she did not intend or desire to comply with the Contract, assert that she believed the Contract was invalid, or assert that she felt that the Contract did not constitute a true description of her business relationship with SAW.

22. After having benefited financially by representing to SAW that she desired and intended to be a non-employee, JACKSON now seeks the payment of minimum wages and other benefits for all times that she performed at the Club, and further seeks to retain all Private Dance Fees she already received under the Contract.

## FIRST CAUSE OF ACTION

(For Breach of Written Contract)

23. SAW realleges and incorporates herein paragraphs 1-22.

24. SAW entered into a written Contract based upon JACKSON's express agreements that she wanted to retain a portion of the profits from Private Dance Fees rather than be paid wages, she did not wish to become or perform as SAW's employee, and that her performances would not be and were not as SAW's employee. JACKSON expressly disavowed an employer-employee relationship between the parties to the Contract.

25. SAW completely performed all of its duties under the Contract, and paid JACKSON a portion of Private Dance Fees for the dances she performed at the Club according to the terms of the Contract. These fees would not have been paid to JACKSON if the parties were in an employer-employee relationship.

26. JACKSON accepted the contractually specified portion of the Private Dance Fees.

27. Despite having agreed to accept the contractual portion of the Private Dance Fees in lieu of wages as an employee, JACKSON now repudiates the Contract and claims she is entitled to all of the Private Dance Fees she received, plus wages as an employee of SAW. JACKSON's actions are in breach of the parties' Contract.

28. JACKSON has not returned the Private Dance Fees or allowed an offset against her claimed wages, in breach of the specific terms of the Contract.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

4

CASE No. CV 09 0448-EC

COUNTERCLAIM OF SAW ENTERTAINMENT LIMITED

29. Further, pursuant to the Contract, JACKSON agreed to give three days' written notice to terminate the Contract.

30. JACKSON breached the Contract by failing to appear or give notice of the termination of the Contract.

31. As a direct and proximate result of the breaches by JACKSON, SAW has been damaged in an amount to be proven at trial. SAW is entitled to damages against JACKSON in an amount equal to all the proceeds from dance sales earned by her during the time she performed at SAW's club.

## SECOND CAUSE OF ACTION

(Fraud In The Inducement Of Contract)

32. SAW realleges paragraphs 1-31 and incorporates them herein by reference.

33. At the time she entered into the Contract, and during each time she subsequently performed at the Club, JACKSON promised SAW she would perform her obligations under the Contract and represented, expressly and through omissions, that she intended and desired to perform under the Contract as a contract entertainer, and not as an employee entertainer.

34. On or around April 15, 2008, and on each date that she performed at the Club, JACKSON also promised SAW that she expressly declined employee status, she disavowed an employer-employee relationship, and that she did not want to perform as or become an employee of SAW.

35. JACKSON's representations were false when made, and were known by her to be false when made, as she had a secret desire and intent not to perform or honor those obligations and to deceive SAW by benefiting from those misrepresentations and omissions. JACKSON made these representations intending to deceive SAW in order to receive the benefit of the Private Dance Fees and, thereafter, to seek the additional benefits of employee status. JACKSON was secretly motivated as well by a desire to profit as a class representative by "setting up" SAW through her scheme to travel from her home state of Nevada to San Francisco in order to perform as an independent contractor a handful of times at the Club so that she could portray herself an appropriate class representative in this litigation.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

5     CASE No. CV 09 0448-EC

COUNTERCLAIM OF SAW ENTERTAINMENT LIMITED

36. JACKSON's representations and omissions were intended to induce, and did induce, SAW to enter into the Contract, and to permit her to perform at the Club under the status, financial and other arrangements set forth in the Contract.

37. SAW reasonably relied upon JACKSON's false representations and omissions in entering the Contract, to its detriment.

38. Despite due diligence, SAW was unaware and had no reason to know of the falsity of JACKSON's representations and of the true facts, including her secret intentions, when she contracted with SAW and at all times thereafter until the filing of her Complaint and/or participation in the purported class action.

39. Had SAW known of JACKSON's misrepresentations and omissions, SAW would not have acted as it did, and would not have entered into the Contract with JACKSON nor allowed JACKSON to perform under the terms of the Contract. SAW would not have paid JACKSON a portion of the Private Dance Fees or ceded control of JACKSON's performance dates and other aspects of her work.

40. As a direct and proximate result of JACKSON's fraud, SAW has been damaged in an amount to be proven at trial.

41. SAW is entitled to an award of general and special damages against JACKSON, in an amount according to proof.

42. In engaging in the intentional wrongful conduct alleged above, JACKSON is guilty of oppression, fraud and/or malice, and in addition to actual damages, SAW is entitled to punitive damages against JACKSON.

### THIRD CAUSE OF ACTION

(Restitution)

43. SAW realleges paragraphs 1-42 and incorporates them herein by reference.

44. SAW's consent to the Contract with JACKSON was obtained through fraud within the meaning of California Civil Code § 1689(b)(1), as alleged above.

45. SAW's consent to the Contract with JACKSON was also obtained as a result of mistake within the meaning of California Civil Code § 1689(b)(1), in that, in entering the

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

6   CASE No. CV 09 0448-EC
COUNTERCLAIM OF SAW ENTERTAINMENT LIMITED

Contract, SAW was operating under one or more mistakes of material fact within the meaning of California Civil Code § 1577, none of which resulted from the neglect by SAW of a legal duty. SAW's mistakes had a material affect on the Contract that is adverse to SAW, and created a risk which was not accepted, nor should it have been otherwise borne, by SAW. With respect to each such mistake of fact, JACKSON caused, was aware of, and had reason to know of the mistake.

46. JACKSON repudiated and rescinded the Contract when she sought to retain all Private Dance Fees already allocated to her under the Contract, while also claiming wages were due for the same time period.

47. As a result of JACKSON's fraud and misrepresentation as described above, pursuant to California Civil Code §§ 1688 and 1689, the Contract is rescinded.

48. JACKSON never offered to restore to SAW the value she received under the Contract she now repudiates.

49. SAW hereby offers to restore anything of value it received or is obligated to provide under the Contract conditional upon JACKSON doing likewise, within the meaning of and in accordance with California Civil Code § 1691.

50. SAW is entitled to relief according to proof, including, without limitation, restitution of the benefits conferred upon JACKSON, either directly by SAW or indirectly through SAW's sufferance and forbearance, which but for that sufferance and forbearance would have been received directly by SAW.

## FOURTH CAUSE OF ACTION

(For Unjust Enrichment)

51. SAW realleges paragraphs 1-50 and incorporates them herein by reference.

52. If JACKSON is successful in her claim that the Contract between her and SAW is invalid, JACKSON will be unjustly enriched by receiving the accoutrements of employment status and the California Labor Code in addition to the Private Dance Fees allocated to her under the Contract, which she acknowledged in the Contract would have been the exclusive property of SAW in the absence of a contractual arrangement and in the event of employer-employee status.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

7

CASE No. CV 09 0448-EC

COUNTERCLAIM OF SAW ENTERTAINMENT LIMITED

Case3:09-cv-00448-EMC   Document28   Filed05/29/09   Page9 of 16

53. SAW is entitled to an award of all Private Dance Fees previously paid to JACKSON as a result of performing at SAW's club.

## PRAYER FOR RELIEF

Wherefore, SAW prays for Judgment against JESSICA JACKSON as follows:

<u>First Cause of Action for Breach of Written Contract</u>

1. For damages according to proof at trial;

<u>Second Cause of Action for Fraud in the Inducement of Contract</u>

2. For damages according to proof at trial;

3. For punitive and exemplary damages according to proof at trial;

<u>Third Cause of Action for Restitution</u>

4. For restitution of all benefits received by JACKSON under the Contract signed by her, according to proof at trial;

<u>Fourth Cause of Action for Unjust Enrichment</u>

5. For restitution of all benefits received by JACKSON under the Contract signed by her, according to proof at trial;

<u>For All Causes Of Action</u>

6. For costs of suit;

7. For pre-judgment interest; and

8. For such other relief as the Court may deem just and proper.

Dated: May 29, 2009

LONG & LEVIT LLP

By _____
DOUGLAS J. MELTON
Attorneys for Defendant/Cross-Complainant S.A.W. Entertainment Limited

DOCS\S0301-082\560902.V1

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

8

CASE No. CV 09 0448-EC

COUNTERCLAIM OF SAW ENTERTAINMENT LIMITED

# EXHIBIT A

DOCS\Z8000-800\552055.V1

# APPLICATION FOR PERFORMER AGREEMENT

**NAME/ADDRESS OF CLUB:** Larry Flynt's Hustler Club  1031 Kearny Street, San Francisco, CA 94133

**ENTERTAINER'S NAME:** Jessica Jackson  **STAGE NAME:** Macy

**Social Security #:** REDACTED

**Entertainer License #** (if applicable): 0692875 / RPD
25619166 / LVPD

**Date of Birth:** REDACTED (Month, Day and Year)

Reno, NV 89502 (City, State and Zip Code)

**Address:** REDACTED

**Telephone number where you can be reached** *without violating your privacy*: REDACTED

**Previous Dance Experience:**

| # | Firm Name | Address | Manager | Phone # | Dates |
|---|---|---|---|---|---|
| 1 | Men's Club | Reno | | | present |
| 2 | Diamond Jacks/Diamond dolls | Reno | | | present |
| 3 | Spice House | Reno | | | closed |
| | Spearmint Rhinos | Vegas | | | |

**Personal References:**
1. Tory
2.

**In Case of an Emergency Notify:** REDACTED  95521
(Name and Relationship to You)  (Full Address)  (Telephone Number)

Please answer or affirm the following:

Have you ever been arrested and/or convicted for the possession or sale of Narcotics or any other illegal drug? Yes/**no**

Have you ever been arrested and/or convicted of the charge of prostitution? Yes/**no**

I understand that violations of law could occur if I were to touch customer in a sexually explicit manner, or if I were to allow a customer to touch me in a sexually explicit manner. I agree to refrain from touching customers in a sexually explicit manner, or allowing them to touch me in a sexually explicit manner. I also agree not to perform in a manner that would be considered obscene or otherwise illegal.

I represent and warrant that I am over 18/21 years of age. Age as of today is 27.

I agree that giving any false information on this application will be reason for termination of contract.

I understand that I will not be an employee of the club, and that the club has no obligation to and will not pay me wages or benefits, and that I will be responsible for accounting for my income and paying my own taxes.

I agree that the club shall not be responsible for unlawful acts committed by me.

**Date:** 4-15-08

*Jessica Jackson*
*Entertainer's Signature*

**ATTACH COPY OF PHOTO IDENTIFICATION.**

# EXHIBIT B

DOCS\Z8000-800\552055.V1

## TO ALL ENTERTAINERS
## NOTICE OF CONTRACT ALTERNATIVE: EMPLOYEE STATUS

Entertainers have historically performed at this club as independent contractors who control if, when, where, how and for whom they perform. However, *if you wish to become an "EMPLOYEE" of this club, you may apply to do so.* The employee-entertainer status includes the following terms:

(1) After completing all employee forms, you will be placed on the Club's payroll;
(2) Any current performance contract will be terminated;
(3) Your position will require you to sell and perform private dance services;
(4) If you are qualified, you will be paid $22.50 per hour;
(5) You will be paid by **check on a bi-weekly basis**, with all required tax withholdings;
(6) The Club will collect from patrons, and own, all dance fees for private dances;
(7) You will be entitled to **retain all gratuities ("tips")** given to you (gratuities are the amounts given to you by patrons while you are on stage, or amounts voluntarily given to you by patrons over and above the posted dance fee);
(8) There will be a **ten (10) dance per shift** quota and a failure to make quota may result in termination;
(9) Quotas will be calculated based on weekly (not daily) totals;
(10) You will be required to **perform dance services for any customer** who requests to purchase a dance, perform in club promotions, and perform on stage as required by management;
(11) You will be **required to report all tips** at the end of each shift, as required by federal tip reporting rules;
(12) The Club will assign your hours of work for any shifts available and you are not guaranteed any minimum number of hours;
(13) You will be **required to arrive at work consistent with your scheduled time;**
(14) You will be **required to clock in and out, including for all meals;**
(15) You will be entitled meal and rest periods only as required by law;
(16) You will **not be permitted to work overtime** or permitted to be on schedule for more than 4 hours, unless directed by management;
(18) The club will issue you one costume per month, at its own expense;
(20) Like all other club employees, including management, you will be an **"at will"** employee, which means you can be terminated with or without cause, as defined by applicable law.
(21) Nude and semi-nude entertainment is performed at this club; you must affirm
   * a willingness to perform nude and semi-nude entertainment
   * that you are not offended by viewing others who are nude or semi-nude;
   * that you fully understand that you will be performing nude or semi-nude
   * you fully understand that you may be exposed to sexual comment

THIS OFFER DOES NOT CONSTITUTE AN EMPLOYMENT CONTRACT. THESE ARE MERELY GUIDELINES AND ARE SUBJECT TO CHANGE AT MANAGEMENT DISCRETION. MANAGEMENT RESERVES ALL ITS RIGHTS TO DIRECT AND CONTROL EMPLOYEES AS PERMITTED BY LAW. **PLEASE NOTIFY THE MANAGER IMMEDIATELY IF YOU WOULD LIKE TO APPLY TO BECOME AN 'EMPLOYEE ENTERTAINER". IF YOU DO NOT WISH TO BECOME AN "EMPLOYEE" YOU MAY CHOSE TO PERFORM AT THE CLUB PURSUANT TO CONTRACT.**

IMPORTANT NOTE: THE CLUB'S MANAGERS HAVE NO OPINION ON THIS MATTER, AND THEY WILL NOT ENCOURAGE OR DISCOURAGE YOUR DECISION. IT IS YOUR FREE CHOICE. YOU MAY WISH TO CONSULT YOUR ATTORNEY OR ACCOUNTANT PRIOR TO MAKING YOUR DECISION.

I have read the Notice to Entertainers and accept. Please provide me with the employee Application Forms.

_____

DATE: _____

I have read the Notice to Entertainers. I CHOOSE TO Decline to apply as an employee dancer, and choose to work as a contract entertainer.

*Jessica Jackson* (signature)

DATE: 4-15-08

Offer.1.07.est

# EXHIBIT C

DOCS\Z8000-800\552055.V1

# HUSTLER 2008
## CLUB/PERFORMER CONTRACT

**THIS IS A LEGAL DOCUMENT. DO NOT SIGN UNLESS YOU UNDERSTAND & AGREE TO IT.**

**WHEREAS:** SAW ENTERTAINMENT, LTD ("Owner") operates a business which is unique due to zoning and/or licensing which allows live nude or semi-nude entertainment to the adult public;

**WHEREAS**: Performer wants to market and sell dance entertainment at Owners' business;

**WHEREAS:** The parties desire to establish the terms of their relationship including how Performer shall be compensated;

**Therefore, Performer and Owner agree:**

**I. TERM.** This Contract begins on signing and ends January 15, 2009, or when terminated as provided herein.

**II. DANCE FEES**

**1. Collection Box:** The parties agree that all dance fees (not tips) shall be deposited into the dance fee collection box issued by Owner.

**2. Allocation of Dance Fees**

**A. Proceeds from Minimum Dance Sales Are Owner's Property.** Performer agrees to perform a minimum of **10** private dances during each performance date. This minimum may, at owner's discretion, be reduced based on scheduling concerns. *The mandatory fee paid for these private dances, up to $200.00, shall be the exclusive property of the Owner.*

**B. Proceeds From Dance Sales in Excess of Minimums Are Payable to Performer As Set Forth Below.** *The proceeds from the dance fees paid for dances in excess of the minimum set forth above shall be paid by Owner to Performer as set forth in Paragraph III "Owner's Obligations" and sub- Paragraph 1 "Compensation" below.*

**III. PERFORMER'S OBLIGATIONS**

**1. Market Private Dance Services.** Performer agrees to use her skills, artistic talents and best efforts to sell private dance services to club patrons for a set and mandatory service fee, and

A. Perform semi-nude entertainment as permitted by law;

B. Possess current permits as required by law and be knowledgeable about and avoid violating any laws, rules or regulations.

**2. Collection Box.** Performer shall require patrons to deposit dance fees (not tips) into the collection box provided by Owner. FAILURE TO ABIDE BY THIS TERM SHALL RESULT IN TERMINATION OF THE CONTRACT.

**3. Scheduling.** Owner shall provide Performer with available Performance Dates. Performer is free to perform if and when she chooses based on such availability. To keep this contract in effect, however, **Performer agrees to perform a minimum of 3 performance dates per week.** If Performer schedules performances, she agrees to provide such schedule one week in advance. On each scheduled performance date, Performer promises to arrive on time and complete her full performance date as scheduled.

**4. Appear on Stage and in Promotions.** Performer agrees to appear on stage on a rotational basis and appear in promotions during her performance date.

**5. Respect Property, Law and Safety.** Performer agrees to avoid damaging Owner's property, and to comply with safety and legal requirements, including Owner's *no tolerance policy* concerning the use of drugs, under-age drinking and arranging for or engaging in prostitution.

**6. No assignment:** This contract concerns Performer's skills and artistic talents. She may not assign her rights or obligations under this Contract, but may supply a qualified substitute.

**7. Non-Exclusive:** Performer's obligations are non-exclusive; she is free to perform at other businesses.

**8. Control of Performances:** Performer retains exclusive control over the character, manner and means of her performances, so long as no law is violated.

**9. Intellectual Property:** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

**10. Costumes:** Performer shall provide her own costumes over which she retains exclusive control provided they comply with applicable laws and are professional costumes which do not conflict with the upscale gentlemen's club theme.

**11. Nature of Business:** Performer recognizes that she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive. NONETHELESS, OWNER PROHIBITS SEXUAL HARASSMENT AND HAS A FORMAL POLICY AND PROCEDURE WHICH PERFORMER IS REQUIRED TO FOLLOW.

**12. Tips or gratuities.** Performer agrees not to charge patrons more than the mandatory posted price for private dances. However, any amounts voluntarily given directly to Performer which is over and above the posted price for dances is a "tip" and is the sole property of Performer. **Performer shall be solely responsible for accounting for tips she receives and reporting them as income.**

**IV. OWNER'S OBLIGATIONS**

**1. COMPENSATION**

**A. Main Floor Private Dances.** Owner shall pay Performer the proceeds of all post-minimum private dances (defined at II A 2 above) performed on the main floor.

**B. VIP Dances.** Owner shall pay to Performer $70 for each $100 VIP Dance and $40 for each $60 VIP Dance marketed by Performer, provided such dances are in excess of Performers' minimum as set forth in paragraph II 2 A above.

**C. Champagne Room Rentals & Dance Fees.** Owner shall retain 100% of the champagne room rental

1

fee; Owner shall pay to Performer 90% of Private dance fees paid by a patron during Champagne Room rentals, provided such dances are in excess of Performers' minimum as set forth in paragraph II 2 A above.

**D. "Beaver Bucks".** Owner shall pay Performer 90% of the face value of all Beaver Buck she accepts.

**E. Payment.** All compensation due Performer by Owner shall be paid by Owner at the end of the performance date.

**F. Form 1099.** Owner shall issue Performer a Form 1099 at the end of the tax year for monies paid to her from dance sales. Performer shall be solely responsible for accounting and reporting tips she receives.

**2. Premises/Licenses:** Owner agrees to maintain the premises and all applicable licenses and permits.

**3. Advertising and Music copyright fees.** Owner agrees to pay for all music copyright fees, and to advertise in a commercially reasonable manner for the mutual benefit of the parties.

**4. Dance Records:** Owner will keep an accurate tally of private dances, VIP and Champagne Room Rentals attributable to Performer.

**5. Fees for Private Dances and Room Rentals.** Owner will post and announce the price for private dances, VIP and Champagne Room Rentals such that patrons are notified of the price and the fact that Owner is entitled to a portion thereof.

**6. Privacy Rights:** Owner will not disclose Performer's personal information to any third party without written permission, unless required by law.

**V.     OTHER CONTRACT TERMS**

**1. No Employment Relationship, Joint Venture or Partnership.** THE PARTIES DISAVOW AN EMPLOYMENT RELATIONSHIP, JOINT VENTURE OR PARTNERSHIP. PERFORMER AGREES THAT OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE EMPLOYEE-RELATED BENEFITS.

The parties agree that if they were "employer and employee", Owner would retain as its sole property all mandatory private dance and rental fees, and pay Performer the legal minimum wage and any other benefits required by law.

**2. Unjust Enrichment:** If Performer is deemed to be an employee entitled to wages during any period of this Contract, then Performer agrees to account for all the dance fees she was paid under the terms of this contract, which amount shall be off set against any damages from the claimed misclassification.

**3. Material Breach/Notice:** In the event of a Material Breach, the non-breaching party may terminate this Contract on 24 hours written notice.

**4. Voluntary Termination/Notice:** Either party may terminate this contract on 3 days written notice to the other for any or no reason.

**5. Severability:** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract as a whole.

**6. Arbitration:** Any dispute, whether statutory, contractual or tort, arising out of this Contract or Performer's performances, the relationship between the parties, or any other dispute between the parties, shall be decided by binding Arbitration, shall be pursuant to the Federal Arbitration Act, and shall be before a neutral arbitrator agreed upon by the parties who shall be permitted to award any relief available in a Court. Any award may be entered in any court having jurisdiction. The arbitrator shall have no authority or jurisdiction over a class action.

**7. Waiver of Statute of Limitations – Claims to be Brought Within 6 Months of the Event.** Due to the transient nature of some individuals associated with this industry, and the difficulty presented in locating witnesses, the parties agree to commence any action between them within 6 months of the event giving rise to the action and to waive any statute of limitation to the contrary.

**8. Waiver of Class Action.** Performer agrees that any substantial claim she may make shall be in her individual capacity, and not as a representative or class action, and that any claims she may have against Owner shall not be consolidated with the claims of others.

**9. LEGAL AGE:** THIS CONTRACT IS VOID IF PERFORMER IS NOT AT LEAST 18 YEARS OLD. PERFORMER REPRESENTS THAT SHE IS AT LEAST 18 YEARS OLD, AND HAS PROVIDED VALID IDENTIFICATION VERIFYING SAME.

**10. GENUINE CONSENT.** Sign this agreement only if you genuinely agree with its terms; take the time to read it, consider the terms, and have someone assist you (a lawyer or accountant, or any other person you rely on to give you reasoned advice) before signing this contract.

Owner: SAW ENTERTAINMENT, LTD

ADDRESS: 1031 Kearney Street.

City: SAN FRANCISCO, CA 94133

Manager Name _David Davidson_

Signature _____

DATE: _04/__/09_

Sfo/Hustler/12308/est

Performers' Name _Jessica Jackson_

Signature _Jessica Jackson_

Stage name _Macy_

Address _REDACTED_
_Reno, NV 89502_

Phone # IF PERMISSIBLE TO CALL
Social Security # _REDACTED_
License/Permit # _____
DATE: _4-15-08_

2